# UNITED STATES DISTRICT COURT

## for the

## DISTRICT OF NEW HAMPSHIRE

2019 MAR -6  A 11: 38

### Case 1:19-cv-00149

## PLAINTIFF-INTERVENOR, EDWARD NAILE, MOTION TO INTERVENE

## (MOTION TO DISMISS REQUESTED)

## ~~(MOTION TO EXPIDITE REQUESTED)~~ *EN*

Now comes: Edward Naile, pro se, registered Democrat, domiciled in Deering, at 61 Tubbs Hill Rd, 03244, Hillsborough County, NH, and current Chairman of The Coalition of New Hampshire Taxpayers, respectfully moves pursuant to Federal Rule of Civil Procedure 24 to intervene in this action. Intervention is warranted as of right because the qualified vote of this intervenor and any other similarly situated qualified, registered voters, of any political party, in any General Election in the State of New Hampshire will be diminished and impaired if he is not permitted to intervene. See Fed. R. Civ. P. 24(a)(2). In the alternative, Mr. Naile (Intervenor) should be granted leave to intervene because: (1) Plaintiff/Intervenor claims in the pending case share with this action common questions of law and fact; and (2) this action involves the interpretation of the Statutes of the State of New Hampshire, the Constitution of the State of New Hampshire, Part I Article II, and Part I Article I, as well as the US Constitution Article 14.

## MEMORANDUM OF LAW IN SUPPORT OF EDWARD NAILE'S MOTION TO INTERVENE

The intervenor respectfully submits this Memorandum of Law in support of its Motion to Intervene in this action/complaint filed by plaintiffs CAROLINE CASEY and MAGGIE FLAHERTY, against WILLIAM GARDNER, in his official capacity as New Hampshire Secretary of State, and GORDON MACDONALD, in his official capacity as New Hampshire Attorney General. Plaintiff/Intervenor, Edward Naile, moves pursuant to Federal Rule of Civil Procedure 24 to intervene as of right, or alternatively, by permission, to protect his equal voting rights under the State of New Hampshire and the US Constitutions and prevent citizens of other states to affect his vote in New Hampshire's General Elections by creating a special class of non-domiciled voters.

### PRELIMINARY STATEMENT

Once again, the State of New Hampshire is being sued on behalf of out-of-state, non-domiciled students attending colleges in our state. The student plaintiffs are, self-admitted citizens of other states. In this case most recent case, one is from California and the other from Louisiana. Both have valid driver's licenses from and are lawful residents of their home state. Both are qualified to vote in their home state having attained the age 18 and listing a lawful domicile addresses in their respective states

on their Ca. and La. driver's license. They prefer to vote in NH General Elections as a personal choice.  The personal choice to attempt to vote in New Hampshire does not bind them to any "poll tax" as they claim. That claim is nonsensical. Neither out-of-state student is required to pay a "poll tax" to vote. They are required to vote by absentee ballot in their domicile of record state or become qualified, lawful voters in NH simply by abandoning their previous domiciles and driver's licenses. They choose not to. They insist on unlawfully having two domiciles and insist, through some wordplay, that the word "resident" used in motor vehicle laws, was not intended by our Legislature, or the Constitutional Convention of 1974 which specifically placed the word "domicile" in Part I Article II to use the precise word for any "inhabitant" wishing to vote. The fact that they admit they are not domiciled, or lawful residents of NH brings up the issue of whether they even have standing as citizens of other states to sue for the "right" to vote in NH simply because of preference.  Plaintiffs can show no harm to their right to vote in a General Election.

These current out-of-state college student plaintiffs can show no harm or diminishment of their vote in any General Election but for their desire to choose a state election to vote in - at their lawful, out-of-state domicile or in New Hampshire, domicile of the plaintiff/intervenor. This is a special "right" out-of-state students desire which is denied NH's qualified voters. The State of NH has made no effort to prevent these students from becoming bone fide, lawful residents, qualified to vote

in NH. In fact, NH has turned a blind eye to out-of-state student voters until, eventually, in recent years their votes have affected elections for Federal Office.

## FACTUAL BACKGROUND

This current case can be more clearly put in perspective by a 1972 Federal case, *Newburger v. Peterson 344 F. Supp. 559 (D.N.H. 1972)* where a Dartmouth College student was denied by Hanover election officials the right to register because he stated he was going to leave NH after graduation.  NH, as did many states, had old laws on the books regarding voter registration brought into question by the adoption of the 18-year-old vote in the Twenty Sixth Amendment. *Newburger* was a durational residency case, not an out-of-state student case as this is, where the Court found NH could not prevent a lawfully domiciled college student described as; *"persons who are in every meaningful sense members of New Hampshire political communities to vote in communities elsewhere which they have long departed and with whose affairs they are no longer concerned, if indeed the former community still recognizes the right."* from registering to vote simply because he intended to leave in the future. The *Newburger* standard in 1972 was, as it should be now, that the out-of-state student had to become a NH resident and abandon; *"the former community."* In the present case these two litigants have deliberately decided not to become NH citizens but only reside here during their education. Proof is found in the students expressed intent to keep driver's licenses in the states where their

4

families own homes. This is a direct link to their lawful domiciles which they have not shown have been abandoned. Plaintiffs can easily keep their out-of-state licenses while in college in NH. But upon graduation and moving to a state other that their current home state they will at some point, according to that state's statutes have to get a license there. Plaintiffs suffer no harm in fact or law. Should this Complaint be successful the votes of qualified NH voters would watered down and diminished by out-of-state votes, as noted in *Newburger*.

**52 USC 10307: Prohibited Acts (c) False information in registering or voting; penalties.** In part says:

*"Whoever knowingly or willfully gives false information as to his name, address or period of residence in the voting district for the purpose of establishing his eligibility to register or vote, or conspires with another individual for the purpose of encouraging his false registration to vote or illegal voting,..."*

This Federal law applies to: *"That this provision shall be applicable only to general, special, or primary elections held solely or in part for the purpose of selecting or electing any candidate for the office of President, Vice President, presidential elector, Member of the United States Senate, Member of the United States House of Representatives,..."*

1. Plaintiffs admit they have already voted in the 2018 NH General Election using an address which is not their legal residence. Whether they are aware they are in violation of US Code 52 10307 already, shows they have little regard for existing law or have possibly been misled by over-eager counsel promoting a political agenda and looking for pliant young plaintiffs.

2. Article III of the Constitution imposes a minimal constitutional standing requirement on all litigants attempting to bring suit in federal court. In order to invoke the court's jurisdiction, the plaintiff must demonstrate, at an "irreducible minimum," that: (1) he/she has suffered a distinct and palpable injury as a result of the putatively illegal conduct of the defendant; (2) the injury is fairly traceable to the challenged conduct; and (3) it is likely to be redressed if the requested relief is granted.

(a) In the present case Plaintiffs can show no diminishment, disenfranchisement or injury, what so ever of their lawful right to vote, each plaintiff and all other similarly situated, having more than ample time to lawfully acquire an absentee ballot from their home state.

(b) Plaintiffs have shown no, even remote, effort by the State of NH to prevent them from voting lawfully at home where they conduct other municipal activities required by that state, such as getting a driver's license and being subject to that state's income taxes and jury duty. NH has never prosecuted an

out-of-state student for voting in NH even though during an investigation in 2001 by a Joint Legislative Committee found out-of-state students asking NH officials to take them off NH checklists, just after voting in NH, because they were not lawful residents.

(c) This Court can resolve this present case before the next election by simply holding out-of-state students to the same standard as Newburger, students attending college in NH who wish to vote here must abandon their previous domicile and become; *"in every meaningful sense members of New Hampshire political communities."* Until this Court establishes this simple time-honored standard used in all other states, General Elections for Federal offices, the rights and votes of qualified voters in NH will be watered down by self-serving opportunists who want their vote to count in NH, not at their domicile of record where it is required to be cast by law.

## <u>Standing Of Out Of State Plaintiffs</u>

Plaintiff students in this present case have not shown they have any standing to enjoin the legislative process or election laws in a state in which they have chosen not to become qualified voters. They are allegedly "disenfranchised" by choice and violate the 14th Amendment Rights of qualified NH voters by asking this Court to make them a special class of NH voter who can pick and choose where to vote irrespective of the law. NH's Constitution, Part I Article II, does not allow citizens

7

who live in one town to vote in another and NH occasionally prosecutes violators for that violation. See: *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) regarding standing for a request for an injunction, and Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976) and, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).* regarding standing.

### NH Has A Compelling Interest and Duty to Provide Lawfull Elections

NH has a duty and obligation to prevent non-citizens from diminishing the vote of qualified NH citizens.

NH's Legislature tried many times to specifically define words and phrases in its election laws such as HB 1284 and SB3, two of the statutes in question here, in response to out-of-state litigants. Several times, these non-citizen litigants held up the adoption of new legislation past another election. Litigants such as Hannah Rivers and Annmarie Guare from previous cases named for them, voted in NH but never were or ever became NH citizens.

### Regarding Plaintiffs "Facts"

In their pleading Plaintiffs argue "facts" which have no basis in reality but are more complaints, and random comments from state officials that supposedly show something other than the person wanting qualified lawful citizens to vote. Their

"facts" are more a list of desires for extra rights for out-of-state students who choose to vote in NH without the required obligations of citizenship.

1. Under the section FACTS in paragraphs (8) and (9) Plaintiffs use a strange type of logic to avoid the State Constitution requirement of domicile by arguing the word "resident" creates a loophole for non-citizen, out-of-state college students.

2. This nonsensicle position was put to rest by a recent NH Supreme Court OPINION of the Justices. (Exhibit  )

3. In paragraph (10) Plaintiffs pick and choose words to create something called a person who is: *"a domiciliary but not a legal resident."* A person domiciled in NH is by definition, a "legal resident." Once again, the recent Opinion of the Justices destroys that play on legal definitions. The Plaintiffs also ignore the words, *"manifests an intent."* To manifest an intent is to take an action obvious to people that you are more than simply intending to do something. One must manifest an intent to become domiciled in NH.

4. Plaintiffs in paragraph (11) argue again that a domiciled person is forced (deemed) to be a resident. Any person domiciled in a state or municipality is a legal resident. There is no harm to that person, student or not, simply requirements of citizenship.  No one is forcing a non-resident to vote in NH and declare NH his domicile. The person who registered to vote in NH and

not at home where he wants to maintain a driver's license signed a State Registration Form under penalty of perjury. It says: "*I hereby swear and affirm, under the penalties for voting fraud set forth below, that I am not in possession of some or all of the documents necessary to prove my identity, citizenship, and age and that I am the identical person whom I represent myself to be, that I am a duly qualified voter of this town (or ward), that I am a United States citizen, that I am at least 18 years of age as of this date or will be at the next election, and that to the best of my knowledge and belief the information above is true and correct.*"   654:12 Determining Qualifications of Applicant.

### The "Poll Tax" Argument

Finally, in Paragraph (13) Plaintiffs try and establish a mandatory financial cost for voting in NH instead of their legal residences in California and Louisiana. Again, twisted logic to make a case that appears to be a way of stalling legislation past the next election. Not concerned that they are violating Federal and State statutes for voting illegally in NH they claim that they are forced to register vehicles and get a NH driver's license for simply exorcising their so-called right to inter-state voting.

It is the choice of some out-of-state college students to vote in NH instead of in their home state. The cost of becoming a NH citizen and getting a NH driver's license is

exactly the same for a new family, new resident, transferred employee, or anyone 16 years of age who wants to get a NH driver's license. This fictional "poll tax" argument is a problem of the Plaintiffs own making – unless it is simply a way to drag NH into Federal Court because the NH State Supreme Court put this nonsensical "resident, residence, domicile" issue to rest in 2018 – not in the Plaintiffs favor.

### Supposed Limitation Of Student Voters

Under the title: "HB 1264's Legislative History Demonstrates That It Was a Partisan Attempt to Limit College Students' Voting" Plaintiff in paragraphs (14 – 21) Plaintiffs use comments from proponents of various election law legislation aimed at keeping NH's elections in the hands of qualified NH voters as evidence against them when in fact each person quoted is simply expressing his support of fair elections. In the case of Deputy Secretary of State David Scanlon (18). He testified:

*"You should be a resident to have your domicile in the locality where you are going to vote .... A student would have to decide whether they want to claim if they're a resident of the state of New Hampshire ... and if they do, they're subject to whatever else would be required of any other resident of the state of New Hampshire,"*
Plaintiffs are using the perfect argument for out-of-state students choosing to be qualified residents to vote in NH instead of their legal residence at home as evidence

against the State in this case. In the alternative, Plaintiffs would argue that the Deputy Secretary of State should encourage non-citizens to vote. It makes no sense.

Under the title: "New Hampshire Has a History of Trying to Disenfranchise College Students" paragraphs (21-28) Plaintiffs continue arguing under the false assumption that out-of-state students who refuse to abandon their previous domicile are entitled to vote in NH but not become citizens, therefore, qualified to vote and assume all responsibilities of NH citizenship, again misquote the *Newburger* case. In *Newburger* there was never a question raised of the student's domicile. The only question was whether a durational residency test constitutional. It bears repeating that the Court described the 1972 plaintiffs as: *"persons who are in every meaningful sense members of New Hampshire political communities,"* referring to college voters who accepted the responsibilities of citizenship in NH to vote. This not the case with these current student litigants. Quite the opposite.

Under the title: College Students and Towns with High Populations of College Tend to Vote for Democratic Candidates in Significant Numbers for Close Elections pages (29-33) Plaintiffs expose the heart of the purpose for this case. They show examples of how the out-of-state illegal student votes skewed NH General Elections in several recent elections. Plaintiffs state in paragraph (31): *"College students played a pivotal role in all three elections. In Durham, home to the University of New Hampshire (the largest college in the state), for example, Hillary Clinton*

12

*received 6,501 votes compared to 2,450 for Donald Trump. Colin Van Ostern received 5,896 votes in Durham compared to 2,913 for Chris Sununu, and Margaret Hassan received 6,287 votes compared to 2,967 for Kelly Ayotte.*

That Particular race between Hassan and Ayotte flipped a US Senate seat with only a 1,017-vote difference. To understand how critical out-of-state student voters are to the Democrat Party this Court must visit the study of same-day voters from that General Election conducted by the NH Secretary of State and Department of Safety documenting how few 2016 same-day registrants claiming NH domicile to vote using an out-of-state driver's license had acquired a NH license 10 months later. Plaintiffs have no concern that on November 8, 2016, 6,500 people registered same-day but, according to the study 5,313 never became NH citizens. Those 5, 313 registrants signed a domicile form, showed out-of-state identification, voted in a General Election and are still not qualified NH voters. Most of those same day votes were in college owns. These 5,313 voters only account for one day, November 8, 2016. Thousands of people registered for the February Presidential Primary and in the days after that leading up to the General Election. Those numbers haver never been made public by the Secretary of State.

## State Limitation of Out-of-State Students At State Colleges

RSA 187-A:10 Out-of-State Students, which requires state colleges limit out-of-state tuition paying students who have no legal domicile in NH to 25%. Each year state colleges ask for a waiver and raise that limit to around 50%. Each student signs at a state college in NH signs a Resident Tuition Form declaring under penalty of perjury their domicile is in NH. Out-of-state students pay almost twice the tuition of a NH student. But the students in state colleges, for some reason, only want to vote in NH elections while going to school here, not pay half their tuition. This exposes why Plaintiffs have brought suit from a private college like Dartmouth to avoid this possible paper trail.  Their real goal with this suit is to use out-of-state students to further the interests of the Democrat Party, the party college students vote for in college towns increasingly and overwhelmingly over the years.

https://admissions.unh.edu/sites/default/files/media/pdf/Notarized%20Residency%20Statement-2014%20revised.pdf

In 2017 National Review's Deroy Murdoch produced a story based on Judicial Watch's study of state voter rolls. Judicial Watch won a suit against California on January 4, 2019 forcing that state to remove 1.5 million names of questionable "ghost" voters from their rolls using the same data process.

https://www.nationalreview.com/2017/08/election-fraud-registered-voters-outnumber-eligible-voters-462-counties/

This 2017 article used US Census data to show NH had 8,211 ghost voters, more than enough votes to question that General Election US Senate race, understanding that most of these voters would be found at colleges where the brunt of the current same-day non-citizen votes are cast. The Court should be aware that once on the voter rolls, out-of-state college voters and out-of-state campaign workers who vote in NH are not tracked and are indistinguishable from qualified NH voters. It is assumed they are qualified and only need show any form of identification to vote. No registration form or perjury clause is involved.

### Parties in Present Case Did Not Give Louisiana and California Addresses of Current, Valid, Out-of-State Driver's Licenses

Intervenor argues that the Plaintiffs in this case, residents of California and Louisiana, did not provide their home state addresses in their Complaint. This lack of information impedes any potential investigation as to their possible present or recent registration to vote in their home state. Each state has its own definition of a qualified resident for voting and driving privileges.

Louisiana: RS 18:101, CHAPTER 4. REGISTRATION OF VOTERS

PART I. REGISTRATION

Says in part: "*D. A person who is otherwise qualified to vote in this state, who has begun residence in another state or another political subdivision of this state after the close of the registration records pursuant to R.S. 18:135 for an election for president and vice president of the United States or for electors for president and vice president and who for that reason does not satisfy the registration requirements set forth in this Chapter, may vote in such an election:*

*(1) In person in the place in this state where he resided immediately before his removal, if he satisfied the requirements to vote in that place as of the date of his change of residence, or*

*(2) By absentee by mail ballot in the place in this state where he resided immediately prior to his removal, if he satisfies the requirements for absentee by mail voting in that place except for his nonresident status and the reasons for his absence.*"

http://www.legis.la.gov/Legis/Law.aspx?d=81242

California statute: ARTICLE 1. General Provisions [2000- 2000]

(a) Every person who qualifies under Section 2 of Article II of the California Constitution and who complies with this code governing the registration of electors may vote at any election held within the territory within which he or she resides and the election is held.

(b) Any person who will be at least 18 years of age at the time of the next election is eligible to register and vote at that election.

(c) Pursuant to Section 2102, any person who is at least 16 years of age and otherwise meets all eligibility requirements to vote is eligible to preregister to vote, but is not eligible to vote until he or she is 18 years of age. (Amended by Stats. 2015, Ch. 728, Sec. 1. (AB 1020) Effective January 1, 2016.

https://leginfo.legislature.ca.gov/faces/codes_displayText.xhtml?lawCode=ELEC &division=2.&title=&part=&chapter=1.&article=1.

In the present case, neither Plaintiff is harmed, can show no diminishment of her right to vote, is prevented in any way from voting legally at their lawful domicile. Both Plaintiffs possess valid driver's licenses in their home state which are what is required as lawful I.D. to vote in both states. Neither Plaintiff would have to give a false legal address to NH election officials when filling out the NH Residency Form.

### Jury Duty in New Hampshire RSA 500-A:7-a Qualifications of Jurors.

In New Hampshire, potential jurors for juror wheels for State and Federal juries are chosen through a mixed list of randomly selected NH citizens by using voter checklists and valid driver's licenses. Since Plaintiffs are not in possession of a valid driver's NH license and this present case was brought to ensure they do not have to get one, they are less if not totally unlikely to be picked for either jury duty. If in fact

they were picked for jury duty it would be unlawful for them to do so. This is because they are not NH citizens but only reside here during their education.

## Problems Resulting From Out-Of-State, Non-citizen Voters

Recently, a resident of Boston, Ma. who registered his car and voted from a relative's home in Derry, NH sat on a Federal Court Case involving a drug dealer in NH. After the case was over and the defendant was found guilty the defense counsel appealed the conviction on grounds the juror did not live in NH. That case is currently pending to the best of this Plaintiff's knowledge. Allowing thousands of out-of-state students to get on NH's voter checklists will, as in this case, jeopardize court cases in the future. To allow as Plaintiffs wish, non-citizen students to vote on NH would create not only a separate class of voter for elections but another class of NH citizen for jury selection. Plaintiffs are already subject to jury duty in their home state.

## Right to Hold Office  [Art.] 11. [Elections and Elective Franchises.]

*"Every inhabitant of the state, having the proper qualifications, has equal right to be elected into office."*

Plaintiffs could at this time have asked for the right to hold office as well as vote but have not done so. They must assume the right to hold office comes with the right to be an out-of-state non-domiciled voter. This fact is revealing in that Plaintiffs only care about enhancing their vote by casting it in NH but not wanting the "right" to

hold public office. This belies the 1972 *Newburger* decision regarding: *"persons who are in every meaningful sense members of New Hampshire political communities."* NH, to the Plaintiffs, appears to be a menu they can pick and choose from. It also shows there will be endless litigation to settle other so-called "rights" by allowing out-of-state voters. Can they become judges?

Article III of the Constitution imposes a minimal constitutional standing requirement on all litigants attempting to bring suit in federal court, part of which is that the litigants show that the question at hand is likely to be redressed if the requested relief is granted. Because out-of-state Plaintiffs only ask to vote, the question of out-of-state student voters holding office as well is left for another day.

### History of Out-of-State Dartmouth Student Voters Running for Office

College students are a vast majority of voters in Hanover and they voted a 20-year-old to a county treasurer position. New articles at the time were very supporting.

*"Sievers election marks an inspiring moment in local politics in that she brings refreshing diversity to a county position and sets an example for future municipal and local elections. It also vindicates the use of new media in local politics, as Sievers largest campaign expense was a $51 Facebook ad. In another sense, her election is an inspiration for college students to stay involved in politics and civic*

*service, even beyond the general election by campaigning, volunteering, or even running for office."*

https://www.cbsnews.com/news/editorial-students-election-win-sets-example-for-youth-participation/

Not long after winning the position Sievers, of Big Sky, Montana, began missing meetings and failed to conduct business on time. Eventually another person took over.

http://www.thedartmouth.com/article/2010/04/county-execs-ask-sievers-to-resign

## ARGUMENT

### The Plaintiff Should Be Permitted to Intervene as of Right.

Intervenor requests this Court must permit intervention of this timely application for the reasons below.

(1) Intervenor obviously has a lawful interest in seeing his vote in NH General Elections protected from out-of-state voters.

(2) Intervenor's interest will unconstitutionally impaired by disposition of this Complaint, because existing parties may not adequately represent his or similarly situated interest.

(a) The Court in Newburger in 1972 mentioned the lack of the State to adequately protect the rights of qualified NH voters by failing to show a compelling state interest in keeping out-of-state students from overwhelming some NH municipalities:

*"We note that defendants do not rely on any state interest in preventing election frauds nor on any desire to prevent students from overwhelming a college community."*

*[2] Such reliance was specifically rejected by the State upon inquiry from the court."*

And again in "Guare" the State stipulated a nonsensical reverse meaning for the words "domicile" and "residence" found in no dictionary or law:

*"For the purposes of this appeal, the State has agreed that the 2012 law that added the challenged language to the voter registration form, Laws 2012, 285:2, does not alter the statutory definitions of "domicile" and "residence." The State has also acknowledged that the statutory definition of "domicile" and the statutory definition of "residence" differ. Further, the State has agreed that, to vote in New Hampshire, a citizen need only have a New Hampshire "domicile," and need not be a New Hampshire "resident."*

This Intervenor has no assurance the State will not cling to this warped definition of these critical words used in our statutes and State Constitution.

## Intervenor Should Be Allowed to Intervene By Permission

This Intervenor shares with the Complaint a common question of constitutional law that will not unduly delay or prejudice the adjudication of the original parties' rights. In fact, Intervenor and similarly situated qualified voters of NH have more of an interest in seeing this Motion to Intervene granted by the Court as they would suffer diminished voting rights by allowing non-citizen Plaintiffs to proceed with an action in which they have no standing. The Constitution of the State of New Hampshire, Part I Article II, and Part I Article I, as well as the US Constitution Article 14 provide for the protection of qualified NH voters rights.

## Plaintiff/Intervenor's Motion is Timely

The Motion to INTERVENE was filed within 21 days of the publishing of the COMPLAINT.

## The Plaintiff/Intervenor Has a Substantial Legal Interest in the Subject Matter of This Case.

Obviously, the right to a lawfully counted vote in the state in which I am domiciled is of primary concern. Having non-citizen voters casting votes in NH General Elections, as these Plaintiffs and thousands of other non-citizens have already done diminishes this Intervenor's vote as would Plaintiff's Complaint which has no legal standing. There are few issues of lesser legal interest to any qualified NH voter.

### Intervention in this Case is Necessary to Protect the Intervenor's Interest.

This intervenor will lose the value of his qualified vote in NH General Elections if out-of-state voters can continue to diminish his vote. Plaintiffs state they have already voted in a NH General Election and through this COMPLAINT wish to do so again and open the door to increased participation by unqualified voter from other states. Continued impairment of this Intervener's and similarly situated qualified NH voters' substantial legal interest will continue if intervention to challenge the standing of non-citizen voters is denied." Miller, 103 F.3d at 1247.  This Intervenor is concerned a new law unconstitutional allowing non-citizen voting will be enacted by a court decision rather than by proper legislation. *Citizens for Balanced Use v. Mont.*

### The Existing Parties Cannot Protect the Interest of The Intervenor

Issues of jury duty and laws of residency in other states, along with the concerns expressed in *Newburger* that the State showed no, "compelling state interest" argument have shown that this Motion to Intervene is necessary to protect the voting rights of the Intervenor will be addressed in this case.

### Intervention in this Case is Necessary to Protect Intervenor's Interest.

Under the third intervention prong, "a would-be intervenor must show only that

impairment of its substantial legal interest is possible if intervention is denied." Miller, 103 F.3d at 1247.  "This burden is minimal," and can be satisfied if a

determination in the action may result in "potential stare decisis effects." Id.; see also Citizens for Balanced Use v. Mont.

## **CONCLUSION**

In this case non-citizen Plaintiffs demand the right to vote in New Hampshire simply because of their presence in our state. The fact that they have and intend to keep driver's licenses in their domicile of record is factual proof they have no standing in any court to bring a case for the right to vote in New Hampshire.

The NH State Supreme Court summed up their lack of standing in The Opinion of the Justices in July of 2018:

*HB 1264 does not affect the eligibility of persons to vote in New Hampshire elections. "The domicile test for determining where citizens may vote dominates the election laws of most states." Wit v. Berman, 306 F.3d 1256, 1261 (2d Cir. 2002) (citing Annotation, Residence of Students for Voting Purposes, 44 A.L.R.3d 797 § 2, at 801 (1972), for the proposition that "[i]t is a matter of virtually uniform recognition that, where state constitutional and statutory provisions limit the right to vote to the residents of a given geographical area, the term residence should be equated with the concept of domicile" (quotations omitted)). As discussed above, our state's definition of domicile for voting purposes is set forth in RSA 654:1, I, and nothing in HB 1264 purports to change the terms of that statute. Accordingly, all*

*persons who qualify as domiciliaries of this state at the present time will remain qualified as domiciliaries if HB 1264 is enacted into law."*

And again, the NH Supreme Court stated quite clearly in that Opinion:

*"Viewed from this perspective, it is apparent that the premise of the opponents' arguments is that New Hampshire is required to have a special rule of domicile solely for voting purposes, so that persons are allowed to vote here without assuming the other obligations of citizenship normally imposed. The opponents of the bill have not cited, nor are we aware of, any authority supporting such a requirement under the Federal Constitution or the constitution of any state."*

It is abundantly clear the Plaintiffs have no standing to bring this action and no right to vote in NH.

## **RELIEF REQUESTED**

WHEREFORE, Intervenor respectfully requests that this Court:

A. Declare that Plaintiffs who are and choose to remain citizens of states other than NH have no standing to sue for the "right" to vote in NH.

B. Dismiss the Plaintiffs Complaint for lack of standing.

~~C. Ask the Court to EXPEDITE this case so that it does not affect or disturb the next NH General Election.~~  *BO.*

D. Do not award Plaintiffs their costs of suit; and

E. Grant such relief this Court deems proper.

## Verification

I, Edward Naile, verify the above statements are true to the best of my ability

_____ March 6, 2019

## Certification

I, Edward Naile, certify I have delivered a copy of this MOTION to INTERVENE

to all other parties I am aware of.

_____ March 6, 2019

Respectfully,

Edward Naile

61 Tubbs Hill Rd.

Deering NH 03244

603 - 831 - 2031

ednaile@comcast.net