UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

```
*************************************
CAROLINE CASEY, et al.,              *
                                     *
           Plaintiffs,               *
    v.                               *
                                     *
WILLIAM M. GARDNER, Secretary of     *
State of the State of New Hampshire, *
in his official capacity, et al.,    *
                                     *
           Defendants.               *
                                     *
*************************************        Case No. 19-cv-00149-JL
NEW HAMPSHIRE DEMOCRATIC,            *        (Consolidated Cases)
PARTY, By Raymond Buckley, Chair,    *
                                     *
           Plaintiff,                *
    v.                               *
                                     *
WILLIAM M. GARDNER, in his official  *
Capacity as New Hampshire Secretary of *
State, et al.,                       *
                                     *
           Defendants.               *
                                     *
*************************************
```

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINTS**

## PRELIMINARY STATEMENT

This motion calls upon the Court to decide: (a) whether the two college-student plaintiffs ("Individual Plaintiffs") have standing to challenge HB 1264, which they claim has the effect of requiring them to obtain a New Hampshire driver's license, despite their inability to allege that they actually operate a car in New Hampshire; (b) whether the Individual Plaintiffs and the New Hampshire Democratic Party ("NHDP") (collectively, the "Plaintiffs") have alleged an injury that is traceable to the Secretary of State, even though the Secretary has no authority to enforce the complained-of provisions, which are general rules of statutory construction and motor vehicle statutes; and (c) whether the Plaintiffs have stated a claim that "equalizing the legal standard for domicile for voting purposes with the legal standard for residence for other purposes," *Opinion of the Justices*, 171 N.H. 128, 145 (2018), violates the Fourteenth, Twenty-Sixth, and Twenty-Fourth Amendments of the United States Constitution.

For the reasons explained in the Defendants' opening memorandum, the Individual Plaintiffs have failed to establish their standing, the Plaintiffs have failed to allege an injury that is traceable to the Secretary of State, and the Plaintiffs have failed to state any valid constitutional claim. For the reasons explained below, the Plaintiffs' respective objections offer nothing to rectify those failures.

## ARGUMENT

First, the Individual Plaintiffs have not alleged an injury-in-fact sufficient to establish their standing to bring this action. *See Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018). The only injury the Individual Plaintiffs articulate is having to "choose between paying to domesticate an out of state driver's license and foregoing driving entirely in order to vote." Individual Pls.

Mem. at 11.[1]  This is an incorrect statement of the law that is not entitled to an assumption of truth on a motion to dismiss.  Moreover, as explained in the Defendants' opening memorandum, the Individual Plaintiffs do not allege that they currently drive or intend to drive within the state, such that they would be obligated to obtain a New Hampshire driver's license under their reading of RSA 263:35.  *See* Defs. Opening Mem. at 12-13.[2]  Though the Individual Plaintiffs do not dispute the absence of any such allegation in their complaint, *see* Individual Pls. Mem. at 11, they contend that the Court can nonetheless infer that they will drive a car in New Hampshire "at some point in the next two years" based on where they live and the fact they have driver's licenses from other states.  Individual Pls. Mem. at 11.  This contention does not establish standing above the speculative level, and therefore cannot defeat a Rule 12(b) motion.  *See Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 25 (1st Cir. 2018) (when ruling on Rule 12(b) motions, courts "assess whether there are sufficient facts to raise a right to relief ***above the speculative level*** on the assumption that all allegations in the complaint are true" (quotation marks and citations omitted) (emphasis added)).  Accordingly, the Court should dismiss the Individual Plaintiffs' complaint for lack of standing.

Second, the Plaintiffs' injuries are not fairly traceable to or redressable by the Secretary of State.  The Plaintiffs try to resist this conclusion by arguing that the Secretary and members of his staff have expressed public support for HB 1264.  *See* Individual Pls.' Mem. at 13-15.  But the Plaintiffs fail to explain how publicly supporting a particular law bestows upon a public official the ability to enforce that law.  As explained in the Defendants' motion to dismiss, the Secretary does not have the authority to enforce any of provisions of the Motor Vehicle Code or

---

[1] References to "Individual Pls. Mem." are to Casey and Flaherty's Objection to Motion to Dismiss the Consolidated Complaints With Incorporated Memorandum of Law (ECF Doc. No. 24).

[2] References to "Defs. Opening Mem." are to the Memorandum of Law in Support of Defendants' Motion to Dismiss the Consolidated Complaints (ECF Doc. No. 20-1).

the general rules of statutory construction that the Plaintiffs allege will actually cause them harm in the wake of HB 1264.  *See* Defs. Opening Mem. at 14-15.  The Plaintiffs' contention that they have standing because the Secretary has statutory obligations to train and provide information to local election officials and the public similarly fails.  *See* Individual Pls. Mem. at 15-17.  However, the Plaintiffs have not brought claims against the Secretary for failing to provide adequate training to local election officials or for failing to provide accurate information about the state's election laws or their effects, and there is nothing to suggest that the Secretary will provide incorrect training or inaccurate information should this Court declare HB 1264 unconstitutional.  The Plaintiffs' suggestions to the contrary, in addition to finding no support in either complaint, are again nothing more than pure speculation.  The Plaintiffs therefore do not have standing to bring this action against the Secretary, and the Court should dismiss him as a defendant.

Third, the Plaintiffs' facial challenge to the constitutionality of HB 1264 fails as a matter of law.  A successful facial challenge to HB 1264 requires the Plaintiffs to allege facts showing either that there is no set of circumstances under which HB 1264 is constitutionally valid, *United States v. Salerno*, 481 U.S.739, 745 (1987), or that HB 1264 does not have a "plainly legitimate sweep," *Libertarian Party of N.H. v. Gardner*, 843 F.3d 20, 24 (1st Cir. 2016).  The Plaintiffs cannot make either showing, because they do not (and cannot) dispute that HB 1264, which amends the general rules of statutory construction in RSA chapter 21, applies throughout the 678 chapters of the New Hampshire Revised Statutes.  Defs. Opening Mem. at 16.  Nor do they dispute that they "have made no attempt to show that HB 1264's application throughout all of the potentially applicable statutory chapters is unconstitutional."  Defs. Opening Mem. at 16.  Under

these circumstances, the Plaintiffs cannot satisfy the Supreme Court's standard for mounting a facial challenge to HB 1264.  *See id.* at 15-17.

The Plaintiffs respond, in essence, that they do not need to demonstrate that HB 1264's application to any statute other than RSA 263:35 and RSA 261:45 is constitutionally problematic because a "'facial challenge is best understood as a challenge to the ***terms of the statute***, not hypothetical applications, and is resolved simply by applying the relevant constitutional test to the ***challenged statute***.'"  Individual Pls. Mem. at 17 (quoting *Saucedo v. Gardner*, 335 F. Supp. 3d 202, 213-14 (D.N.H. 2018)) (emphasis added).  The problem with Plaintiffs' reliance on this principle is that they are not challenging the constitutionality of a single statute, like RSA 263:35 or RSA 261:45.  Rather, they are challenging HB 1264, which amends the definitions of "resident" and "residence" in RSA chapter 21 which, in turn, applies throughout "***all statutes***" in the New Hampshire Revised Statutes.  RSA 21:1 (emphasis added).  HB 1264's application to RSA chapter 207 (General Provisions as to Fish and Game), for example, does not become a "hypothetical application" of HB 1264 simply because the Plaintiffs have chosen not to challenge it in this lawsuit.  Ultimately, in order to mount a successful facial attack on HB 1264, the Plaintiffs would need to show that HB 1264's application throughout the New Hampshire Revised Statutes is unconstitutional.  Because they make no effort to do that, the Plaintiffs' facial challenge to HB 1264 must fail.

Fourth, the Plaintiffs do not explain how HB 1264 implicates the right to vote in a way that triggers the protections of the United States Constitution.  The Individual Plaintiffs claim that HB 1264 implicates the right to vote because the "legislative record" indicates that it is "an election law," Individual Pls. Mem. at 23 n.5, while the NHDP claims that HB 1264 implicates the right to vote because it was considered by the House and Senate Election Law Committees,

members of the Office of the Secretary of State testified at legislative hearings relating to HB 1264, and statements by certain Republican lawmakers indicate that HB 1264 was "intended to . . . implicate the right to vote." NHDP Mem. at 9.[3] What matters, however, is how HB 1264 actually operates. And, as explained by the New Hampshire Supreme Court, *see* Defs. Opening Mem. at 17-20, HB 1264 "does not affect the <u>eligibility</u> of persons to vote in New Hampshire elections," *Opinion of the Justices*, 171 N.H. at 142, nor does it regulate the "registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). Accordingly, this case does not trigger the voting protections of the United States Constitution, and the Court can dispose of the Plaintiffs' complaints without evaluating HB 1264 under the *Anderson-Burdick* framework.

<u>Fifth</u>, even if *Anderson-Burdick* applies, there is no support for the Plaintiffs' suggestion that **any** case decided under the *Anderson-Burdick* framework is an "inherently fact-intensive inquiry" that cannot be resolved on a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Stone v. Bd. of Election Comm'rs*, 750 F.3d 678 (7th Cir. 2014) (affirming the district court's dismissal for failure to state a claim, because, even though Chicago's ballot access scheme imposed "some burden" on candidates and their supporters, there was "no question" that it served important governmental interests, including preventing voter confusion and blocking frivolous candidates from the ballot); *Rubin v. City of Santa Monica*, 308 F.3d 1008 (9th Cir. 2002) (affirming the district court's dismissal for failure to state a claim, because the ballot regulation in question furthered important governmental interests and did not severely limit a candidate's First Amendment rights); *Nashville Student Organizing Comm. v. Hargett*, 155 F. Supp. 3d 749, 754 (M.D. Tenn. 2015) (dismissing complaint for failure to state a claim, and concluding that "[t]he

---

[3] References to "NHDP Mem." are to the New Hampshire Democratic Party's Objection to Defendants' Motion to Dismiss With Incorporated Memorandum of Law (ECF Doc. No. 25).

allegations in the Complaint involving the burden posed to students by the logistics of having to obtain a state-issued identification card other than a student identification card do not—as a matter of law—give rise to an inference that students are burdened in any way greater than the burden to the general population addressed in *Crawford*."). Indeed, "there is nothing remarkable about granting a motion to dismiss in an election-law case if careful consideration of the complaint shows that the plaintiff has not stated a claim."[4] *Stone*, 750 F.3d at 686 (collecting cases); *see also Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (explaining that the relevant test is a "flexible" one).

In this case, careful consideration of the Plaintiffs' complaints shows that they have not stated a claim that HB 1264 represents an unconstitutional restriction on the right to vote. That is because a state's important regulatory interests are generally sufficient to justify non-severe burdens on the right to vote. *See Burdick*, 504 U.S. at 434; *Anderson*, 460 U.S. at 788. Here, the Plaintiffs assert that the burden imposed by HB 1264 is that "every person who registers to vote in New Hampshire will be obligated to purchase a New Hampshire driver's license, if they drive, and register their car in New Hampshire, if they own one." Individual Pls. Mem. at 24 (footnote omitted). They further claim that a driver's license costs $50 and registration fees "can rise to hundreds of dollars," and "getting to a DMV to purchase a license can be a burden itself." *Id.* These are basic, everyday requirements of residency that are not "severe burdens" on the right to

---

[4] The NHDP misconstrues the First Circuit's decision in *Cruz v. Melecio*, 204 F.3d 14 (1st Cir. 2000), when it claims that *Cruz* "demonstrates that *Anderson-Burdick* cases cannot be adequately resolved on the pleadings alone." NHDP Mem. at 2. In *Cruz*, the plaintiffs challenged "certain provisions of Puerto Rico law regulating ballot access on the part of political parties." 204 F.3d at 17. Those provisions required parties seeking to have their candidates appear on the ballot to file notarized petitions with the Puerto Rico Election Commission "signed by registered voters aggregating no less than [approximately 100,000 registered voters]." *Id.* Under those circumstances, the Court found that the "fact-specific nature of the relevant inquiry [under *Anderson-Burdick*] obviates a resolution of **this case** on the basis of the complaint alone." *Id.* at 22 (emphasis added). But the Court did not adopt a *per se* rule that *Anderson-Burdick* balancing can never be resolved at the pleadings stage. *See Munro v. Socialist Workers Party*, 479 U.S. 189, 194-95 (1986) (explaining that election cases may be resolved without evidence).

vote and are not requirements triggered by the act voter registration. Thus, there is nothing that discovery would meaningfully illuminate on the issue of burden.

As to the State's interests in enacting HB 1264, the Supreme Court does not require that the State make an evidentiary showing of such interests. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997) ("elaborate, empirical verification of the weightiness of the States' asserted justifications" is not required); *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986) ("We have never required a State to make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access. . . . To require States to prove actual voter confusion, ballot overcrowding, or the present of frivolous candidacies as a predicate to the imposition of reasonable ballot access restrictions would invariably lead to endless court battles over the sufficiency of the 'evidence' marshaled by a State to prove the predicate."). In *Timmons*, for example, the Supreme Court, in upholding a Minnesota law prohibiting candidates from appearing on the ballot as a candidate of more than one party, relied on a state interest that was advanced for the first time at oral argument. *See Timmons*, 520 U.S. at 366 n.10 ("[A]t oral argument, the State contended that it has an interest in the stability of its political system . . . ."). In any event, here it is obvious that HB 1264, which "place[s] voters and residents on equal footing as New Hampshire citizens," *Opinion of the Justices*, 171 N.H. at 145, is supported by the State's interests in ensuring a community of interest among its electorate and ensuring that those members of the community are all appropriately regulated in the same manner if they own and drive a motor vehicle on the roadways of the State. *See Storer v. Brown*, 415 U.S. 724, 736 (1974) ("It appears obvious to us that the one-year disaffiliation provision furthers the State's

interest in the stability of its political system."). Thus, HB 1264 does not violate the First and Fourteenth Amendments to the United States Constitution.

Sixth, the Plaintiffs' Twenty-Sixth Amendment claim fails, as a threshold matter, for the same reason that the First and Fourteenth Amendment claims fail: HB 1264 does not implicate the right to vote. *See* U.S. Const. amend. XXVI, § 1 (prohibiting the ***denial*** or ***abridgment*** of the right to vote on account of age); *see also* Defs. Mem. at 17-20. In any event, the Plaintiffs are unable to overcome the problem described in the Defendants' opening memorandum—namely, that their complaints fail to identify any defined class of "young voters" sufficient to invoke the protections of the Twenty-Sixth Amendment. In their objections, the Plaintiffs reframe their claim as alleging that HB 1264 "was motivated, at least in part, by an intent to discriminate against New Hampshire's youngest voters, some of whom go to college in this State but who do not have an indefinite intention to remain." Individual Pls. Mem. at 30. But in framing their claim this way, the Plaintiffs ignore the allegations in their complaints that the categories of persons affected by HB 1264 are far broader, *see* Defs. Mem. at 27 (noting allegations of purported impact on hospital residents, contact employees, underprivileged voters, and transitory voters), and they also implicitly recognize that HB 1264 has no effect on many of New Hampshire's "youngest voters," with any possible effect limited to those students who recently moved to New Hampshire to attend college and who operate and/or own a motor vehicle here. Under the circumstances, the allegations in the complaints are insufficient to invoke the protections of the Twenty-Sixth Amendment, which requires the Plaintiffs to show that voting rights have been denied or abridged "on account of age." U.S. Const. amend. XXVI, § 1.

Seventh, there is no merit to the Plaintiffs' poll tax claim under the Twenty-Fourth Amendment. The payment of a fee to obtain a driver's license—triggered by a person's

decisions (1) to assume a certain status as a resident of his or her community and (2) to operate a motor vehicle in that community—is not tantamount to the payment of a poll tax for voting. A poll tax is a broad-based levy imposed on each person as a condition of obtaining a ballot. *See Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 668 (1966) (recognizing that "a State may exact fees from citizens for many different kinds of licenses," and distinguishing a poll tax imposed on all citizens for voting from an equal fee imposed on all citizens to obtain a driver's license). There is no requirement in New Hampshire that a voter demonstrate that he or she has paid driver's license or car registration fees as a condition of obtaining a ballot. *See* RSA 654:12. Moreover, if Plaintiffs' argument were correct, it would have untenable consequences: it would require this Court to conclude that the payment of driver's license or car registration fees by some undefined class of New Hampshire voters constitutes an impermissible poll tax, while the payment of the same fees by other voters is constitutionally permissible. That result is absurd and illogical, and exposes why the Plaintiffs' Twenty-Fourth Amendment claim must fail.

## CONCLUSION

HB 1264 is not a voting restriction. It does not change any election law. It does nothing to change the eligibility or ability of persons to vote in New Hampshire elections. It does not burden the right to vote. Rather, HB 1264 "equaliz[es] the legal standard for domicile for voting purposes with the legal standard for residence for other purposes" and thereby "place[s] voters and residents on equal footing as New Hampshire citizens." *Opinion of the Justices*, 171 N.H. at 145. HB 1264 ensures that "those who are permitted to vote are bona fide residents" of New Hampshire "who share a community of interest with other citizens" of the State. *Id.* at 142-43. This is a "legitimate concern of the highest order." *Id.* Accordingly, for all of the reasons set

forth above and in the Defendants' opening memorandum, the Court should dismiss both the Individual Plaintiffs' and the NHDP's complaints in their entireties.

                              Respectfully submitted,

                              WILLIAM M. GARDNER, in his official capacity as the Secretary of State of the State of New Hampshire, and GORDON J. MACDONALD, in his official capacity as the Attorney General of New Hampshire

                              By their attorney,

                              THE OFFICE OF THE ATTORNEY GENERAL

Dated: June 11, 2019                /s/Anthony J. Galdieri
                              Seth M. Zoracki, Bar No. 267887
                              Assistant Attorney General
                              Anthony J. Galdieri, Bar No. 18594
                              Senior Assistant Attorney General
                              Samuel R.V. Garland, Bar No. 266273
                              Attorney
                              Civil Bureau
                              New Hampshire Department of Justice
                              33 Capitol Street
                              Concord, NH 03301
                              (603) 271-3650
                              seth.zoracki@doj.nh.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 11, 2019 I electronically filed the foregoing with the United States District Court for the District of New Hampshire by using the CM/ECF system. I certify that counsel for Plaintiffs are registered as ECF users and that they will be served via the CM/ECF system.

                              /s/Anthony J. Galdieri
                              Anthony J. Galdieri