UNITED STATES DISTRICT COURT
for the
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| CAROLINE CASEY and MAGGIE FLAHERTY<br><br>      Plaintiffs,<br><br>   v.<br><br>WILLIAM GARDNER, in his official capacity as New Hampshire Secretary of State, and<br>GORDON MACDONALD, in his official capacity as New Hampshire Attorney General<br><br>      Defendants.<br><br>NEW HAMPSHIRE DEMOCRATIC PARTY, By Raymond Buckley, Chair<br><br>      Plaintiff,<br><br>   v.<br><br>WILLIAM GARDNER, in his official capacity as New Hampshire Secretary of State, and<br>GORDON MACDONALD, in his official capacity as New Hampshire Attorney General<br><br>      Defendants. | Consolidated Case No.: 1:19-cv-00149-JL |

## CASEY AND FLAHERTY'S OBJECTION TO DANIEL RICHARD'S MOTION TO INTEVENE WITH INCORPORATED MEMORANDUM OF LAW

## INTRODUCTION

Plaintiffs Caroline Casey and Maggie Flaherty object to Daniel Richard's ("Richard")

*Motion to Intervene* (DN 37.0).   This Court has already rejected intervention of Ed Naile, who

advanced a similar argument. On April 3, 2019, the Court issued an order reading: "Denied.  While

the motion is styled as a motion to intervene (and the plaintiffs have apparently responded to it as

such), its prayer for relief does not request intervention *(to which Mr. Naile is not entitled under*

*applicable law)* . . . The court has read with interest, however, Mr. Nailes [sic] submissions in the

spirit of amicus-style filings." (Emphasis added).  The Court should do the same here.

Richard's motion consists largely of an argument that Part II, Article 30 of the New

Hampshire Constitution, *i.e.*, an article defining an inhabitant as "every person, qualified as the

constitution provides . . . in the town, or ward where he is domiciled," was "amended by the

constructive fraud of question 8 of the 1976 voter's guide." *See Motion*, p. 5. This argument ignores

that constitutional amendments are presumed validly, and voters' ratification of amendments

should be rejected only on "inescapable grounds."  *Fisher v. Governor*, 145 NH.H. 28, 37 (2000).

It further ignores that the voters who considered the constitutional changes were asked if they were

in favor of amending the Constitution "to make domicile rather than being an inhabitant a

prerequisite for the voting privilege." *Id.* at 38.

The only injury Richard alleges is his assertion that "The will of the people expressed in

the State and Federal Constitution's [sic] is being ignored by both the Plaintiffs and the

Defendants . . . It is in the vital interest of the Citizens of this State to preserve the constitutional

definitions of qualified voters to preserve the constitutional definitions of qualified voters to

preserve the integrity of State elections to local, State and Federal offices." *Motion*, pp. 1-2.

Presumably, Richard believes that his vote is being diluted by those he believes are not lawfully

eligible to vote. But this argument misses the mark in that Plaintiffs, who are domiciled in New

Hampshire under RSA 654:1, are already entitled, both by statute and constitution, to vote in New

Hampshire.  This lawsuit challenges not their eligibility to vote, but rather the fines they must pay as a consequence of exercising that right under HB 1264.  Indeed, HB 1264 makes no change to the criteria to vote.   Rather, HB 1264 imposes financial "residency" obligations on certain constitutionally-eligible voters who, like Plaintiffs, are domiciled in New Hampshire and assert their right to vote. Moreover, Richard's alleged injury of vote dilution applies equally to every registered voter in New Hampshire and so is not sufficiently particularized to permit his intervention.  Finally, any interest Richard may have is adequately protected by what Plaintiffs assume will be a competent defense of HB 1264 by the Attorney General's Office.

Plaintiffs do not object to Richard filing *amicus curiae*-style pleadings on dispositive motions, but do object to his participating as a party, taking discovery, filing pleadings on non-dispositive matters, and presenting evidence at any hearings in this matter.  *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 52-53 (D. Mass. 2015) (permitting group of students to file *amicus* briefs before the district court), *aff'd* 807 F.3d 472 (1st Cir. 2015).  Richard's motion should be denied because his motion does not meet the requirements of Federal Rule of Civil Procedure 24.

## I.        Richard is Not Entitled to Intervention as a Matter of Right

Intervention as a matter of right is governed by Federal Rule of Civil Procedure 24(a), which states "On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

Richard identifies no statute which would give him an unconditional right to intervene, so

Plaintiffs presume his claim for intervention as of right is based on Fed. R. Civ. P. 24(a)(2). A putative intervenor's failure to satisfy any of the four requirements—timeliness, sufficiency of interest, likelihood of impairment, and adequacy of other representation—defeats intervention by right. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 474 (1st Cir. 2015).

Richard's motion—filed after the Court denied Defendants' motion to dismiss and after the parties filed their first Joint Discovery Plan—is not timely. However, Plaintiffs focus their argument on the fact that Richard does not meet all the other requirements for intervention as of right. "The application of this framework to the diverse factual circumstances of individual cases requires a holistic, rather than reductionist, approach. The inherent imprecision of Rule 24(a)(2)'s individual elements dictates that they be read not discretely, but together, and always in keeping with a commonsense view of the overall litigation." *Public Serv. Co. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998).

**A. Richard Does Not Have a Sufficient Interest to Intervene As Of Right and Any Right is Not Likely to be Impaired**

"The first question is whether [intervenor] has a 'significantly protectable' interest in this suit, such that [his] claims 'bear a sufficiently close relationship to the dispute between the original litigants and the interest is direct, not contingent.'" *Maine Republican Party v. Dunlap*, 2018 U.S. Dist. LEXIS 82461, *2 (D. Me. May 16, 2018) (quoting *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 41-42 (1st Cir. 1992)) (brackets omitted). "An interest that is too contingent or speculative—let alone an interest that is wholly nonexistent—cannot furnish a basis for intervention as of right." *Ungar v. Arafat*, 634 F.3d 46, 51-52 (1st Cir. 2011) (citing *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989); *Moosehead Sanitary*

*Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 53 (1st Cir. 1979)).  The second question is whether any

right of the putative intervener is likely to be impaired.

Richard's supposed interest in the litigation, which comes from fears of vote dilution, is

not enough to establish a right to intervention.   In Richard's estimation, Plaintiffs are not

sufficiently tied to New Hampshire to be allowed to vote because the New Hampshire Constitution

should not permit domiciliaries of the state to vote, and this diminishes the effect of his vote

because presumably causing his preferred candidates to lose. Of course, the legislature has already

decided that students are sufficiently connected to New Hampshire to vote, and has authorized

them to do so, as is constitutionally required.  *See* RSA 654:1, I-a.

Richard's argument—that the New Hampshire Constitution was not validly amended to

permit domiciliaries to vote—is wrong because the voters did ratify the change to the New

Hampshire Constitution which changed the qualifications of voters from "inhabitants" to those

with domicile. The New Hampshire Constitution permits amendments when proposed by three

fifths of the membership of a constitutional convention, and ratification by two thirds of qualified

voters present and voting on the subject.   N.H. Const. Part II Art. 100. This is precisely what

happened with the amendment to the constitution to require voters be domiciled in the town or

ward in which they vote.  "In 1974, the constitutional convention voted to further amend Article

11[1] to effect numerous substantive and structural changes . . . and the citizens subsequently ratified

---

[1] Part I, Article 11 of the New Hampshire Constitution provides the qualifications for voters.  In its current form, it reads: "All elections are to be free, and every inhabitant of the state of 18 years of age and upwards shall have an equal right to vote in any election. Every person shall be considered an inhabitant for the purposes of voting in the town, ward, or unincorporated place where he has his domicile. No person shall have the right to vote under the constitution of this state who has been convicted of treason, bribery or any willful violation of the election laws of this state or of the United States; but the supreme court may, on notice to the attorney general, restore the privilege to vote to any person who may have forfeited it by conviction of such offenses. The general court shall provide by law for voting by qualified voters who at the time of the biennial or state elections, or of the primary elections therefor, or of city elections, or of town elections by official ballot, are absent from the city or town of which they are inhabitants, or who by reason of physical disability are unable to vote in person, in the choice of any officer or officers to be elected or upon any question submitted at such election. Voting registration and polling places shall be

the amendment." *Fischer v. Governor*, 145 N.H. 28, 36 (2000). One of these changes was to reduce the minimum age of voters, another was to make domicile rather than being an inhabitant the prerequisite to voting, and another was to remove language requiring that voters had "proper qualifications"—*i.e.* were not incarcerated on a felony. "Certain questions proposed by the 1974 constitutional convention were presented to the electorate in 1976." *Id.* at 38. Question 8 of the voters' guide inquired:

> Are you in favor of amending the Constitution to make the following changes relating to elections:
> (a) to reduce the minimum age of voters to eighteen;
> (b) to make domicile rather than being an inhabitant a prerequisite for the voting privilege;
> (c) to repeal certain provisions relative to voting in unincorporated places;
> (d) to specify that the receipt and counting of ballots and notification of winners in biennial election contests will be handled by the secretary of state; and
> (e) to provide the right to vote by absentee ballot in biennial or state elections, or in the primary elections therefor, or in city elections or town elections by official ballot?

*Id.* A sufficient number of voters voted in the affirmative that the amendment was ratified and added to the Constitution. "[E]very reasonable presumption, both of law and fact, is to be indulged in favor of the validity of an amendment to the Constitution when it is attacked after its ratification by the people." *Id.* at 37 (citation and quotation omitted). "We should not declare unconstitutional the voters' ratification of the amendment at issue absent 'inescapable grounds.'" *Id.* (quotation omitted). Richards points to no requirement that the voters should have been given an opportunity to vote on each change separately, and certainly none that would provide "inescapable grounds"

---

easily accessible to all persons including disabled and elderly persons who are otherwise qualified to vote in the choice of any officer or officers to be elected or upon any question submitted at such election. The right to vote shall not be denied to any person because of the non payment of any tax. Every inhabitant of the state, having the proper qualifications, has equal right to be elected into office." Part II, Article 30 of the New Hampshire Constitution, which Richard references, is in the portion of the Constitution discussing the state senate and is in harmony with Part I, Article 11. It reads: "And every person, qualified as the constitution provides, shall be considered an inhabitant for the purpose of being elected into any office or place within this state, in the town, or ward, where he is domiciled."

to declare the ratification invalid. *Cf id.* at 39 (noting that amendment to Part I, Article 11 removing reference to "proper qualifications"—*i.e.* no disenfranchising criminal convictions—was not validly enacted because it was not disclosed in the voters' guide, but "[b]ecause it is evident that this change was neither dependent upon nor interwoven with the other changes to Article 11 nor with the amendments to additional articles simultaneously ratified by the electorate, all other changes to Article 11 and the remaining amendments are unaffected by our holding.") (citations and quotations omitted).[2]

Presumably, Richard believes that because voters who are domicilaries are entitled to vote, his vote will be diluted. Richard's argument fails because HB 1264 does nothing to change the *eligibility* of voters.  Instead, HB 1264, by changing the definition of "residency" under RSA 21:6 and effectively linking this standing to the "domicile" standard that is used to determine voter eligibility under RSA 654:1, compels certain constitutionally-eligible voters who may not have plans to remain in New Hampshire indefinitely to, within 60 days of registering to vote, pay moneys to the State through car registration and driver's license "residency" fees if they own a car and/or drive.  *See* RSA 259:88 (stating that the term "resident" for motor vehicle purposes is defined under RSA 21:6); RSA 261:45, I (a person has 60 days to register a car in New Hampshire after becoming a legal resident); RSA 263:35 (a person has 60 days to obtain a New Hampshire driver's license after becoming a legal resident).  If they do not comply and pay these fees within 60 days of declaring their "residency" by registering to vote, they are subject to conviction for a violation level offense and "shall be fined $50 plus penalty assessment for a first offense," and

---

[2] Additionally, because the federal qualifications for electors set out in the United States Constitution, *see* U.S. Const. Art. I, sec. 2, Art. II, sec. 1, Amend. 12, and Amend. 17, have their bases in state law, as modified by the United States Constitution and federal law to prevent states from limiting the right to vote on the basis of race, sex, age, and other prohibited bases, Richard's arguments under the United States Constitution also fail.  *See id.*; *Katzenbach v. Morgan*, 384 U.S. 641, 647 (1966); *Ex Parte Yarbrough*, 110 U.S. 651, 663-665 (1884); *LaRouche v. Guzzi*, 417 F. Supp. 444, 448 (D. Mass. 1976).

"$100 plus penalty assessment" for "any subsequent offense committed during any calendar year." RSA 262:41.  Domiciliaries of New Hampshire, like Plaintiffs, are entitled to vote in New Hampshire regardless of whether they are required to pay motor vehicle fees after HB 1264 or not.[3]  RSA 654:1, I-a, which legally permits college students to vote in New Hampshire if they are domiciled here, was not changed by HB 1264.  The fear of vote dilution is not founded because the class of eligible voters will not change if this Court declares HB 1264 unconstitutional.  Rather, it is the class of those required to domesticate driver's licenses and car registrations that will change.  As a result, Richard will not be impacted by alleged unqualified voters diluting his vote with theirs if this lawsuit is successful and HB 1264 enjoined.

The next problem with Richard's argument is that any interest he may have in preventing vote dilution is too general to support intervention.  There is nothing unique or particularized to Richard about the interest he claims; it is shared by over 960,000 other registered voters in New Hampshire. Under this logic, anytime a lawsuit challenges a restrictive voting law, every single registered voter would have a right to intervene in that lawsuit.  Courts have recognized that such a generalized interest is not sufficient to create intervention as a matter of right.  *See Public Serv. Co. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998) ("It is settled beyond peradventure, however, that an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right"); *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (same).[4]

---

[3] Plaintiffs contend that the motor vehicle fees are severe burdens on the right to vote, and that the fees may so burden qualified domiciliaries (particularly young people and college students) that some will not vote.  HB 1264's effects are subtle; it makes voting more expensive for some voters, but it does not change who is legally permitted to vote.

[4] While the requirements for intervention under Rule 24 and Article III standing are different, *Gill v. Whitford*, 138 S.Ct. 1916 (2018) is instructive.  There, the Supreme Court found that voters had standing to challenge a partisan gerrymandering in their own districts, as a gerrymander directly disadvantages the voter as an individual. *Id.* at 1930.  But the Court found that an individual does not have standing to challenge a gerrymander in district besides

### B.  The Defendants Will Sufficiently Defend the Law

Richard is not entitled to intervention as a matter of right because the Defendants will ably defend his perceived interests.  Defendants, who are represented by three attorneys from the New Hampshire Department of Justice,[5] will likely seek a ruling that HB 1264 is constitutional. Moreover, the Defendant Secretary of State, who is New Hampshire's chief election official and will presumably defend HB 1264 in this case, was one of HB 1264's chief proponents when it was being considered by the legislature.

There are "two converging presumptions triggered [when] the Attorney General is prepared to defend the statute in its entirety.  One is that adequate representation is presumed where the goals of the applicants are the same as those as the plaintiff or defendant; the other is that the government in defending the validity of the statute is presumed to be representing adequately the interests of all citizens who support the statute." *Daggertt v. Comm'n on Gov'tl Ethics & Elec. Practices*, 172 F.3d 104, 111 (1st Cir. 1999); *Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001) ("Generally, our decisions have proceeded on the assumption, that the government will adequately defend its actions, at least where its interests appear to be aligned with those of the proposed intervener"); *Maine Republican Party,* 2018 U.S. Dist. LEXIS 82461 at *3 ("There is a dual presumption that a potential intervenor's interests will be adequately represented where (1) the goals of the intervenor and the defendant are the same; and (2) the government is defending the validity of a statute and the intervenors are citizens who support the statute.").

---

the one in which she lives because "a citizen's interest in the overall composition of the legislature is embodied in his right to vote for his representative. And the citizen's abstract interest in policies adopted by the legislature on the facts here is a nonjusticiable 'general interest common to all members of the public.'" *Id.* at 1931. While *Gill* addresses Article III standing, the same logic applies here:  Richard's generalized interest is too general to support intervention.

[5] At the preliminary pretrial conference held on August 13, 2019, Defendants explained that they were considering engaging outside counsel.  The Defendants' interest in retaining other attorneys only demonstrates their sustained interest in defending HB 1264.

Richard does not try to rebut this presumption, other than by alleging that "Defendant number two, the Attorney General's Office of the state [sic] of New Hampshire represents the position of the state statutes which are repugnant and contrary to the State and Federal Constitutions." *Motion*, p. 1. Broad assertions such as this are not sufficient to overcome the dual presumptions that a state attorney general will adequately defend the constitutionality of a statute.

## II.    The Court Should Deny Richard Permissive Intervention

Permissive intervention is granted solely in the Court's discretion and is governed by Federal Rule of Civil Procedure 24(b), which provides: "On timely motion, the court *may* permit anyone to intervene who:… has a claim or defense that shares with the main action a common question of law or fact…" Fed. R. Civ. P. 24(b)(1)(B) (emphasis added). Permissive intervention is allowable where "(1) the applicant's claim or defense and the main action have a question of law or fact in common, (2) the applicant's interests are not adequately represented by an existing party, and (3) intervention would not result in undue delay or prejudice to the original parties." *In Re Thompson*, 965 F.2d 1136, 1142 n. 10 (1st Cir. 1992).  "In evaluating a request for permissive intervention, the court can consider almost any factor rationally relevant."  *Maine Republican Party v. Dunlap*, 2018 U.S. Dist. LEXIS 82461, *5 (D. Me. May 16, 2018) (citation and quotation omitted).  "The denial of intervention as of right based on an intervenor's failure to overcome the presumption of adequate representation by the government cuts against the case for permissive intervention." *Id.*; *Tutein v. Daley*, 43 F. Supp. 2d 113, 131 (D. Mass. 1999) ("[W]here, as here, intervention as of right is decided based on the government's adequate representation, the case for permissive intervention diminishes, or disappears entirely.").

The Court should not grant Richard permissive intervention.  As discussed, in Section II.B, above, Defendants and their attorneys will ably defend the constitutionality of the statute,

rendering any input Richard may provide redundant.   Further, permitting Richard, who is representing himself, to participate in the presentation of evidence and the taking of discovery will likely lead to additional confusion, delay, and burden in this voting-rights case with an aggressive schedule in anticipation of the upcoming Presidential Primary Election.   In this case, there is nothing to be gained by Richard's involvement except additional complexity and delay. Accordingly, the Court should deny his motion for permissive intervention under Rule 24(b).

## CONCLUSION

For the reasons discussed above, the motion to intervene should be denied.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully requests that this Court:

A.    Deny Daniel Richard's Motion to Intervene (DN 37.0); and

B.    Grant such other and further relief as this Court deems just and proper in the circumstances.

Respectfully submitted,

CAROLINE CASEY AND MAGGIE FLAHERTY,

By and through their attorneys affiliated with the American Civil Liberties Union of New Hampshire Foundation and the American Civil Liberties Union Foundation,

*/s/ Henry R. Klementowicz*
Gilles R. Bissonnette (N.H. Bar No. 265393)
Henry R. Klementowicz (N.H. Bar No. 21177)
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE FOUNDATION
18 Low Avenue
Concord, NH  03301
Tel.:  603.224.5591
gilles@aclu-nh.org
henry@aclu-nh.org

Julie A. Ebenstein, *pro hac vice*
Dale E. Ho, *pro hac vice*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Voting Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: 212.549.2500
jebenstein@aclu.org
dho@aclu.org

Date:   August 21, 2019

## **CERTIFICATE OF SERVICE**

The undersigned certifies that he has electronically filed this date the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. This filing is available for viewing and downloading from the ECF system. Undersigned further certifies that he has forwarded the foregoing pleading to Daniel Richard by U.S. mail to 95 Rockingham Road, Auburn, NH 03032.


 Dated:  August 21, 2019                              /s/ Henry R. Klementowicz
                                                      Henry R. Klementowicz