UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Caroline Casey, et al.

　　　v.                          Civil No. 19-cv-149-JL

NH Secretary of State, et al.

**MEMORANDUM ORDER**

In this voting rights case, two young New Hampshire voters and the New Hampshire Democratic Party challenge recent changes to New Hampshire's statutory definitions of "resident" and "residence."  They allege that these changes have both the purpose and effect of burdening the right to vote, because under the recent changes registering to vote is now effectively a declaration of residency that triggers obligations and fees for drivers and vehicle owners under New Hampshire's motor vehicle code.  They thus allege that the changes violate the First, Fourteenth, Twenty-Fourth, and Twenty-Sixth Amendments.  The Attorney General and the Secretary of State move to dismiss all of the plaintiffs' claims for lack of standing and failure to state claims.  The court has jurisdiction over this constitutional case under 28 U.S.C. § 1331.

The defendants' motion to dismiss is denied.  The plaintiffs have standing, as the individual plaintiffs have sufficiently stated an injury-in-fact and all plaintiffs have

identified injuries traceable to the Secretary of State and redressable by the requested relief.  And, at this preliminary stage, the plaintiffs have sufficiently alleged that the statutory changes unconstitutionally burden the right to vote.

## I.   <u>Applicable legal standard</u>

**Jurisdiction.**  Defendants move to dismiss plaintiffs' claims both for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Their challenge to subject matter jurisdiction is based on the sufficiency of plaintiff's allegations.  They accept "the plaintiff[s'] version of jurisdictionally-significant facts as true . . . thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).  To do so, "the court must credit the plaintiff's well-pleaded factual allegations . . . , draw all reasonable inferences from them in her favor, and dispose of the challenge accordingly."  Id.

**Sufficiency.**  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." College Hill Props., LLC v.

Worcester, 821 F.3d 193, 196 (1st Cir. 2016).  The court must "take the complaint's well-pleaded facts as true," and "draw all reasonable inferences in the plaintiff's favor."  Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018).  But "[w]ell-pleaded facts must be 'non-conclusory' and 'non-speculative.'"  Id.  "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  Id.

## II.  **Background**

This case involves three areas of New Hampshire law: elections statutes, statutory construction provisions, and motor vehicle statutes.  The plaintiffs' civil rights action challenges recent changes to N.H. Rev. Stat. Ann. §§ 21:6 and 21:6-a, which altered statutory definitions of "resident" and "residence."  They claim that these changes burden the right to vote and violate the First, Fourteenth, Twenty-Fourth, and Twenty-Sixth Amendments to the U.S. Constitution.  2018 House Bill 1264 implemented these changes, and they became law on July 1, 2019.  For simplicity and consistency with the parties' papers, the court will refer to the changes as HB 1264.

### A.  **New Hampshire law prior to HB 1264**

New Hampshire election law provides that:

> Every inhabitant of the state, having a single
> established domicile for voting purposes, being a
> citizen of the United States, of the age provided for
> in Article 11 of Part First of the Constitution of New
> Hampshire, shall have a right at any meeting or
> election, to vote in the town, ward, or unincorporated
> place in which he or she is domiciled.  An
> inhabitant's domicile for voting purposes is that one
> place where a person, more than any other place, has
> established a physical presence and manifests an
> intent to maintain a single continuous presence for
> domestic, social, and civil purposes relevant to
> participating in democratic self-government.  A person
> has the right to change domicile at any time, however
> a mere intention to change domicile in the future does
> not, of itself, terminate an established domicile
> before the person actually moves.

N.H. Rev. Stat. Ann. § 654:1, I.

Voting is thus conditioned on domicile.  The statute also specifically addresses students:  "A student of any institution of learning may lawfully claim domicile for voting purposes in the New Hampshire town or city in which he or she lives while attending such institution of learning if such student's claim of domicile otherwise meets the requirements of RSA 654:1, I."

N.H. Rev. Stat. Ann. § 654:1, I-a.  The voter statute does not refer to "resident" or "residence".

Chapter 21 of Title I of the New Hampshire Code ("Statutory Construction") provides rules of statutory construction and definitions applicable under the Code.  These include the definitions of "resident" and "residence" altered by HB 1264. Prior to the recent changes, Section 21:6 provided:

> A resident or inhabitant or both of this state and of
> any city, town or other political subdivision of this
> state shall be a person who is domiciled or has a
> place of abode or both in this state and in any city,
> town or other political subdivision of this state, and
> who has, through all of his actions, demonstrated a
> current intent to designate that place of abode as his
> principal place of physical presence <u>for the</u>
> <u>indefinite future</u> to the exclusion of all others.

N.H. Rev. Stat. Ann. § 21:6 (emphasis added).  And Section
21:6-a similarly provided that:

> Residence or residency shall mean a person's place of abode
> or domicile. The place of abode or domicile is that
> designated by a person as his principal place of physical
> presence <u>for the indefinite future</u> to the exclusion of all
> others. Such residence or residency shall not be
> interrupted or lost by a temporary absence from it, if
> there is an intent to return to such residence or residency
> as the principal place of physical presence.

N.H. Rev. Stat. Ann. § 21:6-a (emphasis added).  Prior to the

recent changes implemented by HB 1264, individuals were not

deemed "residents" unless they intended to remain in New

Hampshire "for the indefinite future."

Finally, this case implicates certain motor vehicle

statutes because these provisions impose obligations on New

Hampshire "residents."  Section 259:88 addresses "resident for

motor vehicle purposes" and provides that "'[r]esident' shall

mean a resident of the state as defined in RSA 21:6, except that

no person shall be deemed to be a resident who claims residence

in any other state for any purpose." N.H. Rev. Stat. Ann.

§ 259:88.  A motor vehicle owner or driver that establishes bona

fide residency in New Hampshire takes on certain legal

obligations.  "[W]hen a nonresident has established a bona fide residency in this state, said resident shall have a maximum of 60 days from the date of his or her residency in which to register his or her vehicle or vehicles in New Hampshire." N.H. Rev. Stat. Ann. § 261:45.  "[A]ny nonresident driver of a motor vehicle who holds a valid driver's license in another jurisdiction, upon the establishment of a bona fide residency in this state, shall have a maximum of 60 days from the date his residency was established to obtain a driver's license issued by the state of New Hampshire." N.H. Rev. Stat. Ann. § 263:35.

### B.   HB 1264's changes

HB 1264 amended the definition of "resident" and "residence" in sections 21:6 and 21:6-a to remove the requirement that a resident intend to remain "for the indefinite future."  The bill was introduced in the New Hampshire House of Representatives in November 2017, and by May 2018 was passed by both the House and New Hampshire Senate.[1]  The plaintiffs allege that the bill was a voting measure, primarily intended to discourage college students from voting in New Hampshire elections.[2]  The aim of the bill, they allege, was to make

---

[1] Casey Compl. (doc. no. 1) ¶¶ 14-16; NHDP Compl., No. 1:19-cv-00201-SM (doc. no. 1) ¶¶ 13-15.

[2] Casey Compl. (doc. no. 1) ¶¶ 17-19; NHDP Compl., No. 1:19-cv-00201-SM (doc. no. 1) ¶¶ 16-18.

"residency" equivalent to "domicile," so that registering to vote would effectively declare residency and trigger exposure to motor vehicle obligations and fees.[3]  The parties agree that the amended law requires college students to incur the cost and burden of obtaining New Hampshire drivers licenses and registering their cars (if they own cars) in New Hampshire if they wish to both vote in New Hampshire and drive or own vehicles in the state.[4]  Before HB 1264's changes, many such students could be domiciled in New Hampshire (and vote) under the election statutes without being residents under motor vehicle law, because they lacked the intent to remain for the indefinite future.

The plaintiffs point to various aspects of the legislative record to support their account of HB 1264.  They allege that the bill was considered by the election law committees of the legislature, and that the Division of Motor Vehicles did not assess the bill.[5]  Instead, the plaintiffs allege, the Secretary of State's office advocated for and testified about the bill.[6]

---

[3] Id.

[4] Id.

[5] Casey Compl. (doc. no. 1) ¶ 17; NHDP Compl., No. 1:19-cv-00201-SM (doc. no. 1) ¶ 16.

[6] Casey Compl. (doc. no. 1) ¶¶ 17-18; NHDP Compl., No. 1:19-cv-00201-SM (doc. no. 1) ¶¶ 16-17.

They also cite alleged statements by legislators presenting the bill as a voting measure designed to discourage certain groups from voting or at least impose costs on them.[7]  HB 1264 also fits, according to the plaintiffs, within a pattern of recent legislative efforts to discourage voting by college students.[8]

After HB 1264 was enrolled, the Governor and Executive Council requested that the justices of the New Hampshire Supreme Court opine on the constitutionality of the bill under the New Hampshire Constitution and the Fourteenth Amendment of the U.S. Constitution.  Opinion of the Justices, 171 N.H. 128, 131-32 (2018).  A majority of three justices determined that it was proper to issue an advisory opinion on these questions, and concluded that the bill did not violate either constitution. The "incongruity" between the definitions of "domicile" and "residency," they explained, resulted from the decision in Newburger v. Peterson that domicile for voting purposes could not be conditioned on an indefinite intention-to-remain test. Opinion, 171 N.H. at 138-139, 145 (citing Newburger, 344 F.Supp. 559 (D.N.H. 1972)).  After Newburger, New Hampshire amended its law regarding domicile for voting purposes to remove the

---

[7] Casey Compl. (doc. no. 1) ¶¶ 18-21; NHDP Compl., No. 1:19-cv-00201-SM (doc. no. 1) ¶¶ 19-21.

[8] Casey Compl. (doc. no. 1) ¶¶ 22-27; NHDP Compl., No. 1:19-cv-00201-SM (doc. no. 1) ¶¶ 22-27.

indefinite intention-to-remain requirement.   Opinion, 171 N.H. at 138.   Because the definition of "residency" was left unchanged, the majority explained, certain groups were permitted "to vote in New Hampshire without incurring responsibility for . . . obligations of state citizenship," producing "an imbalance of rights and responsibilities." Id. at 145.   They opined that New Hampshire is not required to maintain that imbalance, and that even if the right to vote was burdened, the state "has a compelling justification" in "insuring that those who are permitted to vote are bona fide residents who share a community of interest with other citizens." Id. at 142.   Two other justices wrote separately.   They declined to opine on the submitted questions because they determined that resolving the questions appropriately would require a developed factual record.   See id. at 154, 156-57.

After the justices issued their advisory opinion, the governor signed the bill.[9]   The new law took effect on July 1, 2019.[10]

---

[9] Casey Compl. (doc. no. 1) ¶ 16; NHDP Compl., No. 1:19-cv-00201-SM (doc. no. 1) ¶ 15.

[10] Casey Compl. (doc. no. 1) at 1; NHDP Compl., No. 1:19-cv-00201-SM (doc. no. 1) at 1.

**C.    These lawsuits**

The individual plaintiffs, Caroline Casey and Maggie Flaherty, filed their complaint in mid-February 2019, and the New Hampshire Democratic Party filed its complaint two weeks later.  The complaints are identical except for the paragraphs describing the plaintiffs.  Casey and Flaherty are students at Dartmouth College who both wish to vote in New Hampshire while attending the school but do not intend to remain in New Hampshire after graduation.[11]  They currently have driver's licenses from other states and allege that HB 1264 injures them because they registered to vote in 2018 and thus will now be deemed New Hampshire residents and necessarily incur the expense and trouble of obtaining New Hampshire driver's licenses.  Neither alleges that they own a vehicle.[12]  The New Hampshire Democratic Party alleges that it will be harmed because voters inclined to support its candidates "will incur onerous fees to register to vote or will be too intimidated to register or vote at all."[13]

---

[11] Casey Compl. (doc. no. 1)  ¶¶ 1-2.

[12] Id.

[13] NHDP Compl., No. 1:19-cv-00201-SM (doc. no. 1) ¶ 1.

The court, on the defendants' motion and with the assent of the plaintiffs, consolidated the two cases.[14]   The defendants then moved to dismiss all the claims of all the plaintiffs.[15]

## III. <u>Analysis</u>

In their standing-based challenge to the complaints, the defendants assert that the individual plaintiffs fail to allege an injury-in-fact, and that all plaintiffs lack standing against the Secretary of State.  The defendants also argue that all three plaintiffs fail to state any claims.  The court disagrees. The plaintiffs have standing and have stated claims.  The motion to dismiss is denied.

### A.   Individual plaintiffs' injury-in-fact

Defendants argue that the individual plaintiffs lack standing because they have not alleged an injury-in-fact.  To have standing, a plaintiff must "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  Injury in fact is the "first and foremost" of these elements, for which "a plaintiff must show

---

[14] Order of May 1, 2019.

[15] Document no. 20.

that he or she suffered an invasion of a legally protected interest that is concrete or particularized and actual or imminent, not conjectural or hypothetical." Id. at 1547-48 (quotations omitted).

The individual plaintiffs allege that they are burdened by HB 1264 because it requires them to domesticate their out-of-state drivers licenses, subjecting them to the required fee and an inconvenient trip to the DMV.[16] Section 263:35 requires that a "nonresident driver of a motor vehicle" obtain a New Hampshire license after establishing a bona fide residency in New Hampshire. N.H. Rev. Stat. Ann. § 263:35. Defendants contend that the individual plaintiffs have not alleged that they drive in New Hampshire, and so have not shown that they would actually be subject to the license requirement.[17]

The individual plaintiffs are entitled to "all reasonable inferences" in their favor, and thus have sufficiently alleged an injury-in-fact. See Valentin, 254 F.3d at 363. It is reasonable to infer that these plaintiffs, as college students with drivers' licenses in an area with limited public

---

[16] Casey Compl. (doc. no. 1) ¶¶ 1-2.

[17] Mem. in Supp. of Mot. to Dismiss (doc. no. 20-1) 12-13. The individual plaintiffs do not dispute that they do not own cars, and so are not injured through § 261:45. See Casey Obj. to Mot. to Dismiss (doc. no. 24) at 12-13.

transportation, would normally drive in New Hampshire at times during their studies at Dartmouth.  While they do not allege that they maintain cars on campus, they reasonably may have access to the vehicles of their friends, visitors including family, and commercial car-sharing services.  The inference that the individual plaintiffs would, absent their concerns over HB 1264, drive in New Hampshire while studying at Dartmouth does not require speculation.[18]

### B.   Standing against Secretary of State

Next, Defendants argue that all of the plaintiffs lack standing to sue the Secretary of State in particular because their injuries are not traceable to or redressable by him.  The proposition that standing must be established with respect to specific state officials administering specific state agencies strikes the court as dubious.  This court's declaration, after all, that a given state statute is unconstitutional would preclude its enforcement by a state government regardless of

---

[18] The individual plaintiffs ask that if their allegations be deemed insufficient, they be allowed to amend their Complaint to explicitly allege their intent to drive intermittently in New Hampshire.  See Casey Obj. to Mot. to Dismiss (doc. no. 24) at 11 n.2.  Although the court does not normally countenance the "permit-me-to-amend-if-my-complaint-is-insufficient" entreaty, instead enforcing Rule 15 as it is written to require an affirmative motion to amend (preferably in advance of oral argument on a motion to dismiss), the point is moot here as the complaint alleges injury-in-fact.

which officers are named (in their official capacity) in the lawsuit.  But since the plaintiffs have not challenged that proposition in the abstract, the court will undertake the analysis with respect to the Secretary of State.

Traceability requires "a sufficiently direct casual connection between the challenged action and the identified harm." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012). The opposing party, not the independent action of a third party, must be the source of the harm.  Id. at 71-72.  Redressability is shown if a favorable resolution of the plaintiffs' claims "would likely redress the professed injury."  Id. at 72.

The Secretary of State is the chief elections officer in charge of administering New Hampshire's election laws.[19] But, defendants argue, HB 1264 is not an election law.  It amended only the definitions of "resident" and "residence" in the state's general rules of statutory construction, see N.H. Rev. Stat. Ann. §§ 21:6, 21:6-a, and plaintiffs' purported injuries arise solely from Motor Vehicle Code enforcement.[20]  So, the defendants' argument goes, the plaintiffs' injuries are not

---

[19] Casey Compl. (doc. no. 1) ¶ 3; NHDP Compl., No. 1:19-cv-00201-SM (doc. no. 1) ¶ 2.

[20] See Mem. in Supp. of Mot. to Dismiss (doc. no. 20-1) at 15.

based in election law and are not traceable to or redressable by
the Secretary of State.

This highly formalistic reading of both the plaintiffs'
claims and the newly-applicable law is too limited and
compartmentalized.  First, the plaintiffs' allegations fairly
suggest (without precisely articulating) that information about
voter registration will be used to assess residency and trigger
the allegedly injurious licensing and registration obligations.[21]
The collection of voter information and its potential ensuing
distribution to other state officials falls within the ambit of
the Secretary of State.  Regardless of whether the Secretary of
State in fact intends to actively facilitate the distribution of
such information to other state officials and departments, the
reasonable likelihood of such action amounts to an adequate
allegation of a causal connection between the Secretary of
State's conduct and the plaintiffs' purported injuries.  Whether
this allegation turns out to be sustainable as a matter of
evidentiary proof can be addressed in another procedural posture
later in the litigation based on a more developed record.  See
Fed. R. Civ. Proc. 50, 56.

---

[21] See Casey Compl. (doc. no. 1) ¶ 12; NHDP Compl., No. 1:19-cv-
00201-SM (doc. no. 1) ¶ 11.

Second, plaintiffs' alleged injuries include intimidation that will allegedly discourage voter registration.[22]  The plaintiffs allege that the Secretary of State distributed information about the statutory definitions of domicile and residency in recent election materials, including an election procedure manual and a guide for college students.[23]  It is reasonable to infer that the Secretary of State will do the same in relation to upcoming elections.  This distribution of information, even if scrupulously accurate, would constitute participation in, and contribute to, the enforcement of HB 1264 to plaintiffs' alleged detriment by informing potential voters that registering to vote may amount to a declaration of residency which in turn creates motor vehicle licensing and registration obligations.  Whether such enforcement or the licensing and registration obligation in fact impermissibly burden the right to vote is not a question to be resolved under Rule 12(b)(6), and will be determined by the plaintiffs' ability to sustain the burden of proof on the merits.

In either case, the alleged injury traceable to the Secretary of State is redressable via the plaintiffs' requested

---

[22] See NHDP Compl., No. 1:19-cv-00201-SM (doc. no. 1) ¶ 1.

[23] Casey Opp. to Mot. to Dismiss (doc. no. 24) at 15.

injunctive relief.[24]  While defendants point to authorities
finding redressability lacking because the named officials did
not control enforcement of a challenged provision, the
enforcement power there lay with private enforcers or separate
government institutions.  See Balogh v. Lombardi, 816 F.3d 536,
543 (8th Cir. 2016) (private); Duit Constr. Co. Inc. v. Bennett,
796 F.3d 938, 941 (8th Cir. 2015) (private); Bronson v. Sweeney,
500 F.3d 1099, (10th Cir. 2007) (distinguishing county clerk's
civil enforcement from state criminal prosecution).  It would
make little sense to strictly delineate and artificially
compartmentalize the enforcement of a conceptually broad statute
like HB 1264 between different state officials where, as here,
the plaintiffs plausibly allege information distribution and
sharing that will allegedly result in enforcement against the
plaintiffs.  The plaintiffs have adequately pled standing to
seek relief against the Secretary of State.

---

[24] See Casey Compl. (doc. no. 1) ¶ 20; NHDP Compl., No. 1:19-cv-
00201-SM (doc. no. 1) ¶ 21 (seeking "a preliminary and permanent
injunction prohibiting Defendants from implementing or enforcing
HB 1264").

**C.   Facial challenge**

The parties agree that plaintiffs are making a facial challenge to § 21:6 and § 21:6-a, as amended by HB 1264,[25] but they dispute how the standards for such a challenge apply here.

The defendants seize on the formulation that a facial challenge must fail if "the statute has a plainly legitimate sweep."  See Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008).  They argue that the new definitions of "resident" and "residence" apply to statutes other than the motor vehicle statutes highlighted by plaintiffs, and that the plaintiffs would have to show that their application in all of these other contexts is also unconstitutional.  But the standards for facial challenges "may obscure the relevant inquiry."  Saucedo v. Gardner, 335 F.Supp.3d 202, 213 (D.N.H. 2018) (McCafferty, J.).  A facial challenge "is best understood as a challenge to the terms of the statute, not hypothetical applications, and is resolved simply by applying the relevant constitutional test to the challenged statute."  Id. at 214 (quoting United States v. Sup. Ct. of N.M., 839 F.3d 888, 917 (10th Cir. 2016)).  Here, the plaintiffs allege that a change to the definitional statutes was made with one particular

---

[25] See Mem. in Supp. of Mot. to Dismiss (doc. no. 20-1) at 15-17; Casey Opp. to Mot. to Dismiss (doc. no. 24) at 17-18.

objective.  The court is not persuaded, on this limited record,
that that plaintiffs are barred from facially challenging this
objective as unconstitutional because the legislature made the
change in a way that also affected other statutes.

### D.   First and Fourteenth Amendments

The plaintiffs allege that "HB 1264 severely and
unreasonably burdens the fundamental right to vote of all New
Hampshire voters" and "particularly burdens young voters,
college student voters, and voters who have recently moved into
New Hampshire" in violation of the First and Fourteenth
Amendments.[26]  Right-to-vote claims are analyzed under a
"flexible sliding scale approach."  See Barr v. Galvin, 626 F.3d
99, 109 (1st Cir. 2010).  A heavy burden on the right to vote
"must be narrowly tailored to promote a compelling state
interest," while "reasonable, nondiscriminatory restrictions
. . . need be justified only by legitimate regulatory
interests."  Id.  "The outcome of this analysis depends heavily
on the challenged restriction's factual context."  Libertarian
Party of N.H. v. Gardner, 14-cv-00322-PB, 2014 WL 7408214 at *4
(D.N.H. Dec. 30, 2014) (Barbadoro, J.).  The defendants argue
that the statutory mechanics of HB 1264 do not alter any voting

---

[26] Casey Compl. (doc. no. 1) ¶ 36; NHDP Compl., No. 1:19-cv-
00201-SM (doc. no. 1) ¶ 36.

statutes or burden the right to vote, and thus that this is not a right-to-vote case.  But at least in the context of Rule 12(b)(6) review, with all inferences drawn in the plaintiffs' favor, they have sufficiently alleged that HB 1264 was intended to burden the right to vote and that the practical effects of the statutory changes will in fact burden the right.  The extent of HB 1264's burdens on the right to vote and the legitimacy of the controlling government interests are sufficiently open questions that the court "cannot conclude, on the pleadings, that no set of facts exists under which" the plaintiffs may prevail.  See Cruz v. Melecio, 204 F.3d 14, 22 (1st Cir. 2000). Plaintiffs have sufficiently alleged a claim, and resolution of that claim requires a more developed record, allowing more concrete, fact-based arguments less focused on legal abstraction than those presented in this preliminary procedural posture.

### E.   Twenty-Fourth Amendment

The Twenty-Fourth Amendment provides that "[t]he right of citizens to vote in any [federal election] shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax." U.S. Const. amend. XXIV, § 1.  Plaintiffs allege that HB 1264 effectively operates as an unconstitutional poll tax, by requiring certain voters to pay fees for motor vehicle licenses and vehicle registrations

triggered by their registration to vote.[27]  Defendants argue that
this claim ignores the way in which the law actually works.  No
fees are required for voting, they contend, and residency
triggers the potential motor vehicle fees – not voting or voter
registration.  These arguments may ultimately prevail,
especially with a fuller understanding of how residency is
evaluated outside of voter registration.  But at this stage,
drawing all reasonable inferences in the plaintiffs' favor,
Barchock, 886 F.3d at 48, they have alleged that HB 1264
effectively makes voter registration a declaration of residency,
which in turn require the payment of certain fees.  Under the
particular facts and circumstances of this case, the court
declines to strike this count from the complaint as legally
insufficient.

### F.    Twenty-Sixth Amendment

The Twenty-Sixth Amendment provides that "[t]he right of
citizens of the United States, who are eighteen years of age or
older, to vote shall not be denied or abridged by the United
States or by any State on account of age."  U.S. Const. amend.
XXVI, § 1.  Plaintiffs allege that "HB 1264 has the purpose and
effect of abridging or denying the right to vote to New

---

[27] See Casey Compl. (doc. no. 1) ¶¶ 47–48; NHDP Compl., No. 1:19-
cv-00201-SM (doc. no. 1) ¶¶ 47–48.

Hampshire voters on account of their age," that "[y]oung New Hampshire voters will be disproportionately burdened by HB 1264," and that "the General Court targeted the burdens imposed by HB 1264 to fall upon young voters as a class."[28]  Defendants argue that HB 1264 does not target or burden any particular class of "young voters," and any burden that might exist is narrowly drawn and supported by compelling state interests. Again, these arguments may be compelling at a later stage, but plaintiffs have sufficiently alleged that the HB 1264 was intended and designed to target younger voters, and that the statutory changes will burden young voters.

## IV.  **Conclusion**

Plaintiffs have standing and have stated claims under the First, Fourteenth, Twenty-Fourth, and Twenty-Sixth Amendments. Defendants' motion to dismiss[29] is DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

---

[28] Casey Compl. (doc. no. 1) ¶ 43; NHDP Compl., No. 1:19-cv-00201-SM (doc. no. 1) ¶ 43.

[29] Document no. 20.

Dated: August 29, 2019

cc:  Dale E. Ho, Esq.
     Gilles R. Bissonnette, Esq.
     Julie A. Ebenstein, Esq.
     Henry Klementowicz, Esq.
     William E. Christie, Esq.
     Suzanne Amy Spencer, Esq.
     Anthony Galdieri, Esq.
     Samuel R.V. Garland, Esq.
     Scott Edward Sakowski, Esq.
     Seth Michael Zoracki, Esq.