# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **CAROLINE CASEY and MAGGIE FLAHERTY** | |
| **Plaintiffs,** | |
| **v.** | |
| **WILLIAM GARDNER, in his official capacity as New Hampshire Secretary of State, and GORDON MACDONALD, in his official capacity as New Hampshire Attorney General** | |
| **Defendants.** | |
| | **Consolidated Case No.: 1:19-cv-00149-JL** |
| **NEW HAMPSHIRE DEMOCRATIC PARTY, By Raymond Buckley, Chair** | |
| **Plaintiff,** | |
| **v.** | |
| **WILLIAM GARDNER, in his official capacity as New Hampshire Secretary of State, and GORDON MACDONALD, in his official capacity as New Hampshire Attorney General** | |
| **Defendants.** | |

## CASEY AND FLAHERTY'S RESPONSE TO THE COURT'S OCTOBER 9, 2019 PROCEDURAL ORDER
## **EXPEDITED HEARING REQUESTED**

Plaintiffs Caroline Casey and Maggie Flaherty ("the Individual Plaintiffs") hereby respond to the Court's October 9, 2019 Procedural Order (DN 56) requesting the parties' views on certifying issues of state law to the New Hampshire Supreme Court.

## **INTRODUCTION**

As contemplated by the Court in its October 9 Procedural Order, because certification appears likely, if not certain, to delay resolution of this case, the Individual Plaintiffs assent to certification as long as the Court enters a temporary order similar to the one described in its October 9 Procedural Order (i) prohibiting New Hampshire from using voter registration as conclusive evidence in any enforcement action under RSA 261:54 and RSA 263:35 during the pendency of the New Hampshire Supreme Court proceeding and through the 2020 Presidential Primary Election and (ii) requiring the State to inform election officials and the public of this order. The issuance of a temporary order is critical given the fact that certification will undoubtedly delay this case as the 2020 Presidential Primary quickly approaches.  Such a temporary order would also ensure that these important questions of state law can be fully addressed without prejudicing impacted voters for this fast-approaching election.   In fact, certification may be particularly appropriate here where (i) there is a significant legal question as to whether HB 1264—given its failure to amend RSA 259:88—textually accomplishes its intended objective of imposing New Hampshire motor vehicle "residency" obligations on those who register to vote but have out-of-state driver's licenses or vehicle registrations, and (ii) the relevant state agencies, including Defendants, have failed to inform the public as to the motor vehicle residency obligations that HB 1264 imposes (or does not impose) on those who register to vote and may be declaring their legal residency in doing so.  Indeed, a temporary order is vital because HB 1264 will impact thousands of voters during the 2020 Presidential Primary, principally young voters in college towns.  For

example, data reviewed by Plaintiffs' expert shows that, during the 2016 general election, over 8,100 voters presented out-of-state identification when either registering to vote or obtaining a ballot on Election Day.  During the 2016 general election, 19.95% of those who voted in Durham (1,931 voters)—the location of the University of New Hampshire—presented out-of-state identification—a rate that far exceeds the statewide average of 1.09% for that election.  Moreover, a temporary order is important because the statutes in question that make it a violation-level offense to fail to obtain a New Hampshire driver's license and vehicle registration within 60 days of establishing residency—namely, RSA 261:45 and RSA 263:35—are regularly enforced in New Hampshire.  Public records requests have revealed that, between January 1, 2014 and June 1, 2019, there have been approximately 250 prosecutions under these statutes.

Simply put, either the law imposes these motor vehicle obligations on registrants or it does not.  The public is entitled to know the State's specific position as to what HB 1264 does.  But because the State is apparently unable or unwilling to make its position clear to the public, certification of these questions may be critical for the public to gain clarity as to what HB 1264 textually does in practice.

The State's actions since HB 1264 became effective on July 1, 2019 have created significant confusion that would likely be addressed by certification.  The Department of Justice in this case has justified HB 1264 to this Court by arguing that the law *is* connected to voting insofar as the law, in its view, fosters a governmental interest "in ensuring a community of interest *among its electorate* and ensuring that those members of the community are all appropriately regulated in the same manner if they own and drive a motor vehicle on the roadways of this State." *See* State's Motion to Dismiss at 25 (DN 20-1) (emphasis added).[1]   However, despite the

---

[1] *See also id.*at 22-23 ("At most, HB 1264, when imported into specific provisions of the Motor Vehicle Code, would

Department's statements to this Court confirming HB 1264's nexus to voting, no state agency in New Hampshire—all of which are counseled by the Department of Justice—has directly informed the public of whether, in its respective view, registering to vote constitutes an act of declaring legal residency and, if so, whether such voters with an out-of-state driver's license and/or vehicle registration have to obtain a New Hampshire driver's license or vehicle registration (if they drive or own a car) within 60 days of registering to vote.  Instead of giving clear guidance to the public on these basic questions, state agencies have engaged in a game of "passing the buck" by referring questions to each other, thereby leaving voters to fend for themselves in the wake of a confusing law.  Through all of this, the Division of Motor Vehicles ("DMV") has remained silent, which is especially concerning given that municipal clerks serve *both* as local election officials who register people to vote and as designees of the DMV who register vehicles. While the Secretary of State's Office has told local election officials such as town clerks that questions about HB 1264 should be referred to the DMV,[2] the same town clerks who serve as agents of DMV to register motor vehicles have been given no training on how to explain HB 1264's effects.

---

subject certain persons who have decided to make New Hampshire their home to the obligations of citizenship normally imposed.  Obtaining an in-state driver's license (if one operates a motor vehicle in New Hampshire) and registering one's car (if one owns a car in New Hampshire) are basic, ordinary, and, at most, inconvenient requirements of residency." (citations omitted).

[2] *See* Sept. 18, 2019 Ltr. from Att'y Gen. Office to Secretary of State's Office (not answering question of whether a voter needs to obtain a New Hampshire driver's license, and instead stating that election officials receiving this question to "direct the individual to the municipal or state agency that administers or enforces the law in question," which would be the Division of Motor Vehicles as to motor vehicle obligations; further stating in four paragraph page entitled "Information on the legal definition of 'resident' for the purposes of determining rights, privileges, and responsibilities associated with being a New Hampshire 'resident'" that "[t]he decision to vote here may implicate other obligations and benefits under the law unrelated to voting" without explaining what those obligations might be; adding that "individual circumstances may vary, and that this obligation [to obtain a New Hampshire driver's license] should be determined on a case-by-case basis" without explaining under what circumstances a voter would not have to obtain a New Hampshire driver's license); Approx. Sept. 23, 2019 Secretary of State correspondence to local election officials (not answering the question of whether a voter "need[s] to get a driver's license to vote," and instead stating that "[a]s election officials we do not offer advice on how residency laws apply to other areas of the law such as how motor vehicle, tax, fish and game, and labor laws, etc. apply to individual voters"); Casey McDermott, "What Does N.H.'s New Voter Residency Law Actually Change?  For Now State Officials Aren't Saying," *NHPR*, Sept. 20, 2019 (the New Hampshire Division of Motor Vehicles declining to answer questions on how it plans on enforcing HB 1264 and "whether voting in New Hampshire will now affect whether someone is considered a resident for motor

The Secretary of State's Office's public statements concerning the impact of HB 1264 have also been muddled, contradictory, and confusing despite the fact that the law originated from that Office. For example, on approximately September 23, 2019, the Secretary of State's Office told local election officials that HB 1264 "does not change any election law," and thus it declined to provide any guidance as to "how residency laws apply to other areas of the law such as how motor vehicle . . . laws, etc. apply to individual voters." The Office of the Secretary of State apparently refused to provide clarity to local election officials under the premise that, consistent with its litigation defense in this case, HB 1264 has nothing to do with voting. However, the Secretary of State recently acknowledged HB 1264's relationship to voting and its view that HB 1264 *does* impose "taxes" on voters to the *Union Leader*.[3] These conflicting positions sow confusion among voters, election officials, and presidential campaigns, all of whom are in desperate need of clarity as the 2020 Presidential Primary approaches.

For example, the town clerk of Hanover, New Hampshire notes that approximately two dozen people have come into her office and asked if they will, as a consequence of registering to vote or voting, be required to get a New Hampshire driver's license. She asked the Secretary of State's office for guidance on how to answer that question. No guidance was provided. Instead, she received a response that "As election officials we do not offer advice on how residency laws

---

vehicle purposes"), https://www.nhpr.org/post/what-does-nhs-new-voter-residency-law-actually-change-now-state-officials-arent-saying#stream/0.; *see also McClain Decl.* ¶ 9 (explaining that the town clerk of Hanover's staff has not received training in their capacity as DMV agents on whether people who register to vote have to get a New Hampshire vehicle registration).

[3] *See* Josie Albertson-Grove, "Voting law confusion may keep some out-of-state students from voting in NH," *Union Leader*, Oct. 12, 2019 ("Reflecting on the new voting laws, *Gardner believes they do change something important: that more voters will be subject to taxes, which he sees as a good thing*. 'Current law allows some people to obtain representation without taxes or fees, to which other similarly situated persons are subjected,' he said, adding he thought the current system creates *two different classes of voters: residents who pay state and local taxes and those who are only domiciled here, who do not*. '*If you truly believe in the equal right to vote, then everyone should be doing the same things in order to be a voter*,' he said.") (emphasis added), https://www.unionleader.com/news/politics/state/voting-law-confusion-may-keep-some-out-of-state-students/article_c91ac468-7965-5168-a2b0-5839e6a19fbb.html.

apply to other areas of the law. . ." As a result, she notes that HB 1264 is causing significant confusion that could ultimately cause qualified potential voters not to vote, and that the confusion has been amplified by the lack of clarity from state agencies.

After conferring with opposing counsel, Plaintiffs believe the Defendants will oppose certification of various questions to the New Hampshire Supreme Court and will oppose the issuance of an interim order.  Given the dispute between the parties, the Plaintiffs request an immediate hearing on this matter, as well as request that the Court instruct the New Hampshire Department of Justice to have present at the hearing individuals who can speak on behalf of the Department of Justice, the Secretary of State's Office, and the DMV to address how they believe HB 1264 is to be interpreted.

## PROCEDURAL BACKGROUND

The Individual Plaintiffs' initial Complaint alleged that the Defendants, through enforcement of HB 1264, would require those who register to vote in New Hampshire to, within 60 days of that registration, purchase a New Hampshire driver's license, if they drive, and a New Hampshire vehicle registration, if they own a vehicle.  As alleged in the initial Complaint, these costs arose directly as a consequence of registering to vote as such registration would be viewed as a declaration of "residency" that triggered these obligations, and therefore violated the First, Fourteenth, Twenty-Fourth, and Twenty-Sixth Amendments.

On October 9, 2019, the Court issued a Procedural Order which noted that "There are potentially determinative issues of New Hampshire law in this case.  While it falls to this court to determine the constitutional permissibility of the enforcement scheme at least arguably created by HB 1264, the meaning of New Hampshire statutes is best (and only conclusively) determined by the New Hampshire Supreme Court."  The Court wrote that it was considering certifying questions

of New Hampshire statutory interpretation to that court pursuant to N.H. Sup. Ct. R. 34.  The Court also noted that it "will consider issuing a temporary order prohibiting New Hampshire from using voter registration as evidence in any enforcement of RSA §§ 261:45 and 263:35, or a provisional protective order agreed to by the parties and approved by the court."

The following day, the Individual Plaintiffs moved to amend their complaint (DN 57).  The impetus for this motion was the failure, in September 2019, of state agencies—including the Department of Justice, Secretary of State's Office, and the Division of Motor Vehicles—to directly answer the basic question of whether, in their respective views, all New Hampshire voters with an out-of-state driver's license or vehicle registration have declared legal residency by registering to vote, and, if so, whether these voters have to obtain a New Hampshire driver's license or vehicle registration (if they drive or own a car) within 60 days of registering to vote.  This failure to explain to the public the legal consequences of voting has created confusion for the public and potential voters.

Based upon the agencies' failure to answer basic questions about New Hampshire's election laws, voter confusion, and after further review of RSA 259:88 in light of the State's recent muddled and confusing statements on HB 1264's effect/application, Plaintiffs have sought leave to amend their complaint and add a new theory: as a matter of statutory interpretation, despite HB 1264's intent and in light of RSA 259:88, a person who registers to vote in New Hampshire but who maintains residency in another state for driving purposes *may not* need to domesticate a driver's license or vehicle registration in New Hampshire within 60 days of registering to vote; and Defendants' refusal to provide clarity on its application of HB1264 itself unduly burdens voters.  This is because RSA 259:88—which was not amended by HB 1264—excludes from the definition of residency, for motor vehicle purposes, any person "who claims residence in any other

state for any purpose."   The motion to amend remains pending.   Indeed, this Court correctly flagged this very issue in its third proposed certified question, where it asks whether, after HB 1264, "an individual with a New Hampshire 'domicile' pursuant to RSA § 654:1 [can] ever be an individual 'who claims residence in any other state for any purpose' and thus is not a 'resident' for the purposes of RSA § 259:88?."

## THE INDIVIDUAL PLAINTIFFS' POSITION ON CERTIFICATION

The Court has specifically solicited the parties' views on whether to certify the following questions to the New Hampshire Supreme Court:

- [1] Are the definitions of "resident" and "residence" in RSA § 21:6 and :6-a, as recently amended, effectively the same as the definition of "domicile" as used in RSA § 654:1, such that one with a New Hampshire "domicile" is necessarily a New Hampshire "resident"?

- [2] Is a student who claims a New Hampshire "domicile" pursuant to RSA § 654:1-a necessarily a New Hampshire resident under RSA 21:6, as recently amended?

- [3] Can an individual with a New Hampshire "domicile" pursuant to RSA § 654:1 ever be an individual "who claims residence in any other state for any purpose" and thus is not a "resident" for the purposes of RSA § 259:88?

- [4] Relatedly, does an individual who claims a New Hampshire "domicile" pursuant to RSA § 654:1, I or I-a necessarily establish "a bona fide residency" for the purposes of RSA §§ 261:45 and 263:35?

As explained more fully below, as contemplated by the Court in its October 9 Procedural Order, because certification appears likely, if not certain, to delay resolution of this case, the Individual Plaintiffs assent to certification as long as the Court enters a temporary order similar to the one described in its October 9 Procedural Order (i) prohibiting New Hampshire from using voter

registration as conclusive evidence in any enforcement action under RSA 261:54 and RSA 263:35 during the pendency of the New Hampshire Supreme Court proceeding and through the 2020 Presidential Primary Election and (ii) requiring the State to inform election officials and the public of this order..  If the Court is not inclined to issue such a temporary order, it should not certify the questions to the New Hampshire Supreme Court as doing so will deny the Plaintiffs meaningful judicial review of this election law before the upcoming 2020 Presidential Primary Election.

A. *The New Hampshire Supreme Court is the Most Appropriate Forum to Resolve Issues of State Law*

The Individual Plaintiffs agree with this Court that the meaning of New Hampshire statutes is best and only conclusively determined by the New Hampshire Supreme Court.  *See Virgin v. Fireworks of Tilton, LLC*, ___N.H.___, 2019 N.H. LEXIS 164, at *3-4 (Aug. 6, 2019) ("In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole.").  But it is also appropriate for federal courts to interpret state statutes, and, if this Court is not inclined to issue a temporary order that protects registrants and addresses the confusion caused by the State, it can and should decide the state law questions itself, including construing state law consistent with the canon of constitutional avoidance.  *See TIG Ins. Co. v. ElFlow Ins. Ltd.*, 2015 U.S. Dist. LEXIS 131396, at *7 (D.N.H. September 29, 2015) (federal court sitting in diversity and conducting an analysis of New Hampshire choice-of-law rules).  As the Individual Plaintiffs contend in their proposed Amended Complaint, this Court could avoid the grave constitutional claims in this litigation altogether under the doctrine of constitutional avoidance by construing the statute—consistent with the legislature's failure to amend RSA 259:88—as not imposing these motor vehicle "residency" obligations on voters who have out-of-state driver's licenses and vehicle registrations.  *See United States v. Rehlander*, 666 F.3d 45, 49 (1st Cir. 2012) ("The ordinary rule is that statutes are to be read to

avoid serious constitutional doubts, if that course is possible, and it is readily possible here.")
(internal citation omitted). In the interim, however, Defendants' refusal to provide clarity to this
Court, members of the public, and election officials on the effect and application of the law
significantly burdens the right to vote.

The Individual Plaintiffs agree that there are significant state law questions in this case, as
noted in their proposed Amended Complaint.  Should the Court decide to certify questions of state
law to the New Hampshire Supreme Court, the Individual Plaintiffs suggest the Court certify the
following questions:

- COURT'S QUESTION NO. 3: Can an individual with a New Hampshire "domicile"
  pursuant to RSA § 654:1 ever be an individual "who claims residence in any other state for
  any purpose" and thus is not a "resident" for the purposes of RSA § 259:88?

- COURT'S QUESTION NO. 4: Relatedly, does an individual who claims a New Hampshire
  "domicile" pursuant to RSA § 654:1, I or I-a necessarily establish "a bona fide residency"
  for the purposes of RSA §§ 261:45 and 263:35?

- INDIVIDUAL PLAINTIFFS' PROPOSED ADDITIONAL QUESTION: After HB 1264,
  is the act of registering to vote by a voter with an out-of-state driver's license and/or vehicle
  registration a declaration of legal residency under RSA 21:6?

- INDIVIDUAL PLAINTIFFS' PROPOSED ADDITIONAL QUESTION: After HB 1264,
  is the act of registering to vote by a voter with an out-of-state driver's license and/or vehicle
  registration a declaration of legal residency for motor vehicle purposes under RSA
  259:88?

- INDIVIDUAL PLAINTIFFS' PROPOSED ADDITIONAL QUESTION: Do all New
  Hampshire voters with an out-of-state driver's license or vehicle registration have to obtain

a New Hampshire driver's license (if they drive) or vehicle registration (if they own a car) within 60 days of registering to vote under RSA 21:6, RSA 259:88, RSA 263:35, and RSA 261:45, I?

- INDIVIDUAL PLAINTIFFS' PROPOSED ADDITIONAL QUESTION: Under what circumstances would a voter with an out-of-state driver's license or vehicle registration not have to obtain a New Hampshire driver's license (if they drive) or vehicle registration (if they own a car) within 60 days of registering to vote?

B. *The Court Should Enter an Order Prohibiting Enforcement of HB 1264*

As contemplated by the Court in its October 9 Procedural Order, because certification appears likely, if not certain, to delay resolution of this case, the Individual Plaintiffs assent to certification as long as the Court enters a temporary order similar to the one described in its October 9 Procedural Order (i) prohibiting New Hampshire from using voter registration as conclusive evidence in any enforcement action under RSA 261:54 and RSA 263:35 during the pendency of the New Hampshire Supreme Court proceeding and through the 2020 Presidential Primary Election and (ii) requiring the State to inform the public and local election officials of this order in a manner calculated to provide actual notice to all potential voters and registrants. As alleged in the Amended Complaint, HB 1264 creates confusion because state agencies, including those run by Defendants, refuse to give clear guidance on whether those registering to vote are now required to domesticate driver's licenses and car registrations. Further, if people registering to vote *are* subject to these requirements, the requirements are unconstitutional because they are severe burdens on the right to vote which do not survive strict scrutiny, they intentionally target younger voters, and they operate as a forbidden poll tax.

These burdens are real, and they will become even more significant during the Presidential Primary Election, which is likely to be scheduled on February 11, 2020.  The eyes of the country will be on New Hampshire for its first-in-the-nation primary.  If HB 1264 is still enforced while issues implicating its interpretation and effect are winding its way through the court system, potential voters will be subjected to unconstitutional confusion and burdens that will discourage them voting in the election.

Those burdens will not be spread evenly among New Hampshire voters.  Michael Herron, Ph.D., the William Clinton Story Remsen 1943 Professor of Government and Chair of the Program in Quantitative Social Science at Dartmouth College, has conducted an analysis of HB 1264 and concludes the law will specifically burden young voters, college students, Democrats, and Undeclared voters.[4]  His top-line conclusions, based on a forensic review of voting data, are "Via its new requirements, House Bill 1264 imposes burdens on registrants and voters in New Hampshire who rely on out of state identification when registering to vote and voting;" "College students are, and will be, disproportionately burdened by House Bill 1264. This is because college students are disproportionate users of out of state forms of identification;" "College student status notwithstanding, young registrants and voters in New Hampshire are, and will be, disproportionately burdened by House Bill 1264.  This is because these individuals are disproportionate users or out of state forms of identification;" and "HB 1264 thus burdens voters in New Hampshire of particular partisan backgrounds and does not burden all partisanships equally."

---

[4] Pursuant to the Discovery Plan adopted by the Court, Dr. Herron's expert report is to be produced on or before today's date.  Plaintiffs' counsel has sent a copy of the report to Defendants' counsel today.

The State's inability or refusal to provide clear guidance on its view of the impact of HB 1264 on registrants and voters has already caused "a huge amount of confusion" resulting in paralysis of the efforts of non-partisan, no-profit organizations like America Votes, working with the New Hampshire Campaign for Voting Rights, whose mission it is "to ensure and preserve the right to vote for every Granite Stater," to answer questions from voters, and especially from students who are asking, "What does the law HB 1264 actually change and how does it affect me?" *See* Affidavit of Kate Corriveau (Corriveau Aff.), dated Oct. 21, 2019, Ex. A to NHDP's Response to the Court's October 9, 2019 Procedural Order, at 1.  Kate Corriveau, the New Hampshire State Director for America Votes, explained, "When we have tried to explain what [HB 1264] actually means in practice, it is nearly impossible." *Id.*  Corriveau pointed to the State's opaque response to requests for clarification as contributing to the confusion.  "When students have reached out to administrative officials for clarification, they become trapped in a bureaucratic loop of deferment, demonstrating that there is not just confusion on behalf of students, but also there is confusion on the implementation of this bill among town and city clerks, the Department of Motor Vehicles, and the Attorney General's Office." *Id.*

America Votes' best efforts at voter education have resulted in dead ends, frustration, and more confusion.  Students regularly ask America Votes and members of the New Hampshire Campaign for Voting Rights:

- If I am from out of state, can I vote in NH?

- Do I need a NH driver's license to vote in NH?

- What does this new law mean for me?

*Id.*  America Votes attempted to create "a flow chart mapping out the requirements of [HB 1264], but it became clear that there were questions that we do not have answers to," Corriveau lamented.

*Id.* at 2.  Corriveau explained that the organization initially understood that HB 1264 required that if a person is "a driver and vote in NH, within 60 day they need to get a New Hampshire driver's license.  If they also have a car in their name, that vehicle would need to be registered in NH as well."  *Id.*  However, that understanding has been shaken by the State's refusal to provide clear answers to questions of statutory interpretation.

> After preparing material reflecting this understanding, we were advised that our materials were incorrect because they did not reflect the exception contained in RSA 259:8 for drivers who claim residency in any other state for any reason.  We have been unable to find any reference to the exceptions of RSA 259:88 by either the sponsors or the Secretary of State during the hearings on 1264 or any time since enactment.  Given the lack of clarity on this and other points, we are unable to adequately advise voters.

*Id.*

So to have State agencies, after causing students to wait "on the line at times over twenty minutes" provided conflicting information and answers "questionable in terms of accuracy," adding to the confusion.  *Id.*  The "DMV told one young caller asking about HB 1264" that she was not allowed to register her car in New Hampshire because "in order to have your car registered in NH you need to have a PERMANENT residence, aka a LEASE.  A dorm IS NOT a permanent residence and therefore you CANNOT register your car to a dorm address . . . according to DMV law . . . ."  *Id.* at 3.  The DMV official told the young woman that "because HB 1264 is not a Safety law, she did not believe it would be enforced by the DMV" and that she should "call the Town Clerk for questions about registering to vote.  She did not know the law or its effects or how it would be enforced."  *Id.*

The Manchester city clerk's office told a student that they were eligible to vote in New Hampshire if they "claim domicile in NH . . . even if you only live here short-term or as a student,"

however the employee directed the student to the Department of Transportation or the Secretary of State for answers "about driver's license laws." *Id.*

Another student spoke with Deputy Secretary of State David M. Scanlan who told them "that a student in NH can vote in [their] community at school or at home, they can claim residency in either state and are subject to the laws of NH." *Id.* He said that a "student can establish residency by living in NH and registering to vote in NH." *Id.* "He said that within 60 days of voting the student needs to get their license changed to NH," and that if they don't, if they "get stopped for a traffic violation and [they] haven't changed [their] license to NH, [they] can be ticketed." *Id.*

All of this conflicting information has thwarted the best efforts of America Votes to educate registrants and voters in New Hampshire. Corriveau explained that the "more we have tried to get information, the harder it has been to pin down what this law actually does so we can help educate voters about the law and so they can be aware of any changes so they can make sure to be abiding the law." *Id.* at 4.

Political campaigns who have been "focused on reaching voters everywhere they are, including college campuses" have had their voter education efforts stymied by confusion and obfuscation regarding the state of the law after HB 1264. *See* Affidavit of Elizabeth Wester ("Wester Aff."), dated Oct. 21, 2019, Ex. B to NHDP's Response to the Court's October 9, 2019 Procedural Order, at 1. Elizabeth Wester, the New Hampshire State Director for the New Hampshire for Warren Campaign, reported that as "soon as the campaign started organizing on campus, students started asking about how they could vote in the First in the Nation Primary." *Id.* Wester explained that the campaign had "prepared educational material concerning the process of registering to vote in New Hampshire . . . based in large part upon statements made during the legislative hearings on HB 1264 by state official, including representatives of the Secretary of

State and the legislative sponsors." *Id.*   However, "[a]fter preparing these materials, we were advised not to use them with voters until the issue of the application of the exceptions contained in the definition of residency in the motor vehicle code were addressed and clarified.  To date we have been unable to find any clarification from any state officials and are thus unable to adequately advise students of the ramifications of a decision to register to vote in NH." *Id.*

"The lack of clarity from the Secretary of State's office has left a lot of confusion in college campuses across the state," Wester averred.   *Id.*   She explained, "Our campaign takes voting extremely seriously, and Elizabeth Warren even has a plan to address the restrictive voting laws and practices that have been passed in recent years.  Equal access to the ballot box is not something we take lightly." *Id.*   "We also want to make sure we are providing accurate information to voters about their rights and voting laws," and, Wester lamented, "[w]ithout guidance from the state, we are left in the position of being unable to answer voters', especially students', questions." *Id.*   Thus, like America Votes, the New Hampshire for Warren Campaign has "chosen to provide less information instead of making assumptions of what the proper information could be under HB 1264." *Id.*

Further evidence of confusion comes from the town clerk of Hanover, New Hampshire. Clerk Elizabeth McClain notes that "HB 1264 was a significant change. It used to be very that clear college students, transient workers, and others could select New Hampshire to be their voting domicile." McClain Decl., ¶ 6, attached hereto as Exhibit A. "[A]pproximately two dozen people have come in to [the Hanover town clerk's] office when registering to vote who have asked [clerk staff] if they will, as a consequence, be required to get a New Hampshire driver's license." *Id.* On July 19, 2019, she emailed the "Secretary of State's Office for guidance on how to answer the question: If I register to vote, do I need to get a New Hampshire driver's license?" *Id.*

In response, the Secretary of State's Office did not answer whether new registrants will be required to get New Hampshire driver's licenses, and instead she received a communication from the Secretary of State's Office that says the following consistent with its litigation position in this case: "HB 1264 does not change any election law.  As election officials we do not offer advice on how residency laws apply to other areas of the law such as how motor vehicle, tax, fish and game, and labor laws, etc. apply to individual voters." *Id.* ¶ 7.  As a result, she began directing would-be voters to the closest DMV offices which is 45 minutes away by car and not readily accessible by public transportation. *Id.* ¶8. She directs voters to the DMV even though her staff are municipal agents for the DMV, authorized to collect state fees for vehicle registrations, because none of her staff has received training in their capacity as municipal agents for the DMV on whether people who register to vote have to get a New Hampshire vehicle registration. *Id.* ¶ 9.

In sum, based upon her professional experience, she believes "HB 1264 is causing significant confusion that could ultimately cause qualified potential voters to elect not to vote. This confusion has been amplified by the lack of clarity from state agencies, including the Secretary of State's Office." *Id.* ¶ 10.

Defendants' ambiguity over the law's requirements, and the burdens that will be imposed if registrants are required to purchase licenses and car registrations, are significant now, but they will be even more extreme on Election Day, when thousands of people will same-day register to vote.  If the law is not subject to judicial review and is allowed to proceed before and through the election, the right to vote of thousands will be unconstitutionally compromised, likely with potential voters deciding not to vote due to their confusion, fear of liability, and other burdens associated with required DMV transactions.

From the beginning of this case, the Individual Plaintiffs have sought to have HB 1264 adjudicated before the primary. At the May 17, 2019 telephone conference, the Individual Plaintiffs noted the upcoming election and requested adjudication of the case before the Presidential Primary Election.  Plaintiffs repeated this request in their Assented-To Consolidated Motion to Extend Deadline for Plaintiffs to Respond to the Defendants' Consolidated Motion to Dismiss (DN 22).  Plaintiffs also repeated this request at the Pretrial Conference held on August 13, 2019.

The Individual Plaintiffs do not think it is realistic to assume that certifying the questions to the New Hampshire Supreme Court will allow the early January trial to proceed, even if discovery is ongoing. The New Hampshire Supreme Court typically takes months to decide complex cases such as this.  For example, *Opinion of the Justices (Definition of Resident and Residence)*, 171 N.H. 128 (2018) ("*Resident*"), took almost two months: the Resolution of the Governor and Council calling for an opinion was transmitted to the Court on May 16, 2018; briefs were solicited from interested parties through May 31, 2018, and an opinion was issued on July 12, 2018.  If the Supreme Court acts as quickly in this case as it did in *Resident*, an opinion still would not issue until mid-December at the earliest—a time when the parties will be likely taking depositions, refining their theories, preparing witnesses, and generally getting ready for a trial which begins on January 6, 2020.  Depending on the result of the certification, the parties may be scrambling to adjust their legal theories in light of the New Hampshire Supreme Court's pronouncements on the meaning of New Hampshire law weeks before trial.  In addition, as the Court is well aware, the position of Chief Justice of the New Hampshire Supreme Court is currently vacant, and the Individual Plaintiffs presume that, with the Court acting at 80 percent of its judicial staff, cases are taking longer to resolve than otherwise they would.

This Court wrote that it would consider issuing a temporary order prohibiting New Hampshire from using voter registration as evidence in any enforcement of RSA 261:45 and RSA 263:35 or a provisional protective order agreed to by the parties.  While the parties have been unable to agree on any stipulated order, the Individual Plaintiffs suggest that a temporary order to minimize prejudice to the Plaintiffs by reducing voters' burdens and confusion, should: 1) prohibit the State from using evidence of voter registration or voting in any judicial or administrative enforcement of RSA 261:45 and RSA 263:35, 2) last through the pendency of the New Hampshire Supreme Court proceeding and through the 2020 Presidential Primary Election until subsequently dissolved by this Court, and 3) order the Secretary of State's Office to post on the homepage of its website and inform local election officials that, due to a court order, the act of voting in the primary election or registering to vote at or before the primary election *does not* require a person to buy a New Hampshire Driver's License or vehicle registration.

### INDIVIDUAL PLAINTIFFS REQUEST AN EXPEDITED HEARING

The Presidential Primary Election is fast approaching, and the parties have much work to do in advance of trial.  Document discovery is ongoing, and depositions have not yet begun.  The Plaintiffs request an expedited hearing on certification and their motions to amend (DN 57 and 58) to allow the parties to more efficiently prosecute and defend their cases.

Given that the various state agencies have refused to answer the direct question of whether, as a result of HB 1264, a person who registers to vote will be required to buy a New Hampshire driver's license and/or vehicle registration (if they vote or drive), the Defendants' counsel should be ordered to bring to the hearing representative(s) from the Department of Justice, the Secretary of State's Office, and the Division of Motor Vehicles with authority to bind those agencies who can explain their positions on the effects of HB 1264 on those who register and vote.

Respectfully submitted,

CAROLINE CASEY AND MAGGIE FLAHERTY,

By and through their attorneys affiliated with the
American Civil Liberties Union of New Hampshire
Foundation and the American Civil Liberties Union
Foundation,

*/s/ Henry R. Klementowicz*
Gilles R. Bissonnette (N.H. Bar No. 265393)
Henry R. Klementowicz (N.H. Bar No. 21177)
AMERICAN CIVIL LIBERTIES UNION OF NEW
HAMPSHIRE FOUNDATION
18 Low Avenue
Concord, NH  03301
Tel.:  603.224.5591
gilles@aclu-nh.org
henry@aclu-nh.org

Julie A. Ebenstein, *pro hac vice*
Theresa Lee, *pro hac vice*
Dale E. Ho, *pro hac vice*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Voting Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: 212.549.2500
jebenstein@aclu.org
tlee@aclu.org
dho@aclu.org

Date:   October 21, 2019

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that he has electronically filed this date the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in the consolidated case. This filing is available for viewing and downloading from the ECF system.

Dated:  October 21, 2019                    /s/ Henry R. Klementowicz
                                            Henry R. Klementowicz