UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CAROLINE CASEY, et al.,                            \*
                                                   \*
         Plaintiffs,                               \*
    v.                                             \*
                                                   \*
WILLIAM M. GARDNER, Secretary of                   \*
State of the State of New Hampshire,               \*
in his official capacity, et al.,                  \*
                                                   \*
         Defendants.                               \*
                                                   \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*         Case No. 19-cv-00149-JL
NEW HAMPSHIRE DEMOCRATIC,                          \*         (Consolidated Cases)
PARTY, By Raymond Buckley, Chair,                  \*
                                                   \*
         Plaintiff,                                \*
    v.                                             \*
                                                   \*
WILLIAM M. GARDNER, in his official                \*
Capacity as New Hampshire Secretary of             \*
State, et al.,                                     \*
                                                   \*
         Defendants.                               \*
                                                   \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPPOSING CERTIFICATION**

**PRELIMINARY STATEMENT**

The defendants oppose certification of the proposed questions contained in the court's Procedural Order [ECF Doc. #56] for at least the following reasons.

First, the questions of state law identified in the certification order are not difficult or complex. This court could answer them by applying well-settled principles of statutory construction and existing New Hampshire case law. The course the New Hampshire Supreme Court would therefore take is reasonably clear and certification is not required.

Second, the court's procedural order reveals the extraordinarily attenuated nature of the plaintiffs' alleged harm and that statutes contained in the motor vehicle code, which the Plaintiffs do not challenge in this action, are the true source of plaintiffs' alleged harm. The plaintiffs' facial challenges to HB 1264 fail as a result. HB 1264 is not alleged to be invalid in every set of circumstances and does not alter the state's election law. Rather, HB 1264 has a plainly legitimate sweep throughout all of New Hampshire statutes. The plaintiffs' facial challenges to HB 1264 therefore fail.

Third, the defendants will not agree to the entry of any temporary relief. The plaintiffs have not established, and cannot establish, the necessary elements to obtain preliminary injunctive relief. The temporary relief the court proposes is barred by the Eleventh Amendment, will interfere unnecessarily with provisions of the motor vehicle code and the election code that are not challenged as unconstitutional in this proceeding, cannot be done under state law, and, from a practical standpoint, is unworkable.

What the court's procedural order reveals is that this case should be materially restructured to allow for a robust summary judgment process where important threshold legal questions of state law, and other important legal questions of federal law, can be appropriately briefed and resolved

before a trial on the merits. The plaintiffs may seek preliminary injunctive relief prior to the New Hampshire presidential primary if they believe they can obtain it. However, a fulsome summary judgment process will permit the parties and the court ample time to identify, address, and resolve, prior to trial on the merits, important legal issues of state and federal law involved in this case.

Accordingly, and for the reasons explained in further detail below, the defendants respectfully oppose certification in this case.

## **ANALYSIS**

### **I. The questions raised for certification are capable of being answered by reference to the statutes at issue and New Hampshire case law and should not be certified.**

The court has identified at least four state law questions in its proposed certification order. Those questions involve how various New Hampshire statutes interact with each other, including RSA 21:6, RSA 21:6-a, RSA 259:88, RSA 261:45, RSA 263:35, RSA 654:1, I, and RSA 654:1, I-a. These questions are capable of resolution by reference to the New Hampshire statutes involved and relevant New Hampshire case law.

In resolving these state law questions, this court must first discern how the New Hampshire Supreme Court would likely construe these statutory provisions, even if this court's independent judgment might differ. *See, e.g.*, *Showtime Entertainment, LLC v. Town of Mendon*, 769 F.3d 61, 79 (1st Cir. 2014); *Ambrose v. New England Ass'n of Schs. & Colleges, Inc.*, 252 F.3d 488, 497-98 (1st Cir. 2001); *In re Boston Regional Med. Ctr., Inc.*, 410 F.3d 100, 108 (1st Cir. 2005). "However, where [the] court determines that the path of state law is sufficiently undeveloped, or the correct answer to the question before [the court is] sufficiently unclear, so as to make such prophetic action unwise, [the court] may instead choose to certify such questions to the highest court of the state." *Showtime Entertainment, LLC*, 769 F.3d at 79.

The first requirement for certification is whether the state law questions certified would be determinative of this action. *Id.* It appears that the state law questions posed by the court, if resolved in a particular way, could be determinative of this action.

The second requirement for certification is that there be "no controlling precedent" from the New Hampshire Supreme Court. N.H. Sup. Ct. R. 34; *see Showtime Entertainment, LLC*, 769 F.3d at 79. The First Circuit has interpreted this requirement, as used in the analogous Supreme Judicial Court of Massachusetts rule, "to mean that certification is inappropriate where 'the course the state court would take is reasonably clear.'" *Showtime Entertainment, LLC*, 769 F.3d at 79 (quoting *In re Engage*, 544 F.3d 50, 53 (1st Cir. 2008)). Certification in this case fails on the second requirement: the course the New Hampshire Supreme Court would take is reasonably clear.

In interpreting statutes, the New Hampshire Supreme Court "first look[s] to the language of the statute itself, and, if possible, construe[s] that language according to its plain and ordinary meaning." *Petition of Carrier*, 165 N.H. 719, 721 (2013). It "interpret[s] legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." *Id.* "The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect." *Garand v. Town of Exeter*, 159 N.H. 136, 141 (2009) (quotation omitted). The New Hampshire Supreme Court "construe[s] all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." *Petition of Carrier*, 165 N.H. at 721.

**A. RSA 21:6 and RSA 21:6-a, as amended by HB 1264, are effectively the same as the definition of "domicile" contained in RSA 654:1.**

Prior to the passage of HB 1264, the New Hampshire Supreme Court in *Guare v. State*, 167 N.H. 658 (2015) identified the sole difference between the terms "resident" and "residence," as used in RSA 21:6 and RSA 21:6-a, and the definition of "domicile," as used in RSA 654:1:

> The basic difference between a 'resident' and a person who merely has a New Hampshire 'domicile,' is that a 'resident' has manifested an intent to remain in New Hampshire for the indefinite future, while a person who merely has a New Hampshire 'domicile' has not manifested that same intent."

*Guare*, 167 N.H. at 662.

HB 1264 eliminated the phrase "for the indefinite future" from RSA 21:6 and RSA 21:6-a. The purpose of HB 1264 was to equate the terms "resident," "inhabitant," and "residence," as used in RSA 21:6 and RSA 21:6-a, with the term "domicile," as used in RSA 654:1 and other state statutes. HB 1264 accomplishes that purpose by eliminating the only "basic difference" between those statutory definitions, the phrase "for the indefinite future." Thus, it is reasonably clear that the New Hampshire Supreme Court would answer this court's first question – Are the definitions of "resident" and "residence" in RSA 21:6 and :6-a, as recently amended, effectively the same as the definition of "domicile" as used in RSA 654:1, such that one with a New Hampshire "domicile" is necessarily a New Hampshire "resident"? – in the affirmative.

**B. A student who claims a New Hampshire domicile under RSA 654:1-a is a resident under RSA 21:6, as recently amended.**

By its plain terms, RSA 654:1, I-a does not establish a separate or different domicile requirement from RSA 654:1, I. Rather, RSA 654:1, I-a merely recognizes that students attending institutions of learning in New Hampshire may lawfully claim New Hampshire as their domicile for voting purposes if their claim of domicile meets RSA 654:1, I. A person whose claim of domicile meets RSA 654:1, I is now a "resident" under RSA 21:6. The New Hampshire

5

Supreme Court recognized this recently in *Opinion of the Justices (Definition of Resident and Residence)*, wherein it indicated that *Guare* addressed the issue. 171 N.H. 128, 140 (2018) ("The difference between the definition of domicile under RSA 654:1, I, and I-a for voting purposes and, under RSA 21:6 and :6-a for most other purposes, is the issue underlying our decision in Guare."). Thus, applying well-settled principles of statutory construction, and relying on *Guare*, it is reasonably clear the New Hampshire Supreme Court would answer the court's second question – Is a student who claims a New Hampshire "domicile" pursuant to RSA § 654:1-a necessarily a New Hampshire resident under RSA 21:6, as recently amended? – in the affirmative.

### C. A person claiming domicile under RSA 654:1 cannot be a person "who claims residence in any other state for any purpose" under RSA 259:88.

The New Hampshire Motor Vehicle Code contains definitions. RSA 259:88 defines the term "Resident" to mean "a resident of the state as defined in RSA 21:6 [which HB 1264 equates to domiciliary], except that no person shall be deemed to be a resident who claims *residence* in any other state for any purpose." The motor vehicle code, however, does not define the term "residence."

RSA 21:6-a does define "residence," and HB 1264 makes that definition synonymous with one's "domicile" under RSA 654:1. *See* RSA 21:1 ("In the construction of all statutes the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the same statute."). Thus, under RSA 259:88, a resident is a New Hampshire *resident/domiciliary* who does not claim *residence/domicile* in any other state for any purpose. This means that a person who claims *residence/domicile* in another state cannot be a resident under RSA 259:88, unless the motor

6

vehicle code otherwise specifically deems them to be a resident for a specific purpose, *see* RSA 259:67, I (definition of "nonresident").

Accordingly, it is reasonably clear, based on well-settled principles of statutory construction, that the New Hampshire Supreme Court would answer the court's third question – Can an individual with a New Hampshire "domicile" pursuant to RSA 654:1 ever be an individual "who claims residence in any other state for any purpose" and thus is not a "resident" for the purposes of RSA 259:88 – in the negative .

**D. A person who considers herself to be domiciled in New Hampshire consistent with RSA 654:1, I or I-a has established "a bona fide residency" for the purposes of RSA 261:45 and RSA 263:35 in New Hampshire.**

The phrase "bona fide residency" implicates a person's intent. It is used in different legal contexts, including tax and election law. *See, e.g.*, *Dunn v. Blumstein*, 405 U.S. 330, 343-44 (1972) ("the States have the power to require that voters be bona fide residents of the relevant political subdivision."); *Comm'r of IRS v. Estate of Sanders*, 834 F.3d 1269, 1275 (11th Cir. 2016) ("What matters for the bona fide residency test is not the taxpayer's good faith belief that he has satisfied some formulaic residency test, but his good faith intention to actually become a resident of a certain place for a legitimate reason. Indeed, when courts assess good faith as part of a bona fide residency determination, they look to a taxpayer's intentions and reasons for becoming a resident rather than his subjective beliefs about his residency status."); *Chasan v. Vill. Dist. of Eastman*, 128 N.H. 807, 822 (1986) ("RSA 670:3, which prescribes bona fide residency among a legal voter's qualifications, has several important objectives. It insures that the voters are most likely to be cognizant of the full range of issues confronting the community. It designates those citizens who are likely to be the most informed of the needs of the particular community. It assures that the

7

voter has a common interest in all matters pertaining to the government of the subdivision and that the franchise will be exercised intelligently.").

As these cases reveal, the term "bona fide residency" means that the person's residence in a state is genuine and not for some other sham purpose, such as avoiding taxation or higher motor vehicle registration fees in the jurisdiction where one actually has his or her bona fide residence. Because the terms "resident," "residence," and "domicile" are now equivalent, the term "bona fide residency" effectively means "bona fide domicile." Thus, when a person forms the intent and considers herself to be a domiciliary of New Hampshire under RSA 654:1, I, she establishes a bona fide residency in New Hampshire and has 60 days from that point in time to obtain a New Hampshire driver's license and register her motor vehicle in New Hampshire, in accordance with RSA 261:45 and RSA 263:35, assuming she does not already have an appropriate New Hampshire license and registration by operation of the definition of nonresident in the motor vehicle code. *See* RSA 259:67, I.

The final question posed by the court implies that a person becomes domiciled in New Hampshire at the moment she signs a voter registration form identifying herself as a domiciliary under RSA 654:1, I. That premise is incorrect. Domicile is a question of fact and intent, which may be evidenced through objective acts reflecting a desire to make a particular New Hampshire community that person's home to the exclusion of all other places. *See, e.g.*, *Every v. Supervisors of Madison Checklist*, 124 N.H. 824, 828 (1984); *McGee v. Bragg*, 94 N.H. 349, 352 (1947); *Bailey v. Bailey*, 93 N.H. 259 (1945); *Foss v. Foss*, 58 N.H. 283 (1878). The moment an individual forms that intent, the individual has established a bona fide residency/domicile in New Hampshire, pursuant to RSA 261:45 and RSA 263:35. The mere act of registering to vote alone, however, does not establish a bona fide residency/domicile, as one who fraudulently or mistakenly claims

domicile in a particular New Hampshire community on a voter registration form would not have established a "bona fide residency" in that community.

Accordingly, it is reasonably clear, based on well-settled principles of statutory construction, that the New Hampshire Supreme Court would answer to the court's fourth and final question as follows: A person who forms the intent and considers herself to be a domiciliary of a particular New Hampshire community under RSA 654:1, I establishes a bona fide residency in that community and has 60 days from that point in time to obtain a New Hampshire driver's license and register her motor vehicle in New Hampshire.

## II. The court's proposed certification order highlights the legal defects in plaintiffs' case and suggest that this case should be materially restructured to permit a meaningful opportunity for summary judgment.

The court's procedural order illustrates the fundamental problem with the plaintiffs' theory of their case. Though the plaintiffs challenge only the constitutionality of HB 1264, the harms they allege do not flow from HB 1264. Rather, the plaintiffs contend they will be harmed based on how HB 1264 is imported into two *other* statutory provisions of the motor vehicle code—statutory provisions which the plaintiffs do not challenge in this lawsuit. Under such circumstances, the plaintiffs cannot demonstrate that HB 1264 is unconstitutional either on its face or as applied to them.

"[A] plaintiff can only succeed in a facial challenge by establishing that no set of circumstances exists under which [a statute] would be valid, *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quotation marks, brackets, and citation omitted). "Facial challenges are disfavored," as they "often rest on speculation," "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of

deciding it or formulate a rule of constitutional law broader than is required by the precise facts to which it is applied," and "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 450–51.

The plaintiffs' facial challenge fails for several reasons. First, the plaintiffs cannot demonstrate that HB 1264 is unconstitutional in all of its applications because the harms they allege flow from the alleged application of two motor vehicle provisions, not from HB 1264 itself. The plaintiffs do not suggest, much less allege, that the general rules of statutory construction amended by HB 1264 are unconstitutional when imported into all other potentially applicable chapters of the New Hampshire Revised Statutes, and therefore cannot demonstrate that there is no set of circumstances under which HB 1264 is unconstitutional.

Second, the plaintiffs at most allege that HB 1264 is unconstitutional when applied to *some* voters who are subject to *certain* motor vehicle regulations, which the United States Supreme Court has suggested and multiple federal courts of appeals have held cannot serve as a basis to invalidate a statute on its face. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 202–03 (2009) (Opinion of Stevens, J.) (emphasizing that "[a] facial challenge must fail where the statute has a plainly legitimate sweep" and holding that "petitioners have not demonstrated that the proper remedy—even assuming an unjustified burden on *some* voters—would be to invalidate the entire statute") (emphasis in original)[1]; *Brakebill v. Jaeger*, 932 F.3d 671, 678 (8th Cir. 2019) ("[E]ven assuming that a plaintiff can show that an election statute imposes excessively burdensome requirements on *some* voters, that showing does not justify broad relief

---

[1] While Justice Stevens only wrote for himself and two other Justices, his analysis was endorsed by Justice Scalia in his concurrence, in which Justices Thomas and Alito joined. *See Crawford*, 553 U.S. at 204 (Scalia, J., concurring in the judgment). Justice Scalia would simply have gone one step further and held that "petitioners' premise is irrelevant and [the] burden at issue is minimal and justified." *Id.*

that invalidates the requirements on a statewide basis as applied to *all* voters." (emphasis in original) (internal citation and quotation marks omitted)); *Frank v. Walker*, 819 F.3d 384, 385 (7th Cir. 2016) (noting that "the burden some voters faced [under a voter identification law] could not prevent the state from applying the law generally").

Third, by challenging only HB 1264 and not the motor vehicle provisions that they contend actually harm them, the plaintiffs ask this court to ignore "the fundamental principle of judicial restraint" and "anticipate a question of constitutional law in advance of the necessity of deciding it." *Wash. State Grange*, 552 U.S. at 450.

To the extent the plaintiffs advance an as-applied challenge, the court's procedural order highlights why any such challenge also fails. "A plaintiff asserts an as-applied challenge by claiming that a statute is unconstitutional as-applied to his or her particular conduct, even though the statute may be valid as to other parties." *Cook v. Gates*, 528 F.3d 42, 56 n.8 (1st Cir. 2008). In this case, the statutes that may actually burden the plaintiffs when applied to them are RSA 261:45 and RSA 263:35. That result is doubtful, however, because nonresidents face equivalent monetary obligations and risk equivalent penalties for failing to comply with the nonresident licensing and registration requirements under the motor vehicle code.[2] Regardless, the plaintiffs do not challenge the application of RSA 261:45 and RSA 263:35 to them, instead focusing solely on the general rules of statutory construction amended by HB 1264. In other words, the plaintiffs do not challenge the statutes whose applications may actually harm them. As such, any as-applied challenge advanced by the plaintiffs likewise fails as a matter of law.

---

[2]Under the motor vehicle code, a nonresident who has a regular abode in New Hampshire for more than 6 months in any year is deemed a resident under the code as to all vehicles principally used in connection with that abode. RSA 259:67, I. When those circumstances are present, a nonresident is required to pay for a New Hampshire driver's license and registration and driving without those valid state law documents puts the nonresident in violation of RSA 263:1 and RSA 261:40.

11

**III. The defendants oppose the entry of temporary relief.**

Even if the court decides to certify one or more questions of state law to the New Hampshire Supreme Court, the defendants oppose the entry of temporary relief and will not agree to it. The temporary relief proposed by the court is, in essence, a preliminary injunction in the plaintiffs' favor. The plaintiffs could have sought that precise relief by filing a motion for a preliminary injunction. They have not filed such a motion at any point during the more than nine months this case has been pending. This court cannot afford the plaintiffs preliminary injunctive relief that they have not requested and have not demonstrated a legal entitlement to receive. For this reason alone, the court should refrain from entering any temporary relief in the event it certifies questions to the New Hampshire Supreme Court.

To be entitled to a preliminary injunction, the plaintiffs must demonstrate: "(1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest." *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015). In the First Circuit, "proving likelihood of success on the merits is the "sine qua non" of a preliminary injunction." *Id.* at 173. The plaintiffs have not made, and cannot make, such a showing in this case, as a legal or factual matter. And even if this were not fatal to the plaintiffs' entitlement to injunctive relief, this court cannot issue such relief on the present record, particularly given the skepticism expressed during the motion to dismiss hearing and at the preliminary pretrial conference that the alleged burdens the plaintiffs had identified rendered HB 1264 constitutionally suspect. Consequently, at this juncture, no record exists that would justify the entry of preliminary injunctive relief.

Absent a showing sufficient to obtain preliminary injunctive relief, the defendants' Eleventh Amendment immunity would bar any temporary relief. The claims in this case have been

brought against the New Hampshire Attorney General and the New Hampshire Secretary of State in their official capacities to declare HB 1264 unconstitutional and enjoin those state officials prospectively from enforcing it.  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).  Generally speaking, "'states are immune under the Eleventh Amendment from private suits in federal courts.'"  *Wojcik v. Mass. State Lottery Comm.*, 300 F.3d 92, 99 (1st Cir. 2002) (quoting *Greenless v. Almond*, 277 F.3d 601, 606 (1st Cir. 2002)).  The defendants have not waived Eleventh Amendment immunity in this case, and the State of New Hampshire, as a standalone entity, is not, and cannot be made, a party to this action.  *See Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 (1st Cir. 2009) ("[s]tates and their agencies are entitled to sovereign immunity [in federal court] 'regardless of the relief sought.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

Thus, any relief that could be entered in this case would have to be consistent with *Ex parte Young*, 209 U.S. 123 (1908).  *Ex parte Young* establishes a narrow exception to Eleventh Amendment immunity that empowers federal courts to require state officials to conform their future conduct to the requirements of federal law.  *See, e.g.*, *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) ("A 'pivotal question' under *Ex parte Young* is whether the relief 'serves directly to bring an end to a present violation of federal law.'") (quoting *Whalen v. Mass. Trial Court*, 397 F.3d 19, 29 (1st Cir. 2005)); *Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002) (explaining that *Ex parte Young* permits federal courts to "enjoin state officials to conform future conduct to the requirements of federal law").

The plaintiffs' claims against the Secretary of State do not fall within the *Ex parte Young* doctrine because the Secretary does not enforce HB 1264 or otherwise engage in any conduct

related to it.  This court therefore cannot issue prospective injunctive relief against the Secretary, whether preliminary or permanent, consistent with the Eleventh Amendment.  Additionally, while this court could enjoin the Attorney General from advising agencies concerning HB 1264's provisions in the event it declares HB 1264 unconstitutional, it cannot enter general relief against the State of the New Hampshire that purports to extend beyond the Attorney General and reach local election officials, local law enforcement, and agencies that administer other laws.  *See Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 (1st Cir. 2009) ("[s]tates and their agencies are entitled to sovereign immunity [in federal court] 'regardless of the relief sought.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

The proposed temporary relief would do precisely that.  The court proposes enjoining "New Hampshire from using voter registration as evidence in any enforcement action of RSA 261:45 and RSA 263:35 . . . ."  That relief is barred by the Eleventh Amendment because it is directed at the State generally and does not seek to require one of the named defendants to conform his conduct to state law.  *See Poirier*, 558 F.3d at 97 (1st Cir. 2009) ("[s]tates and their agencies are entitled to sovereign immunity [in federal court] 'regardless of the relief sought.'") (quoting *Graham*, 473 U.S. at 167 n.14).  That proposed temporary remedy also seeks relief against state and local officials who are not parties to this case, interferes with the public administration of statutes the constitutionality of which have not been challenged, may result in persons driving on New Hampshire roadways with invalid licenses and registrations, and does not include other provisions of law that could be used to penalize persons for driving with invalid licenses and registrations on the ways of New Hampshire.  Additionally, such relief would create a safe harbor that could encourage nonresidents to claim residency in New Hampshire to evade the nonresident licensing and registration obligations under the motor vehicle code.  *See* RSA 259:67, I.  Moreover,

such relief does not account for the fact that other evidence may be used to establish that a person has been a registered voter in New Hampshire since a specific date. In short, this form of temporary relief cannot, and should not, be entered and would not necessarily function to protect anyone.

The other form of temporary relief the court proposes — providing persons who register to vote with an opportunity to cancel their voter registrations — is also barred by the Eleventh Amendment. Such relief would not comport with *Ex parte Young*, as it would in no way require a state official to conform his or her conduct to federal law. Indeed, the fact that this relief would become available only if *the defendants* prevailed in this case demonstrates that it is not based on a purported constitutional violation at all. And because the court envisions this relief coming available only if the defendants prevail, it is unclear how the plaintiffs could secure such relief through the normal preliminary injunction process, where they would have to demonstrate a likelihood of success on the merits to be entitled to preliminary relief.

The court's proposal with respect to canceling registrations also cannot be done consistent with New Hampshire law. No state official has the power or authority to cancel a registrant's voter registration, either unilaterally or with that registrant's assent. At best, procedures exist in state law to enable local election officials to remove persons from the public checklist, RSA 654:44, or for private persons to get themselves removed from the public checklist if they claim to have been added to it illegally, RSA 654:42. Removal from the public checklist is not the same as cancelling a voter registration. The State has no obligation to create a voter registration removal program and implement it under *Ex parte Young*, in violation of State law, to accommodate temporary relief while questions of state law are certified to the state supreme court.

Moreover, any temporary relief that incentivizes nonresidents to claim a bona fide residency in New Hampshire to escape nonresident motor vehicle licensing and registration obligations, and then permits those same persons to register to vote with the opportunity to cancel their voter registrations later and become effectively nonresidents again, provides a wide and significant judicially-created opportunity for voter fraud and wrongful voting to occur during New Hampshire's first in the nation presidential primary.

"A State indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. San Francisco County Democratic Central Comm.,* 489 U.S. 214, 231 (1989). "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). "Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Id.* "'[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.'" *Id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)).

It is of paramount importance to the defendants, and the State generally, that the integrity and legitimacy of the New Hampshire presidential primary not be questioned based on temporary relief entered in this case, without any showing from the plaintiffs that they are entitled to such relief under the standard preliminary injunction test. Accordingly, the defendants oppose the entry of any temporary relief at this stage of the case and will not agree to the entry of temporary relief.

## CONCLUSION

Certification of the questions proposed is not required in this case. The defendants will also not agree to the entry of any proposed temporary relief. This court's procedural order highlights the important role a robust summary judgment process should play in this case. The

defendants would therefore propose that this case be materially restructured to accommodate a summary judgment process and that the trial of this matter be extended beyond the date of the presidential primary. If the plaintiffs believe they are entitled to, and are capable of obtaining, preliminary injunctive relief prior to the presidential primary, they are free to undertake that process. This case structure would give the parties ample time to develop, argue, and create an appropriate record on the many different questions of state and federal law at issue in this litigation and would give this court an appropriate amount of time to consider and review those important arguments in crafting its orders in this case. This case structure would also potentially obviate the need for a trial in this matter. The defendants therefore request that this case be restructured in this manner, rather than certifying the questions identified in its procedural order to the New Hampshire Supreme Court for resolution at such a preliminary stage of the case.[3]

        Respectfully submitted,

        WILLIAM M. GARDNER, in his official capacity as the Secretary of State of the State of New Hampshire, and GORDON J. MACDONALD, in his official capacity as the Attorney General of New Hampshire

        By their attorneys,

        THE OFFICE OF THE ATTORNEY GENERAL

Dated: October 21, 2019        /s/Anthony J. Galdieri_____
        Seth M. Zoracki, Bar No. 267887
        Assistant Attorney General
        Anthony J. Galdieri, Bar No. 18594
        Senior Assistant Attorney General

---

[3] Creating an opportunity for summary judgment would expose the various legal issues in this case to full, adversarial briefing. The court would be in a better position at that juncture to know and understand what questions of state law may or may not need to be certified to the New Hampshire Supreme Court. And, the ability for the plaintiffs to seek preliminary injunctive relief under this court's rules adequately protects their interests in advance of the presidential primary.

Samuel R.V. Garland, Bar No. 266273
Attorney
Civil Bureau
New Hampshire Department of Justice
33 Capitol Street
Concord, NH 03301
(603) 271-3650

and

Bryan K. Gould, Esq. (NH Bar #8165)
Cooley A. Arroyo, Esq. (NH Bar #265810)
Cleveland, Waters and Bass, P.A.
2 Capital Plaza, P.O. Box 1137
Concord, NH 03302-1137
(603) 224-7761

### Certificate of Service

I hereby certify that a copy of the foregoing was served this 21st day of October, 2019 on all counsel of record, via this court's ECF electronic filing system.

Dated : October 21, 2019                     /s/Anthony J. Galdieri
                                             Anthony J. Galdieri