## UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **CAROLINE CASEY and MAGGIE FLAHERTY** | |
| **Plaintiffs,** | |
| **v.** | **Case No.: 1:19-cv-00149-JL** |
| **WILLIAM GARDNER, in his official capacity as New Hampshire Secretary of State, and** **GORDON MACDONALD, in his official capacity as New Hampshire Attorney General** | |
| **Defendants.** | |

## AMENDED COMPLAINT
## (INJUNCTIVE RELIEF REQUESTED)

## INTRODUCTION

This is a civil rights action brought by college students in New Hampshire challenging 2018 House Bill 1264 ("HB 1264") which changed the legal definition of residence and which attempts to require every person who registers to vote in New Hampshire and who has a driver's license or owns a car to obtain a New Hampshire driver's license and register their car in New Hampshire at significant expense.[1]

The right to vote is a fundamental right.  "[V]oting is of the most fundamental significance under our constitutional structure." *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979).  Yet HB 1264 attempts to restrict that right by purporting to require all new

---

[1] HB 1264 took effect on July 1, 2019.

registrants in New Hampshire to domesticate their driver's licenses and car registrations by paying what could be hundreds of dollars. This effort is a departure from the law as it existed before July 1, 2019; previously, only those who intended to remain in New Hampshire for the indefinite future were required to take such steps.

HB 1264 amends RSA 21:6 and :6-a by striking the words "for the indefinite future" from the definition of residency. The law is not a simple terminology change; rather, this change is intended to impact individuals who are likely to vote in New Hampshire elections. The goal of HB 1264 is to deem a voter who is domiciled in New Hampshire under RSA 654:1, I—but who does not have plans to stay in New Hampshire "for the indefinite future"—a "resident" under RSA 21:6 upon the act of registering to vote. Put another way, under the interpretation of the law suggested by those pushing for its enactment, such a voter would now be declaring his or her "residency" under RSA 21:6 when registering to vote. The intent of HB 1264 is for these constitutionally-eligible voters to now have to, within 60 days of registering to vote, pay moneys to the State through car registration and driver's license fees. This is because, under this interpretation, within 60 days of becoming a "resident" under RSA 21:6/RSA 259:88, a person must register their car in New Hampshire and, if they drive, obtain a New Hampshire driver's license. *See* RSA 259:88 (stating that the term "resident" for motor vehicle purposes is defined under RSA 21:6); RSA 261:45, I (a person has 60 days to register a car in New Hampshire after becoming a legal resident); RSA 263:35 (a person has 60 days to obtain a New Hampshire driver's license after becoming a legal resident). These financial burdens conditioned on exercising the right to vote are not optional. The intent of HB 1264 is such that, for these voters, if these fees are not paid within 60 days of declaring residency through the act of registering to vote, that voter will have committed a violation-level offense. *See* RSA 262:41.

At the outset, HB 1264 does not textually accomplish its intended objective of imposing New Hampshire motor vehicle fees on those who register to vote but have out-of-state drivers' licenses or vehicle registrations.  This is because, in part, HB 1264 did not amend the definition of "resident" for motor vehicle purposes at RSA 259:88.  Under RSA 259:88, a "resident" for motor vehicle purposes is defined as "a resident of the state as defined in RSA 21:6, *except that no person shall be deemed to be a resident who claims residence in any other state for any purpose*." (emphasis added).  Thus, a voter with an out-of-state driver's license or vehicle registration who declares his or her "residency" in New Hampshire under RSA 21:6 when registering to vote is still not a "resident" for motor vehicle purposes under RSA 259:88 because, as a result of the out-of-state license or vehicle registration, the voter still has "claim[ed] residence in any other state for any purpose."[2]

Despite the plain language of RSA 259:88, which carves out the motor vehicle laws from the definition of residency of RSA 21:6 if individuals claim residence for any purpose elsewhere, the New Hampshire Department of Justice has apparently taken the position in this case that HB 1264 does impose these motor vehicle obligations on voters with out-of-state driver's licenses.[3]  Accordingly, this lawsuit is necessary.  Indeed, this Court could avoid the grave constitutional claims in this litigation altogether under the doctrine of constitutional avoidance by construing the statute—consistent with the legislature's failure to amend RSA 259:88—as not imposing these

---

[2] Moreover, RSA 261:45 and RSA 263:35 apply these motor vehicle requirements only on "bona fide residents"—a class of people that may be smaller than the class of "residents" under RSA 259:88.

[3] *See* State's Motion to Dismiss at 22-23, 25 (Docket No. 20-1) ("At most, HB 1264, when imported into specific provisions of the Motor Vehicle Code, would subject certain persons who have decided to make New Hampshire their home to the obligations of citizenship normally imposed.  Obtaining an in-state driver's license (if one operates a motor vehicle in New Hampshire) and registering one's car (if one owns a car in New Hampshire) are basic, ordinary, and, at most, inconvenient requirements of residency." (citations omitted); "[T]he State has a compelling interest in ensuring a community of interest among its electorate and ensuring that those members of the community are all appropriately regulated in the same manner if they own and drive a motor vehicle on the roadways of this State.").

motor vehicle "residency" obligations on voters who have out-of-state drivers' licenses and vehicle registrations.  *See United States v. Rehlander*, 666 F.3d 45, 49 (1st Cir. 2012) ("The ordinary rule is that statutes are to be read to avoid serious constitutional doubts, if that course is possible, and it is readily possible here.") (internal citation omitted).

In any event, HB 1264 is unconstitutional under at least four different theories.  *First*, if HB 1264 does impose these motor vehicle fees on voters, then it violates the First and Fourteenth Amendments to the United States Constitution under the *Anderson/Burdick* framework in that it imposes a severe burden on the right to vote, and therefore must survive strict scrutiny.  Because HB 1264 does not advance a compelling state interest, and because it is not narrowly tailored to advance such an interest, it is unconstitutional.  Even if intermediate scrutiny applies, the burden HB1264 imposes on the right to vote outweighs the state's interests.

*Second*, notwithstanding the clear intent of the drafters of HB 1264 and the Department of Justice's apparent pronouncement in this case that voters must pay these motor vehicle fees, HB 1264 is inherently confusing because, as explained above, HB 1264 did not amend the definition of "resident" for motor vehicle purposes at RSA 259:88.  *See Guare v. State of N.H.*, 167 N.H. 658, 664 (2015) (striking down voter registration form language because, in part, the language used in the form was confusing and susceptible of different interpretations).  Again, under RSA 259:88, "resident" for motor vehicle purposes is defined as "a resident of the state as defined in RSA 21:6, *except that no person shall be deemed to be a resident who claims residence in any other state for any purpose*."  (emphasis added).  With the legislature's failure to amend RSA 259:88, there has been significant confusion as to whether a voter with an out-of-state drivers' license or vehicle registration who declares his or her "residency" under RSA 21:6 when registering to vote is a "resident" for motor vehicle purposes under RSA 259:88.  When reviewing

the law, many cannot determine whether they are required to domesticate their driver's license and/or vehicle registration within 60 days of registering to vote. As recently as September 2019, government agencies—including the Department of Justice, Secretary of State's Office, and Division of Motor Vehicles—have compounded and exploited this confusion by refusing to explain to the public the impact they believe HB 1264 has on those who register to vote with out-of-state driver's licenses and vehicle registrations. For example, none of these agencies have directly answered the basic question of whether, in their respective views, all New Hampshire voters with an out-of-state driver's license and/or vehicle registration have to obtain a New Hampshire driver's license or vehicle registration (if they drive or own a car) within 60 days of registering to vote. Instead of giving guidance to the public on these basic questions, these respective agencies have engaged in a game of "passing the buck" by referring questions to each other, thereby leaving voters to fend for themselves in the wake of a confusing law.[4] Accordingly, HB 1264 violates the First and Fourteenth Amendments to the United States Constitution under the *Anderson/Burdick* framework in that it, through this confusion, imposes a severe burden on the right to vote, and therefore must survive strict scrutiny. Because HB 1264 does not advance a

---

[4] *See* Sept. 18, 2019 Ltr. from Att'y Gen. Office to Secretary of State's Office (not answering question of whether a voter needs to obtain a New Hampshire driver's license, and instead stating that election officials receiving this question to "direct the individual to the municipal or state agency that administers or enforces the law in question," which would be the Division of Motor Vehicles as to motor vehicle obligations; further stating in four paragraph page entitled "Information on the legal definition of 'resident' for the purposes of determining rights, privileges, and responsibilities associated with being a New Hampshire 'resident'" that "[t]he decision to vote here may implicate other obligations and benefits under the law unrelated to voting" without explaining what those obligations might be; adding that "individual circumstances may vary, and that this obligation [to obtain a New Hampshire driver's license] should be determined on a case-by-case basis" without explaining under what circumstances a voter would not have to obtain a New Hampshire driver's license); Approx. Sept. 23, 2019 Secretary of State correspondence to local election officials (not answering the question of whether a voter "need[s] to get a driver's license to vote," and instead stating that "[a]s election officials we do not offer advice on how residency laws apply to other areas of the law such as how motor vehicle, tax, fish and game, and labor laws, etc. apply to individual voters"); Casey McDermott, "What Does N.H.'s New Voter Residency Law Actually Change? For Now State Officials Aren't Saying," *NHPR*, Sept. 20, 2019 (the New Hampshire Division of Motor Vehicles declining to answer questions on how it plans on enforcing HB1264 and "whether voting in New Hampshire will now affect whether someone is considered a resident for motor vehicle purposes"), https://www.nhpr.org/post/what-does-nhs-new-voter-residency-law-actually-change-now-state-officials-arent-saying#stream/0.

compelling state interest, and because it is not narrowly tailored to advance such an interest, it is unconstitutional.  And even if intermediate scrutiny applies, the burden HB1264 imposes on the right to vote through this confusion outweighs the state's interests.  In the alternative, if the Court determines that the definition of resident for motor vehicle purposes under RSA 259:88 still controls, the confusion caused by the State's refusal to provide guidance that this is the case remains a substantial burden on the right to vote.  The Supreme Court of New Hampshire has determined that just such confusion unduly burdens the right to vote.  *Guare*, 167 N.H. at 737-38.

*Third*, HB 1264 violates the Twenty-Sixth Amendment to the United States Constitution. The Twenty-Sixth Amendment, which lowered the voting age to 18, "does more than prohibit states from setting explicit age-based qualifications on the right to vote."  *One Wis. Inst. Inc. v. Nichol*, 186 F. Supp. 3d 958, 976 (W.D. Wisc. 2016).  The goal of the amendment "was not merely to empower voting by our youths but was affirmatively to encourage their voting, through the elimination of necessary burdens and barriers, so that their vigor and idealism could be brought within rather than remain outside lawfully constituted institutions."  *Worden v. Mercer Cty. Bd. of Elections*, 61 N.J. 325, 345 (1972).  HB 1264 has the purpose and effect of abridging or denying the right to vote to New Hampshire voters on account of their age.  Young New Hampshire voters, including Plaintiffs and other college students and first time voters, will be disproportionately burdened by HB 1264, and the General Court targeted the burdens imposed by HB 1264 to fall upon young voters as a class.  Unfortunately, HB 1264 represents the latest effort by New Hampshire policy makers to make it more difficult for students to vote since the Twenty Sixth Amendment was ratified in 1971.

*Fourth*, if HB 1264 imposes motor vehicle fees on voters, it violates the Twenty-Fourth Amendment to the United States Constitution.  That amendment provides that the right to vote

shall not be denied or abridged by reason of failure to pay any poll tax or other tax. The Twenty-Fourth Amendment "nullifies sophisticated, as well as simple-minded modes of impairing the right guaranteed." *Harman v. Forssenius*, 380 U.S. 528, 540-41 (1965) (citation and quotation omitted). The category of forbidden poll taxes is broad in order to root out any procedural requirements that deny or abridge the right to vote. *Id.* at 541. It therefore covers not just direct taxes on the right to vote but any imposition that constitutes a "material requirement solely upon those who refuse to surrender their constitutional right to vote in federal elections without paying a poll tax." *Id.* The fact that these fees are imposed after one votes, rather than before one votes, is irrelevant. As in *Harman*, regardless of whether the State requires motor vehicle fees to be paid before or after one registers to vote, they still constitute a "material requirement" imposed "solely upon those who refuse to surrender their constitutional right to vote." *Id.*

## PARTIES

1.     Plaintiff Caroline Casey is a junior at Dartmouth College in Hanover, New Hampshire where she is domiciled on campus. She grew up in Louisiana, where her parents still live. She entered Dartmouth in the fall of 2017, and registered to vote in Hanover in the fall of 2018. She decided to register to vote in Hanover because she is a domiciliary of New Hampshire and she is not connected with Louisiana politics any more. She is involved with get out the vote efforts in New Hampshire and wants her voice to be heard when legislators or other elected officials act on the issues she cares about. She voted in the State Primary Election and State General Election in 2018. She currently holds a Louisiana driver's license. She anticipates that she will likely leave New Hampshire when she graduates in 2021 because she anticipates her job search will likely take her out of state. Caroline Casey has no indefinite intention to remain in New Hampshire. But for the changes in HB 1264, she would not need to domesticate her driver's

license in New Hampshire.  She would be burdened by having do so because, in addition to the fee required, she believes the nearest DMV office is far away from campus and she does not have a car in New Hampshire.

2.     Plaintiff Maggie Flaherty is a junior at Dartmouth College in Hanover, New Hampshire where she is domiciled on campus.  She grew up in northern California, where her parents still live.  She entered Dartmouth in the fall of 2017, and shortly thereafter registered to vote in Hanover as an undeclared.  She decided to register to vote in Hanover because she feels that she is more affected by local laws in Hanover and New Hampshire than she is in California.  She voted in the State Primary Election and State General Election in 2018.  She currently holds a California driver's license.  Because most of the jobs she hopes to apply for are on the west coast, she anticipates returning to California after she graduates in 2021.  Maggie Flaherty has no indefinite intention to remain in New Hampshire.  But for the changes in HB 1264, she would not need to domesticate her driver's license in New Hampshire.  She would be burdened by having to do so because, in addition to the fee required, she believes the nearest DMV office is about 40 minutes away from campus and she does not have a car in New Hampshire.

3.     Defendant William Gardner is the New Hampshire Secretary of State (the "Secretary") and is named as a Defendant in his official capacity.  He is the chief elections officer in charge of administering New Hampshire's election laws pursuant to RSA 652:23.  The Secretary, personally and through the conduct of his employees and agents, acted under color of state law at all times relevant to this action.

4.     Defendant Gordon MacDonald is the New Hampshire Attorney General and is named as a Defendant in his official capacity.  The Attorney General is the chief legal officer and chief law enforcement officer of the State.  He exercises "general supervision of the criminal cases

pending before the supreme and superior courts of the state, and with the aid of the county attorneys [he] shall enforce the criminal laws of the state." RSA 7:6. Law enforcement officers "shall be subject to the control of the attorney general whenever in the discretion of the latter he shall see fit to exercise the same." RSA 7:11. Attorney General MacDonald, personally and through the conduct of his employees and agents, acted under color of state law at all times relevant to this action.

## JURSIDICTION AND VENUE

5.      This action arises under the First, Fourteenth, Twenty-Fourth, and Twenty-Sixth Amendments to the U.S. Constitution, 42 U.S.C. § 1983. This Court therefore has subject matter jurisdiction under 28 U.S.C. § 1331.

6.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

7.      Venue in the District of New Hampshire is based on 28 U.S.C. § 1391(b).

## FACTS

### Residency and Domicile Prior to HB 1264

8.      Prior to HB 1264 going in effect on July 1, 2019, a "Resident" was defined as "a person who is domiciled or has a place of abode or both in this state and in any city, town or other political subdivision of this state, and who has, through all of his actions, demonstrated a current intent to designate that place of abode as his principal place of physical presence *for the indefinite future* to the exclusion of all others." RSA 21:6 (emphasis added).

9.      Domicile—a requirement for a person entitled to vote in New Hampshire—is defined as "that one place where a person, more than any other place, has established a physical presence and manifests an intent to maintain a single continuous presence for domestic, social, and civil purposes relevant to participating in democratic self-government." RSA 654:1, I.

College students are specifically authorized by statute to claim domicile in the town or city in which they live while attending an institution of learning so long as the student meets the definition of "domicile" under RSA 654:1, I. RSA 654:1, I-a. Under Part I, Article 11 of the New Hampshire Constitution, every otherwise qualified domiciliary has the right to vote in the town, ward, or unincorporated place where they are domiciled.

10.     Thus, under the law as it existed before HB 1264 went in effect on July 1, 2019, someone who had "established a physical presence and manifests an intent to maintain a single continuous presence for domestic, social, and civil purposes relevant to participating in democratic self-government" but did not intend to remain for the indefinite future would be considered a domiciliary but not a legal resident. That person would be entitled to vote in New Hampshire (because they are domiciled), but not required to get a New Hampshire driver's license, or register their car in New Hampshire (because they are not a resident).

11.     Under HB 1264, the legislature intended to change this scheme substantially. The law removes the phrase "for the indefinite future" from RSA 21:6 and RSA 21:6-a. The law is not a simple terminology change; rather, this change is intended to impact individuals who are likely to vote in New Hampshire elections. The goal of HB 1264 is to deem a voter who is domiciled in New Hampshire under RSA 654:1, I—but who does not have plans to stay in New Hampshire "for the indefinite future"—a legal "resident" under RSA 21:6 upon the act of registering to vote.

12.     Put another way, the intent of HB 1264 is to cause a voter to declare his or her "residency" under RSA 21:6 by registering to vote. The intent is that, under HB 1264, these constitutionally-eligible voters would now need to, within 60 days of registering to vote, pay moneys to the State through car registration and driver's license fees. This is because, if the interpretation of the law urged by the State controls, within 60 days of becoming a "resident," a

person must register their car in New Hampshire and, if they drive, obtain a New Hampshire driver's license.  *See* RSA 259:88 (stating that the term "resident" for motor vehicle purposes is defined under RSA 21:6); RSA 261:45, I (a person has 60 days to register a car in New Hampshire after becoming a legal resident); RSA 263:35 (a person has 60 days to obtain a New Hampshire driver's license after becoming a legal resident).  These motor vehicle fees are substantial.  A New Hampshire driver's license costs $50, and registration fees can be in the hundreds of dollars.[5]

13.    If the interpretation of the law urged by the State controls, these financial burdens conditioned on exercising the right to vote are not optional.  The intent of HB 1264 is such that, for these voters, if these fees are not paid within 60 days of declaring residency through the act of registering to vote, that voter will have committed a violation-level offense.  *See* RSA 262:41.

14.    However, as explained in this Amended Complaint's Introduction, HB 1264 does not textually accomplish its intended objective of imposing New Hampshire motor vehicle fees on those who register to vote but have out-of-state driver's licenses or vehicle registrations.  This is because HB 1264 did not amend the definition of "resident" for motor vehicle purposes at RSA 259:88.  Under RSA 259:88, a "resident" for motor vehicle purposes is defined as "a resident of the state as defined in RSA 21:6, *except that no person shall be deemed to be a resident who claims residence in any other state for any purpose*."  (emphasis added).  Thus, a voter with an out-of-state driver's license or vehicle registration who declares his or her "residency" in New Hampshire under RSA 21:6 when registering to vote is still not a "resident" for motor vehicle purposes under RSA 259:88 because, as a result of the out-of-state license or vehicle registration, the voter has

---

[5] For an explanation of fees, please see RSA 261:141 for state fees, and RSA 261:153 for town/city fees.  In addition to the registration fees, there is an $8.00 plate fee for the first time one orders license plates.  *See* http://www.nh.gov/safety/divisions/dmv/registration/vehicle.htm#fees; http://www.nh.gov/safety/divisions/dmv/driver-licensing/apply/fees.htm.

"claim[ed] residence in any other state for any purpose."  This Court could avoid the grave constitutional claims in this litigation altogether under the doctrine of constitutional avoidance by construing the statute—consistent with the legislature's failure to amend RSA 259:88—as not imposing these motor vehicle "residency" obligations on voters who have out-of-state driver's licenses and vehicle registrations.  *See United States v. Rehlander*, 666 F.3d 45, 49 (1st Cir. 2012) ("The ordinary rule is that statutes are to be read to avoid serious constitutional doubts, if that course is possible, and it is readily possible here.") (internal citation omitted).

**HB 1264's Legislative History Demonstrates That It Was a Partisan Attempt to Limit College Students' Voting**

15.     HB 1264 was introduced by four members of the New Hampshire House of Representatives on November 7, 2018.  It was recommended "Ought to Pass" by the House Election Law Committee on March 1, 2018 by a party-line vote of 11-9.

16.     The full House passed HB 1264 171-144, largely along party lines, on March 6, 2018, at which point it moved to the Senate and was referred to the Senate Election Law and Internal Affairs Committee.  Its effective date was amended to July 1, 2019, and it was recommended out of the Committee "Ought to Pass" with Amendment 3-2 on a party line vote on April 24, 2018.

17.     The full Senate approved the bill on March 2, 2018, with all fourteen Republican Senators in favor and with all ten Democratic Senators opposed.  The House concurred with the Senate amendment, and the bill was enrolled on May 16, 2018.  It was signed by Governor Christopher Sununu on July 13, 2018, after the New Hampshire Supreme Court's non-binding, non-precedential decision in *Opinion of the Justices (Definition of Resident and Residence)*, 171 N.H. 128 (2018) ("*Resident*").

18.     Despite the fact that HB 1264 intended to change the definition of residency for

motor vehicle purposes rather than that of domicile for voting purposes, the record is clear that it was a voting bill, rather than a DMV bill.  The intent of HB 1264 to tie residency fees to voting could not be clearer; after all, this bill was considered by the _Election Law_ Committees of both the House of Representatives and Senate.  And one of HB 1264's chief advocates was the New Hampshire Secretary of State's Office—the New Hampshire agency in charge of _election law_ administration.  New Hampshire's Division of Motor Vehicles did not propose or take a position on this legislation, nor did it offer a cost estimate.[6]

19.    The Secretary of State's Office has repeatedly asserted the impact HB 1264 would have on current non-resident domiciliaries who decide to register to vote, including those who are college students.  As Deputy Secretary of State David Scanlan charged during the January 26, 2018 House Election Law Committee hearing on HB 1264, in which he testified in support of this bill, if a college student registers to vote under HB 1264, then that student will have to pay motor vehicle fees if they drive.  He testified: "You should be a resident to have your domicile in the locality where you are going to vote …. A student would have to decide whether they want to claim if they're a resident of the state of New Hampshire … and if they do, they're subject to whatever else would be required of any other resident of the state of New Hampshire," _which would include motor vehicle residency fees_.[7]  It is also worth noting that, when a nearly identical bill was considered in 2017 (HB 372), the Attorney General's Office warned on February 7, 2017 that "changing the definition of residency could have unanticipated consequences when applied to all the situations in which residency requirements come into play, such as in-state tuition, Fish and

---

[6] In further demonstration of HB 1264's status as an election bill, the Secretary of State—New Hampshire's chief elections officer—submitted a brief in _Resident_.  The Division of Motor Vehicles did not.

[7] Casey McDermott, "N.H. Election Chief: Voters Should Have to Claim Residency to Participate," _NHPR_, Jan. 26, 2008, _available at_ http://nhpr.org/post/nh-election-chief-voters-should-have-claim-residency-participate#stream/0.

Game licenses and the Department of Motor Vehicles."[8]

20.     While HB 1264 may also potentially impact hospital residents and contract employees, the specific intent behind the bill is to, as a condition of registering to vote, impose residency motor vehicle fees on college students who moved to New Hampshire and who are uncertain about their future.  These voters currently have the option to choose New Hampshire as their voting domicile given that they live here.  *See* RSA 654:1, I-a.  Senator William Gannon—a supporter of HB 1264—was transparent about this intent, stating on the Senate floor that a University of New Hampshire student who graduated from high school in another state does not "really have skin in the game."[9]  Similarly, Senator Dan Innis—also a supporter of HB 1264— stated immediately following the 2016 election: "If you're from Boston and you're up here eight months out of the year and you're registered to vote there, you shouldn't be able to vote here."[10]

21.     When HB 1264 was passed by the House and Senate, Senator Sharon Carson—a supporter of HB 1264—put out a Facebook advertisement acknowledging that the bill was targeted at students: "STOP DRIVE-BY VOTING IN NH !!!  The student being interviewed actually makes the case for the legislation; he wants to keep his out-of-state drivers license and drive his out-of-state registered car (because he doesn't live in NH) but wants to VOTE IN OUR STATE ELECTIONS!  …. Call Gov. Sununu's office … and demand he sign HB 1264; only NH residents should vote in state and local elections."  Senator Carson further explained on the Senate floor that the intent of HB 1264 was to impose motor vehicle fees on these voters: "[W]e have a group of

---

[8] *See* Dave Solomon, "Proposed Election Law Changes Called Unfair to Students," *Union Leader*, Feb. 7, 2017, *available at* http://www.unionleader.com/state-government/proposed-election-law-changes-called-unfair-to-students--20170208.
[9] *See* May 2, 2018 Senate floor debate (3:58:35), *available at* http://sg001-harmony.sliq.net/00286/Harmony/en/PowerBrowser/PowerBrowserV2/20180502/-1/16288#agenda_.
[10] Jeff McMenemy, "College Towns Have Big Impact on NH Election," *Foster's Daily Democrat*, Nov. 13, 2016, *available at* http://www.fosters.com/news/20161113/college-towns-have-big-impact-on-nh-election.

people who say this is where I live, but don't have to register my car here.  I don't have to get my

license like everyone else in this room has to.  And yet we allow them to vote here.  And I think

that is the one sticking point."[11]

22.    Similarly, on NHPR's *The Exchange*, Senator Regina Birdsell—the Chairwoman

of the Senate Election Law and Internal Affairs Committee that recommended HB 1264's passage

and one of the bill's chief legislative advocates—contended that current non-resident domiciliary

college students would have pay to obtain New Hampshire driver's licenses and car registration if

they registered to vote in New Hampshire under the functionally identical HB 372:

> Laura Knoy: So they would incur, in this instance, the driver's license issue and the DMV
> issue? That's what I'm trying to clarify, is, if somebody—I'll turn to you Senator Birdsell,
> I know you guys want to jump in, too—um, if I went to UNH and I'm from Vermont but I
> go to UNH, and I register to vote in Durham because that's where I am, do I have to, as
> [Deputy Secretary of State David Scanlan] says, within 60 days, um, abide by the laws of
> New Hampshire, including getting a driver's license, including registering my car in New
> Hampshire?
>
> Senator Birdsell: *You may have to.*
>
> Laura Knoy (30:41): So that would be, the expense and, um, effort that would Senator
> [Donna] Soucy talked about.
>
> Senator Birdsell: *If they—if they have a driver's license*. If they don't, absolutely not.[12]

23.    Senator Andy Sanborn—another proponent of HB 1264 and a member of the Senate

Election Law and Internal Affairs Committee—further explained during that Committee's April

24, 2018 executive session on HB 1264 that the bill was designed to ensure that, "if you're going

to participate in [New Hampshire elections], that you have some long-term vested interest in our

state …."[13]  Senator James Gray—also a member of the Senate Election Law and Internal Affairs

---

[11]    *See* May 2, 2018 Senate floor debate (4:12:21), *available at* http://sg001-harmony.sliq.net/00286/Harmony/en/PowerBrowser/PowerBrowserV2/20180502/-1/16288#agenda .
[12] NHPR's *The Exchange*, "Amendment Renews Debate over N.H. Voting Laws," Dec. 18, 2017, at 30:48-33:44 (emphasis added), *available at* http://nhpr.org/post/amendment-renews-debate-over-nh-voting-laws#stream/0.
[13] *See* HB 1264 April 24, 2018 Senate Election Law Committee Executive Session (audio available upon request).

Committee and proponent of HB 1264—similarly stated, when discussing a nearly identical bill (HB 372), the following: "If you're a resident, if this is the place you choose to live abandoning all others, I want you to vote in New Hampshire.  But if that place you choose to interact with is in Massachusetts, in Vermont, in Maine, in Kalamazoo, New Mexico, then I want you to vote there."[14]  Indeed, the New Hampshire Senate submitted a brief in *Resident* claiming that "mobile workers, persons with multiple homes, [and] students" are part of a "special classification of privileged voters" and implicitly acknowledged that HB 1264 was intended to target those groups.

### New Hampshire Has a History of Trying to Disenfranchise College Students

24.      It is important to note that HB 1264's attempt to deter college students from voting is nothing new in New Hampshire.   These efforts have existed since the Twenty-Sixth Amendment—which lowered the voting age from 21 to 18—was ratified in 1971.  In the early 1970s, for example, New Hampshire had a law in place that disqualified a citizen from voting in a municipality if the citizen has a firm intention of leaving that town at a fixed time in the future. This law explicitly targeted college students and was struck down in *Newburger v. Peterson*, 344 F. Supp. 559, 562 (D.N.H. 1972).

25.      During the 2000 election, attempts to deter college students from voting were also an issue.  As one writer has explained: "Republicans passed out flyers warning out-of-state UNH students that if they voted in New Hampshire, they could lose scholarships, health insurance or car insurance based on their legal residency in another state and asserting that they would be obliged to register their cars and obtain driver's licenses here.  Town officials told students the same thing

---

[14] Ethan Dewitt, "Amendment would raise bar for voting eligibility in New Hampshire," *Concord Monitor*, Nov. 29, 2017, *available at* http://www.concordmonitor.com/Senate-committee-approves-bill-to-require-residency-for-voting-14020394.

on Election Day, and Republican lawyers at the polls challenged nearly every out-of-state student trying to register.  The Democrats responded by sending their own lawyers, and ultimately, the state attorney general's office was called in to referee."[15]

26.     In 2012, the New Hampshire legislature similarly enacted a law that amended the voter registration form to suggest that voters must comply with all obligations "which apply to all residents, including laws requiring a driver to register a motor vehicle and apply for a New Hampshire[ ] driver's license within 60 days of becoming a resident."  The goal there—like the goal of HB 1264—was to compel college students to pay motor vehicle fees as a condition of registering to vote, and thereby discourage them from choosing to exercise their right to register and vote in New Hampshire where they live.  As the House Speaker stated at the time, college students are "[v]oting as a liberal.  That's what kids do."  He complained that college students lack "life experience," and "they just vote their feelings."[16]  Three college students brought suit and, once again, a court struck down this language in 2015.  *See Guare v. State*, 167 N.H. 658, 665 (2015).[17]

27.     In 2015, House Bill 112—which would have amended RSA 654:1 to read "[a] person who declares an address in a New Hampshire town or ward as his or her domicile for voting purposes shall be deemed to have established his or her residence for motor vehicle law purposes at that address"—was similarly targeted at students with the purpose of imposing motor vehicle "residency" fees on this voting population.  The memorandum of law filed with the New

---

[15] Katharine Webster, "Much Ado About Student Voters," *UNH Magazine*, Fall 2015, *available at* https://www.unh.edu/unhtoday/2015/12/much-ado-about-student-voters.

[16]        *See*      Rochester      9/12      Event      Video      (9:45),      at https://www.youtube.com/watch?time_continue=624&v=B8tqpBzLNzE.

[17] Indeed, as the *Guare* Court itself noted, "a few legislators publicly opined that the challenged language requires a voter with a New Hampshire domicile, who is not a New Hampshire 'resident,' to obtain a New Hampshire driver's license and to register her vehicle here, before voting here."  *Id.* at 665.

Hampshire Supreme Court by the House of Representatives in support of HB 112 acknowledged this goal of imposing motor vehicle fees on voters.  The Court declined to opine on this bill's constitutionality, and the bill was not enacted.  *See Opinion of the Justices*, 167 N.H. 539, 541 (2015).

28.     The 2016 election further emboldened efforts to restrict college student voting in light of the perception that these students played a dispositive role during that election.[18] Representative Michael Moffett—who voted in support of HB 1264—stated on Facebook after the 2016 general election that "[m]any out-of-state college students in Durham, Plymouth, Keene, Manchester, Henniker and Hanover registered late and most voted Democrat … Ayotte had her reelection stolen from her by out-of-staters … and Clinton's razor-thin victory was stolen as well ….".  However, unable to directly disenfranchise non-resident domiciliary college students after the *Newburger* and *Guare* decisions, proponents of more restrictive voting laws—under the guise of "tightening" up voting standards—have resorted to indirect efforts to impact the student vote.  *See Burrows v. Keene*, 121 N.H. 590, 597 (1981) (noting that the government "cannot do indirectly that which it cannot do directly").

29.     Most recently, in 2017, New Hampshire enacted SB 3, which is currently in litigation.  This bill creates a proof of domicile requirement and imposes onerous penalties for noncompliance which have been preliminarily enjoined by the Superior Court.[19]  Senator Jeb Bradley—also a proponent of HB 1264—explained in his discussion of SB 3: "I went to school in Massachusetts ….  I wouldn't have dreamed of voting in Massachusetts.  I always thought I was a

---

[18] *See* Jeff McMenemy, "College Towns Have Big Impact on NH Election," *Foster's Daily Democrat*, Nov. 13, 2016, *available at* http://www.fosters.com/news/20161113/college-towns-have-big-impact-on-nh-election.
[19] *See League of Women Voters of New Hampshire v. Gardner*, No. 2017-cv-00433 (N.H. Hillsborough Cty. Super. Ct. North, Oct. 22, 2018), *available at* https://www.courts.state.nh.us/caseinfo/pdf/civil/LeaguevNH/102218league-order.pdf

New Hampshire resident even when I was going to Tufts University, so I voted absentee or I came home."[20] HB 1264 is the sequel to SB 3 and is designed to get around the *Guare* decision in which the New Hampshire Supreme Court did not permit the imposition of motor vehicle fees on non-resident domiciliary college students through the voter registration form.

30.     The apparent view among some of HB 1264's proponents is that these college students who live in New Hampshire, but who do not have an indefinite intention to remain, simply do not have sufficient "skin in the game" or a "long-term vested interest" in New Hampshire to vote here.  However, as the *Newburger* Court explained in referencing such voters, "[i]t is impossible for us to see how such people would possess any greater knowledge, intelligence, commitment, or responsibility than those with more precise time schedules."  *See Newburger*, 344 F. Supp. at 563 (college students have a constitutional right to vote in New Hampshire where they live regardless of whether they intend to live in New Hampshire indefinitely); *see also Guare*, 167 N.H. at 665 (acknowledging that three college student petitioners were domiciled in New Hampshire and therefore were constitutionally eligible to vote in New Hampshire).  This constitutional right to vote in New Hampshire is no less strong if college students have the option to vote by absentee ballot in the state from which they moved.  As *Newburger* also explained, it is inappropriate "to force persons who are in every meaningful sense members of New Hampshire political communities to vote in communities elsewhere which they have long departed and with whose affairs they are no longer concerned."  *Id.*  Indeed, as these college students have satisfied the definition of "domicile" under RSA 654:1, I, they spend more time in New Hampshire than anywhere else.  They spend money at New Hampshire restaurants and businesses.  They also spend

---

[20] *See* Dave Solomon, "College Students Fret Over Election Law Changes," *Union Leader*, Mar. 4, 2017, *available at* http://www.unionleader.com/College-students-fret-over-election-law-changes.

thousands of dollars attending New Hampshire educational institutions.  To suggest that these voters are somehow less worthy of the right to vote than others is wrong.  History is replete with unfortunate examples of legislatures unconstitutionally restricting the voting rights of populations they deem unworthy or as lacking a vested interest in the community.

### College Students and Towns with High Populations of College Tend to Vote for Democratic Candidates in Significant Numbers for Close Elections

31.     It should come as no surprise that college students have historically been targets of efforts to restrict their ability to vote in New Hampshire, as college students tend to vote for one party in a state which has historically had very close elections.  Mere intent by a legislature to act for partisan advantage does not sanitize other discriminatory intent.  *See N.C. State Conf. of the NAACP v. McCrory*, 831 F.3d 204, 233 (4th Cir. 2016) ("Even if done for partisan ends, [passing suite of restrictive voting laws] still constituted racial discrimination.").

32.     In 2016, the results for the three state-wide elections were all within a few thousand votes.  In the presidential race, Democratic nominee Hillary Clinton received 348,536 votes in New Hampshire, or 47.62%, compared to 345,790 votes, or 47.25% for Republican nominee Donald Trump.  In the Governor's race, Republican nominee Chris Sununu won 354,040 votes, or 48.84% compared to 337,589 votes or 46.57% for Democratic nominee Colin Van Ostern.  And in the Senate race, Democratic nominee and then-Governor Margaret Hassan received 354,649 votes, or 47.98% compared to Republican nominee and incumbent Senator Kelly Ayotte who received 353,632 votes, or 47.84%.

33.     College students played a pivotal role in all three elections.  In Durham, home to the University of New Hampshire (the largest college in the state), for example, Hillary Clinton received 6,501 votes compared to 2,450 for Donald Trump.  Colin Van Ostern received 5,896 votes in Durham compared to 2,913 for Chris Sununu, and Margaret Hassan received 6,287 votes

compared to 2,967 for Kelly Ayotte.

34.     In Hanover, home to Dartmouth College, the results also showed a significant partisan lean.  Hillary Clinton won 6,561 votes compared to 926 for Donald Trump.  In the Governor's race, Colin Van Ostern received 5,674 votes compared to 1,523 for Chris Sununu.  And Margaret Hassan received 5,992 votes compared to 1,646 votes for Kelly Ayotte.

35.     There is a perception that New Hampshire college students have tended to vote for Democratic candidates in recent years.  Given that college students' votes are significant in proportion to the margin of victory in New Hampshire's close elections, it is not surprising that they have been targeted for restrictions on their right to vote by members of the other political party.

## CLAIMS FOR RELIEF

### COUNT I

**FIRST AND FOURTHEENTH AMENDMENTS AND 42 U.S.C. § 1983**

36.     All prior paragraphs are incorporated.

37.     Under the First and Fourteenth Amendments, a court considering a challenge to a state election law must carefully balance the character and magnitude of the injury to the rights that the plaintiff seeks to vindicate against the justifications put forward for the burdens imposed by the rule.  *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

38.     HB 1264 severely and unreasonably burdens the fundamental right to vote of all New Hampshire voters.  It does so in two separate and distinct ways.  First, HB 1264 particularly burdens young voters, college student voters, and voters who have recently moved into New Hampshire.  Second both textually, in application, and due to the state's refusal to provide clear

guidance regarding its application, HB 1264 is inherently confusing, thereby creating a chilling effect on the right to vote. *See Guare v. State of N.H.*, 167 N.H. 658 (2015).

39.     If HB 1264 does impose motor vehicle fees on those who register to vote, this constitutes an especially severe burden on the right to vote by imposing explicit monetary fees on those who seek to exercise the right to vote.

40.     In the alternative, since RSA 259:88 carves out the application of the motor vehicle laws from the definition of residency in RSA 21:6, if motor vehicle fees are not imposed on those who register to vote, the voter confusion caused by the state's refusal to make this clear constitutes a substantial burden on the right to vote.

41.     There is no governmental interest, let alone a specific or compelling governmental interest, that justifies requiring New Hampshire voters to endure these purported burdens or imposing this confusion.[21]

42.     HB 1264 is not narrowly tailored to advance any state interest.  Moreover, as the State has not put forward precise interests that make it necessary to burden Plaintiffs' right to vote, HB 1264 is not justified whether the burden caused is severe, or in the alternative, if the motor

---

[21] Plaintiffs expect Defendants to argue that *Opinion of the Justices (Definition of Resident and Residence)*, 171 N.H. 128 (2018) (hereinafter "*Resident*") forecloses this challenge. In that case, three of the five Justices of the New Hampshire Supreme Court advised their view that HB 1264 passed constitutional muster.  However, that case is not dispositive for three reasons. *First*, when the New Hampshire Supreme Court issues an advisory opinion, it is "not an opinion of the court in a litigated case, [and] an opinion of the justices does not constitute binding precedent." *Opinion of the Justices (Domicile for Voting Purposes)*, 167 N.H. 539, 542 (2015).  *Second*, *Resident* addressed only claims brought under the New Hampshire Constitution and the Equal Protection Clause of the Fourteenth Amendment—not the Twenty-Fourth and Twenty-Sixth Amendment claims brought in this case.  *Third*, *Resident* was clearly erroneous in that it assumed strict scrutiny applied but nonetheless found HB 1264 was narrowly tailored to advance a compelling state interest *in the absence of any factual record*.  This is the only case counsel is aware of in which a court found an election law tightening the franchise survived strict scrutiny.  The dissent highlighted the fact that the majority's "community of interest" justification is "susceptible of abuse," and that courts cannot "lightly …accept" a claim that a law is intended to "insure that only those citizens who are primarily or substantially interested in or affected by electoral decisions have a voice in making them."  This is because, as the dissent explained, "[a]ll too often, lack of a 'substantial interest' might mean no more than a different interest, and 'fencing out' from the franchise a sector of the population because of the way they may vote is constitutionally impermissible."

vehicle fees do not apply under RSA 259:88 leading to confusion.

43.     Defendants, acting under color of state law, have and will continue to deprive Plaintiffs of rights secured to them by the First and Fourteenth Amendments to the United States Constitution and protected by 42 U.S.C. § 1983.

**COUNT II**

**TWENTY-SIXTH AMENDMENT AND 42 U.S.C. § 1983**

44.     All prior paragraphs are incorporated.

45.     The Twenty-Sixth Amendment to the United States Constitution provides, in pertinent part: "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by . . . any State on account of age."  The goal of the amendment "was not merely to empower voting by our youths but was affirmatively to encourage their voting, through the elimination of unnecessary burdens and barriers, so that their vigor and idealism could be brought within rather than remain outside lawfully constituted institutions." *Worden v. Mercer Cnty. Bd. Of Elections*, 61 N.H. 325, 345 (1972).

46.     The Twenty-Sixth Amendment guarantees voters eighteen years or older, who are otherwise qualified, a substantive right to participate equally with other qualified voters in the electoral process.  Laws that deny or abridge the right to vote on account of age are unconstitutional.

47.     HB 1264 has the purpose and, depending on the interpretation of RSA 259:88, effect of abridging or denying the right to vote to New Hampshire voters on account of their age. Young New Hampshire voters will be disproportionately burdened by HB 1264, and the General Court targeted the burdens imposed by HB 1264 to fall upon young voters as a class.

48.     Defendants, acting under color of state law, have and will continue to deprive

Plaintiffs of rights secured to them by the Twenty-Sixth Amendment to the United States Constitution and protected by 42 U.S.C. § 1983.

## COUNT III

### TWENTY-FOURTH AMENDMENT AND 42 U.S.C. § 1983

49.     All prior paragraphs are incorporated.

50.     The Twenty-Fourth Amendment provides that the right to vote shall not be denied or abridged by reason of failure to pay any poll tax or other tax. The Twenty-Fourth Amendment "nullifies sophisticated, as well as simple-minded modes of impairing the right guaranteed." *Harman v. Forssenius*, 380 U.S. 528, 540-41 (1965) (citation and quotation omitted). The category of forbidden poll taxes is broad in order to root out any procedural requirements that deny or abridge the right to vote. *Id.* at 541.

51.     HB 1264 has the purpose and, depending on the interpretation of RSA 259:88, effect of requiring New Hampshire voters, including Plaintiffs, to pay significant fees to domesticate driver's licenses and car registrations in New Hampshire, simply because they register to vote.

52.     If the interpretation urged by the State controls, HB 1264 operates as an unconstitutional poll tax.

53.     Defendants, acting under color of state law, have and will continue to deprive Plaintiffs of rights secured to them by the Twenty-Fourth Amendment to the United States Constitution and protected by 42 U.S.C. § 1983.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully requests that this Court:

A.     Declare that HB 1264 is unconstitutional pursuant to the First, Fourteenth, Twenty-Fourth and Twenty-Sixth Amendments to United States Constitution, or in the

alternative, declare that due to the carve out of RSA 259:88, motor vehicle fees are not required because someone registers to vote but still maintains a driver's license or car registration in another state;

B.      Issue a preliminary and permanent injunction prohibiting Defendants from implementing or enforcing HB 1264;

C.      Award Plaintiffs attorneys' fees in this action;

D.      Award Plaintiffs their costs of suit; and

E.      Grant such other and further relief as this Court deems just and proper in the circumstances.

Respectfully submitted,

CAROLINE CASEY AND MAGGIE FLAHERTY,

By and through their attorneys affiliated with the
American Civil Liberties Union of New Hampshire
Foundation and the American Civil Liberties Union
Foundation,


*/s/ Henry R. Klementowicz*
Gilles R. Bissonnette (N.H. Bar No. 265393)
Henry R. Klementowicz (N.H. Bar No. 21177)
AMERICAN CIVIL LIBERTIES UNION OF NEW
HAMPSHIRE FOUNDATION
18 Low Avenue
Concord, NH  03301
Tel.:  603.224.5591
gilles@aclu-nh.org
henry@aclu-nh.org

Julie A. Ebenstein*
Dale E. Ho*
Theresa J. Lee*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Voting Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: 212.549.2500
jebenstein@aclu.org
dho@aclu.org
tlee@aclu.org

* admitted *pro hac vice*

Date:   October 10, 2019