**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 2/20/20

1                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
2

3       *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
                                             *
4       CAROLINE CASEY and MAGGIE            *
        FLAHERTY,                            *
5                                            *
                         Plaintiffs,         *
6                                            *
                    v.                       *
7                                            *
                                             *  No. 1:19-cv-00149-JL
8       WILIAM GARDNER, in his official      *  October 30, 2019
        capacity as New Hampshire            *  10:30 a.m.
9       Secretary of State and GORDON        *
        MACDONALD, in his official           *
10      capacity as New Hampshire            *
        Attorney General,                    *
11                                           *
                         Defendants.         *
12      _____      *
        NEW HAMPSHIRE DEMOCRATIC PARTY,      *
13      By Raymond Buckley, Chair,           *
                                             *
14                       Plaintiffs,         *
                                             *
15                  v.                       *
                                             *
16      WILLIAM GARDNER, in his              *
        official capacity as New             *
17      Hampshire Secretary of State,        *
        and GORDON MACDONALD, in his         *
18      official capacity as New             *
        Hampshire Attorney General,          *
19                                           *
                         Defendants.         *
20      *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

21                 TRANSCRIPT OF SPECIAL HEARING
22           BEFORE THE HONORABLE JOSEPH N. LAPLANTE

23

24

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

APPEARANCES:


For the Plaintiffs:          Henry Klementowicz, Esq.
                             Gilles R. Bissonnette, Esq.
                             American Civil Liberties Union
                             of New Hampshire

                             Theresa J. Lee, Esq.
                             American Civil Liberties Union
                             Foundation - New York, NY

For the NH Democratic:       William E. Christie, Esq.
Party                        Suzanne Amy Spencer
                             Shaheen & Gordon


For the Defendants:          Anthony Galdieri, Esq.
                             Samuel R.V. Garland, Esq.
                             Seth Michael Zoracki, Esq.
                             Office of the Attorney General
                             Civil Bureau


Court Reporter:              Brenda K. Hancock, RMR, CRR
                             Official Court Reporter
                             United States District Court
                             55 Pleasant Street
                             Concord, NH 03301
                             (603) 225-1454

1                    P R O C E E D I N G S

2            THE CLERK:  All rise for the Honorable Court.  Court

3    has before it for consideration today a Special Hearing in

4    Civil Case Number 19-cv-149 JL, Casey, et al. versus New

5    Hampshire Secretary of State, et al.

6            THE COURT:  All right.  Good morning, Counsel.

7            We're here today because the Court basically in an

8    order dated October 9th sort of floated the idea of certifying

9    questions to the New Hampshire Supreme Court to interpret the

10   statutory regime regarding this relationship between domicile,

11   residency, voting registration and motor vehicle enforcement,

12   and I guess that's what I would like to talk about first.  But

13   I think -- I'd like to talk about that first.

14           You have filed your responses to that.  It's fair to

15   say the Attorney General's Office opposes any certification.

16   The ACLU says, well, certification isn't necessarily a bad

17   idea, but we would need -- in order to prevent unlawful

18   suppression of the right to vote and confusion about voting we

19   need some type of temporary order in place to limit certain

20   types of enforcement to enable the certification to play out

21   and then the trial in this case.  So, I have read your

22   submissions.

23           Let me ask one procedural question, first, of the

24   plaintiffs before we get to the general issue.  The four

25   issues, the four questions that I propose for certification,

1   which is on Page 6 of my order, Document 56, are you -- I want

2   to be clear that all four of those questions you support

3   certification of, or is there anything that you don't?  It

4   wasn't 100 percent clear from your filings.

5        MR. KLEMENTOWICZ:  We don't oppose, so subject to our

6   initial --

7        THE COURT:  Reservation.

8        MR. KLEMENTOWICZ:  -- reservation about the temporary

9   order, we don't oppose certification of any of these four

10  questions.  Our submission was I think in some ways a recasting

11  of some of your questions, just in a different way.

12       THE COURT:  Yeah.

13       MR. KLEMENTOWICZ:  I think they're similar.  I think

14  it was -- the way that we had cast the question was in response

15  to what we had seen as public hairsplitting by some of the

16  state agencies involved in the enforcement of this law.

17       So, our casting of the questions I thought was a more

18  direct way to get an answer to the questions, but we don't

19  oppose any of the questions.

20       THE COURT:  Any of the four?

21       MR. KLEMENTOWICZ:  Correct.

22       THE COURT:  All right.  Good.  All right.  I'll hear

23  from the State, then.

24       MR. GALDIERI:  And, your Honor, I think we've agreed

25  that we could submit our certification arguments on our papers;

1    we don't need to argue anything.

2           THE COURT:  All right.

3           MR. KLEMENTOWICZ:  And the same with the Motion to

4    Amend we also thought you could take on the papers.

5           MR. GALDIERI:  Yeah.

6           THE COURT:  All right.  I guess there's not much to

7    talk about, then.  I'm sorry for convening you all back in the

8    courtroom.

9           MR. KLEMENTOWICZ:  Well, we did want to suggest a

10   proposed briefing order on the preliminary injunction.  We

11   discussed and had agreed on a briefing order that would have a

12   Motion for Preliminary Injunction due a week from today, an

13   objection due a week thereafter, no reply briefing.  We're

14   going to be submitting affidavits likely in more detail than

15   what was submitted in our response to the Court's order, and we

16   had envisioned the Court reviewing those papers, and if it

17   determined that an evidentiary hearing or another hearing was

18   needed, scheduling one ideally within November.

19           THE COURT:  Yeah.

20           MR. GALDIERI:  And, your Honor, our only reservation

21   to that is we have our expert, who is out of town for two

22   weeks, his disclosure date is November 25th.  This is not on

23   his radar.  But he will return right around the time our

24   objection is due, and we may need to supplement the record,

25   depending on what their submission is, with a declaration from

1    our expert.  We would ask that we be able to do that.

2         MR. KLEMENTOWICZ:  We haven't had an opportunity to

3    consult internally on that.  We may agree to it.

4         THE COURT:  All right.  It's reasonable.  I'll allow

5    it.  And just be aware this may require like a Saturday

6    hearing, unfortunately.  November is very busy with a lot of

7    civil and criminal trial work, and I don't want to kick it into

8    December.  You're all working very hard on this, and I want to

9    be as respectful on that as I can, and if we are going to

10   certify the question we just added two weeks.  Frankly, I had

11   planned on certifying this very quickly, but the certification

12   question, even for the Court, not just for your desires, is

13   tied up with this order, this idea of temporary relief, because

14   certifying the question without temporary relief could be

15   problematic, as you point out.  And, as you point out, they may

16   not be entitled to it.  As the State points out, they may not

17   be entitled to it.  It's not where I wanted to be in this

18   litigation, but we are where we are.

19         I'm interested in hearing -- apparently, the Attorney

20   General's position is -- and if I state this wrong I want you

21   to correct me, Mr. Galdieri.  I mean that.

22         MR. GALDIERI:  Sure.

23         THE COURT:  I'm not saying that to taunt you; I'm

24   saying that to invite you.  Is that the Attorney General's

25   position, that we had a brief chambers discussion before the

1    hearing, is that the Attorney General doesn't have the

2    authority to agree to any sort of temporary relief, and I

3    believe that there is a decent amount of precedent for the

4    Attorney General doing just that in certain difficult

5    situations.  If there is precedent for that, I'm interested in

6    knowing it.  I'm interested in knowing about it, and I don't

7    think it really goes to the merits of the question so much, but

8    I'm still interested in knowing about it, because I would have

9    viewed some type of temporary order just not to use voter

10   registration information for the enforcement of motor vehicle

11   laws to be a very small, very unobtrusive, not burdensome order

12   for the State to comply with, although, on the symbolic level I

13   do understand it's different, but on the purely practical level

14   it seems like a very small thing.  I think I have examples in

15   my mind of much larger restraint undertaken by the AG by

16   agreement in the past.  So, if there's examples for that, I'd

17   like to know about it.

18          MR. KLEMENTOWICZ:  I'm going to let Attorney Christie

19   handle that.

20          MR. CHRISTIE:  I'd like to address an example, and I

21   misspoke in chambers when I referenced it, firearm law.   I

22   don't know, and maybe there is one.  But what was actually on

23   my mind, it was a situation in the campaign finance context

24   that involved an election.  There was a complaint filed with

25   the AG's Office that a law firm that was organized as an LLP

1   made a contribution to Governor Sununu's reelection campaign,

2   and there's a state statute that doesn't permit that.  There

3   was a challenge filed with the Attorney General's Office on

4   that very issue.  The Attorney General's Office reviewed the

5   issue, reviewed the statute, and despite its obligation to

6   enforce all statutes on the books, made a determination the

7   statute violated the First Amendment and decided not to enforce

8   it in that context.

9        THE COURT:  This is totally different.  The Attorney

10   General stands by this statutory regime, though.

11        MR. CHRISTIE:  It's a law enacted by the Legislature

12   and signed by the Governor.  Under their arguments, they have a

13   duty to enforce it, and it's not for them to sit there and

14   decide not enforce to it.  That can only be a determination

15   made by a Court to enjoin the law.  They exercised their

16   discretion in this campaign finance case to not enforce the

17   statute, because they determined on their own, despite it being

18   passed by the Legislature and signed by the Governor, that it

19   was unconstitutional.  We're not even asking for that relief

20   here.  We're simply asking for relief that they would

21   temporarily not use the active voter registration to prosecute

22   individuals, not to overturn the statute, which they did in

23   this campaign finance situation.  And we can submit the letter

24   to the Court.

25        But it isn't exactly the same.  It is the Attorney

1   General taking upon himself -- and by "himself" I mean the

2   Office -- to review a statute, determine on their own, not a

3   federal court, not a state court, that the statute violates the

4   First Amendment and they're not going to enforce it.  It

5   materially contradicts the representations that are made here

6   that they don't have the discretion and they don't have the

7   authority to do that.

8          MR. GALDIERI:  That's not the case, your Honor, and I

9   can address that.  I mean, the Attorney General's --

10         THE COURT:  It's pretty obvious -- with respect to

11  Mr. Christie, it's pretty obvious how this is a very different

12  situation.

13         MR. GALDIERI:  Yes.

14         THE COURT:  You're standing by the constitutionality

15  of the statutory regime, you're not disavowing it.  And there

16  is an argument that if the Attorney General, if the Attorney

17  General, the chief law enforcement officer of the State, views

18  a state statute as unconstitutional, one would argue that it

19  might have the duty not to enforce it.  There's this idea that

20  anybody who's ever worked at the AG's Office, like myself, is

21  very familiar with, I don't want to call it a "trope," but with

22  the tradition that the Attorney General's Office defends the

23  constitutionality of the state statutes.

24         And, Mr. Christie, in your situation they disavowed

25  the constitutionality, they disavowed the statute.  In this

1    case they are arguing for the constitutionality of this regime

2    and saying that it's not within their authority to restrain

3    enforcement of a lawful statute.

4         MR. CHRISTIE:  Respectfully, your Honor, I disagree.

5    Their position is they don't have the authority to make the

6    call; if the law is on the books, they have a solemn oath to

7    enforce it, was the phrase used.  Their position in this case

8    with you is, "We can't make the call.  Only a Court can make

9    the call."  That's clearly not the case for the reasons your

10   Honor just laid out.  They make that call all the time, and

11   they just will not make the call in this case because, from our

12   perspective, they want to be able to enforce the statute as

13   written in the run-up to the election.  That is something

14   within their discretion to do.

15        And, again, the Court's suggested order and the relief

16   that we're asking for in this case is far short of what we

17   would really want from the Court ultimately in this case, but

18   it's something for the purposes of litigation management in

19   this case we're willing to live by so that the case can proceed

20   orderly, as the Court has suggested, and so at some level these

21   confusion issues that we've raised can be addressed.

22        MR. GALDIERI:  Well, your Honor, we disagree with

23   that.  Patently unconstitutional law.  We have taken an oath to

24   uphold the Constitution as well.  That presents a different

25   circumstance.  This law is constitutional, there's been no

1    showing made that it's unconstitutional, and we are defending

2    this law.

3          THE COURT:  One thing I struggle with, though, and I

4    do think there's a distinction between the situation

5    Mr. Christie raised.  It depends on what level of generality

6    you want to look at the Attorney General's obligation here.  Is

7    it to just defend all laws, or is it to defend only laws that

8    are constitutional?  And you've told me your positions on that.

9          Here's the thing:  The Court's suggestion for a

10   temporary order was very, very modest, and the position that

11   you don't have the authority not to use voter information for a

12   few months to enforce motor vehicle laws, it seems in some way

13   to run counter to your position about what the statutory regime

14   is in general, because you keep saying this isn't a voting law,

15   it doesn't change voting eligibility, has nothing to do with

16   voting, it's a DMV law, right?  If it isn't a voting law, if

17   it's not a voter eligibility law, I'm not sure what difference

18   it makes for the State to say -- you're not saying you're not

19   going to enforce any law.  You're saying, you would be saying

20   if you agreed to this temporary order, that you wouldn't use a

21   certain type of evidence, right, in violation of motor vehicle

22   prosecutions -- by the way, evidence that the state has never

23   used, as far as I can tell, because there is a new statutory

24   regime.  So, which is it?  Is it a statutory regime that

25   implicates the right to vote, or is it not?  Because if it's

1     not, as you've been saying all along, this is a very small

2     thing.

3            MR. GALDIERI:  It's not, your Honor, and that's why

4     there's no reason to enter any relief.  There's just no reason.

5     It is all superfluous, and we're not going to agree to

6     something that may tie someone's hands in enforcing, using it

7     as evidence to enforce the Motor Vehicle Code in that way or

8     some other way.  That's not within the authority of the

9     Attorney General, and he's not going to do that.

10           THE COURT:  And, for the record, and I want to make

11     this clear, you're not under an obligation to agree to

12     anything.  That was a suggestion by the Court.

13           MR. GALDIERI:  I understand.

14           THE COURT:  And you don't have to apologize for your

15     litigation decisions.  I don't want to make it sound that way.

16     You're trying to apply the law here, and I know.  I'm wondering

17     about the consistency, though, of this rationale, of this

18     rationale with your overall position that this isn't a voting

19     law, it doesn't affect voting eligibility.  You made your

20     point, though.

21           All right.  So, your proposal is one week for the

22     plaintiffs to file their Motion for Preliminary Injunction, one

23     week after that to file an objection, no relies or surreplies,

24     and a hearing within a pretty quick amount of time.  So, let me

25     just look at this calendar.

1       MR. GALDIERI:  Just, your Honor, an opportunity to

2   supplement our submission with a declaration for our expert, if

3   that is required.

4       THE COURT:  Sure, but I think you're going to have

5   to -- reasonableness would dictate that if they need to get a

6   reply in to that, I've got to allow a reply.  Do you have any

7   expert witnesses planned?

8       MR. GALDIERI:  We have an expert witness.  Haven't

9   made a decision.  Probably will not use our expert on the PI,

10  but haven't made a final decision.

11      THE COURT:  Okay.  Let's see here.

12      MR. GALDIERI:  And we may ultimately not use ours, if

13  they don't use theirs.

14      THE COURT:  All right.  Today's the 30th, right?

15      MR. GALDIERI:  Yes.

16      THE COURT:  So, that means November 6 for the motion,

17  November 13th.

18      Now, Jadean, on the 18th we're starting a jury trial,

19  right?

20      THE CLERK:  The 19th.

21      THE COURT:  The 19th.  That's the two jury trials,

22  right?

23      THE CLERK:  We're either going to do one of the first

24  week of November, the 6th, 7th, and one the 19th and 20th.

25      THE COURT:  Okay.  The last week of November we have

1    that civil injunction case, right?  Yeah, we do.

2              THE CLERK:  Yes, two days.

3              THE COURT:  I think what this might be, then -- how

4    does the 18th look, Jadean?

5              THE CLERK:  It's full, but it's full of sentencings,

6    but we can move things.

7              THE COURT:  Okay.  How does Friday, the 22nd, look of

8    November?

9              THE CLERK:  It's full of sentencings and a motion

10   hearing.

11             THE COURT:  Great.  Okay.  Tentatively -- I really

12   hate saying this, but tentatively you're going to have to look

13   at the 23rd, the Saturday.  The thing about November, though,

14   is we've had all of these civil and criminal hearings scheduled

15   that have blocked everything else.  They do keep changing and

16   moving, as they often do, so if there's a better way of

17   approaching that than a Saturday, I will certainly try.

18             I'm interested in hearing -- there was a

19   representation at some point here.  I think it was by your

20   side, actually -- yeah -- that there are a number of states

21   that have virtually the same regime, right:  domicile equals

22   residency; residency can be established by registering to vote?

23   I know that kind of data, "Everyone's doing it" data, doesn't

24   really address the Constitution, but I'm still interested in

25   knowing it.  It doesn't really solve or dispose of

1    constitutional questions, but I'm still interested in knowing

2    it.

3            Is that data available, and do you envision putting it

4    together?

5            MR. GALDIERI:  We can put it together in our

6    submission.  That is and has been the case in most states in

7    the Union for a very long time.  We're one of the few states

8    that has this strange dichotomy in our regime as a result of

9    some statutory --

10           THE COURT:  Domicile residency.

11           MR. GALDIERI:  -- yeah, has this sort of

12   counterintuitive regime that in itself is inherently confusing

13   and may raise equal protection concerns.  So, we can brief

14   that.

15           THE COURT:  I was more focused on just -- that's fine.

16   I was more focused on just knowing, though, the number of

17   states that have an enforcement regime that looks equal to New

18   Hampshire's new one.  That's what I want to know.

19           MR. GALDIERI:  Well, your Honor, I guess, as we keep

20   talking about an enforcement regime, I don't understand what

21   that means in this case.  We have a law that's --

22           THE COURT:  And that's a problem for me, though.

23           MR. GALDIERI:  -- that amends statutory definitions.

24           THE COURT:  Shouldn't people know -- let me just ask

25   it this way:  Is it a problem that I register to vote, if I'm a

1     college student, and college students have been domiciled here

2     and able to vote, isn't it a problem constitutionally -- no, I

3     don't want to say "constitutionally," because they're never

4     going to concede that.  Isn't it important to know if I

5     register to vote and I have an out-of-state license I'm

6     potentially exposing myself to criminal prosecution?

7              MR. GALDIERI:  Your Honor, this issue does not have

8     anything to do with registering to vote.  It has to do with

9     when you establish domicile.  This is a qualification to vote.

10    And what we're saying is people have to inform citizens of the

11    State of every collateral consequence that attends to

12    establishing domicile in New Hampshire:  What taxes do I have

13    to pay?  Do I have to pay the interest and dividends tax?  Do I

14    have to register my OHRV, my snowmobile, my car?  What do I

15    have to do now that I have decided that I'm a domiciliary of

16    this state, and that can happen unattached to voting.  That is

17    all that -- that is the question in this case.  It's not an

18    enforcement regime.  It is a consequence of establishing this

19    state as your domicile.  Choosing as a nonresident to become a

20    resident of this state brings about it obligations of

21    residency.

22             THE COURT:  Doesn't an enforcement regime include, at

23    least as a practical matter, the evidence law enforcement can

24    bring to bear in a criminal prosecution?  Because until this

25    statute, right, much voter registration information wasn't

1     evidence to use in a case like this, or was it?

2           MR. GALDIERI:  I think that's incorrect.  It was

3     evidence.

4           THE COURT:  It was already?

5           MR. GALDIERI:  It is evidence that you are domiciled

6     somewhere.  Voter registration is one of the key indicators in

7     the law of domicile that you are domiciled somewhere.

8           THE COURT:  But motor vehicle enforcement was based on

9     residency, not on domicile.

10          MR. GALDIERI:  But it is an indicia that you may be a

11    bona fide resident of the state.  It is evidence.

12          MR. KLEMENTOWICZ:  It wasn't conclusive proof of one's

13    intent to remain in New Hampshire for the indefinite future.

14    So, you couldn't just introduce someone's voter registration

15    and that proves up the residency requirement, like it probably

16    could now.

17          And just on the point about registering to vote

18    doesn't establish domicile, domicile requires that one manifest

19    an intent to participate in democratic self-government in New

20    Hampshire, which is precisely what registering to vote is, and

21    maybe the people can establish domicile in other ways, but

22    certainly the act of registering to vote contemplates both

23    manifestation of and a declaration of domicile and now

24    probably, although it's confusing, residence.

25          And the only other point that I'll add to this on the

1    confusion is people aren't asking, as far as I know, Town

2    Clerks whether they need to register their ORV or pay interest

3    and dividends tax.  They're asking, "Do I need to get a

4    driver's license if I register to vote?"  And the guidance that

5    has been given from the Secretary of State's Office is, "I'm

6    sorry, you're on your own," whereas, previously there was

7    guidance that said domicile and residence are different.  So,

8    there is that confusion, and no one will give the voters a

9    straight answer as to what follows from registering to vote.

10             THE COURT:  You're answering the confusion question.

11   I was asking Mr. Galdieri the burden question.  It's a

12   different question.

13             MR. KLEMENTOWICZ:  Well, I think confusion is a

14   burden.  I think that's what happened in the Guare case, where

15   they struck the language from the registration form because it

16   was confusing and misstated the law, and the confusion led to

17   people not voting because they didn't know what their

18   obligations were.

19             THE COURT:  You were interrupted.

20             MR. GALDIERI:  Your Honor, this case is not like

21   Guare.  Guare was about a statement on an actual voter

22   registration form that inaccurately stated the law.

23             On the point of confusion, HB 1264 struck four words

24   from those definitions that this Court in the Newburger case

25   said made no rational sense, they made no rational sense, and

1    it struck those four words, and it equated a resident to a

2    domiciliary.  Somebody who now says they are domiciled here is

3    a resident here, and all of the obligations of residency apply

4    to them.  That is not confusing.  There is nothing confusing

5    about that.  If somebody shows up and says to a Town Clerk who

6    doesn't issue driver's licenses, "Do I have to get a driver's

7    license?", I would expect the Town Clerk to say, "I don't know

8    if you have to get a driver's license.  You have to determine

9    whether you have to get a driver's license."

10            And we take issue with the notion that a voter

11   registration on its own is conclusive proof in a prosecution.

12   I don't think it could be conclusive proof.  It may be strong

13   evidence.

14            THE COURT:  The trier of fact determines what

15   conclusive proof is.

16            MR. GALDIERI:  Right, but it's not conclusive proof.

17   So, this confusion issue is largely a being of their own

18   creation.  They cite people talking in newspaper articles about

19   hearsay and people don't know what's going on, because no one

20   will give them a clear answer.  If you're domiciled here you're

21   a resident here, and all the obligations that attach to being a

22   resident of the state apply to you.  That's how it works.

23            THE COURT:  What?

24            MR. KLEMENTOWICZ:  I was just going to say that's not

25   really the guidance that the Secretary of State's Office was

1    given by the Attorney General's Office.  It's a little bit

2    inconsistent.  If I could just have a moment.  They said in a

3    letter -- and this is attached to our pleadings -- that says,

4    "If a person will drive in New Hampshire and currently

5    possesses an out-of-state driver's license -- "

6            THE COURT:  Please read slowly.

7            MR. KLEMENTOWICZ:  I'm sorry -- "this includes the

8    obligation to obtain a New Hampshire driver's license within

9    60 days of establishing a bona fide residency in the State, RSA

10   263:35.  However, individual circumstances may vary, and this

11   obligation should be determined on a case-by-case basis."

12           So, that's different than what they've been saying --

13   what's been said publicly.

14           MR. GALDIERI:  Your Honor, as we all know in the law,

15   there are many, many exceptions.  To give a blanket statement

16   that covers absolutely everybody and everyone's situation is

17   difficult to do.  People are required to know the law and

18   assess their obligations when they decide to become a resident

19   of a particular state.  It is not incumbent upon the Attorney

20   General's Office or the Secretary of State's Office to tell

21   them of every collateral consequence of doing that.  That's not

22   a rational system.

23           THE COURT:  I have to admit, and I think said at the

24   last hearing, it's far from clear to me that the burdens

25   imposed by this regime are particularly burdensome on the right

1   to vote.

2          All right.  Well, thank you.

3          MR. GALDIERI:  Thank you, your Honor.

4          THE COURT:  So, you don't want to be heard on the

5   amendments other than the written submissions or the

6   certification.  I take you at your word.  I'll get decisions

7   out on that.

8          I assume, by the way -- because, believe it or not,

9   I'm going to give a little bit more thought to certification

10  before I actually do it.  I assume, by the way, that your

11  desire for a temporary injunctive relief is contingent upon

12  certification, right?  If I'm not going to certify, you don't

13  need that motion, because we're going to have a trial in

14  January, and we'll have a decision well before the primary.

15         MR. KLEMENTOWICZ:  That's right.

16         THE COURT:  Okay.  Thank you.

17         MR. GALDIERI:  Thank you, your Honor.

18         THE CLERK:  All rise.

19         THE COURT:  We're adjourned.

20     (WHEREUPON, the proceedings adjourned at 10:57 a.m.)

21

22

23

24

25

1
2
3

C E R T I F I C A T E

4      I, Brenda K. Hancock, RMR, CRR and Official Court

5  Reporter of the United States District Court, do hereby certify

6  that the foregoing transcript constitutes, to the best of my

7  skill and ability, a true and accurate transcription of my

8  stenotype notes taken in the matter of *Casey, et al. v. William*

9  *Gardner, et al.*, No. 1:19-cv-00149-JL.

10
11
12
13

14  Date: ____11/4/19

BRENDA K. HANCOCK, CRR, RMR
OFFICIAL COURT REPORTER

16
17
18
19
20
21
22
23
24
25