UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Caroline Casey, et al.

      v.                                  Civil No. 19-cv-149-JL

NH Secretary of State, et al.

**MEMORANDUM ORDER ON PLAINTIFFS'
REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF**

In this voting rights case, two young New Hampshire voters and the New Hampshire Democratic Party seek a preliminary injunction preventing the State from using evidence of voter registration or voting history in the prosecution of certain motor vehicle offenses while the plaintiffs challenge recent changes to New Hampshire's statutory definitions of "resident" and "residence." The plaintiffs allege that the changes were intended to burden the right to vote, by indirectly making voter registration an effective declaration of residency that triggers obligations and fees for drivers and vehicle owners under New Hampshire's Motor Vehicle Code. The plaintiffs allege that if the changes have this intended effect, the resulting statutory scheme violates the First, Fourteenth, Twenty-Fourth, and Twenty-Sixth Amendments. The plaintiffs argue that the statutory changes did not achieve the intended effect. But they allege that the unresolved confusion over the impact of the changes itself burdens the right to vote, violating of the First and Fourteenth Amendments. They move for a preliminary injunction solely on this latter basis of confusion, not on the allegedly unconstitutional intended impacts of the changes. The court has jurisdiction under 28 U.S.C. § 1331 and the First and Fourteenth Amendments.

Although the court previously declined to dismiss this case on the basis of jurisdiction (lack of standing) or failure to state claims, the plaintiffs have not proven that they are entitled to

a preliminary injunction on the basis of voter confusion.  State officials have been slow to provide detailed guidance, but a recent letter issued by the Attorney General, Secretary of State, and Commissioner of Safety clarifies the State's interpretation of New Hampshire law after the statutory changes.  Given this clarification, the plaintiffs have failed to show that they are likely to succeed on the merits of their confusion-based claims, and as the court points out <u>infra</u> Part III.B, the injunction they requested is not well suited to claims based on legal confusion.  Their arguments on the remaining requirements for a preliminary injunction also depend on the existence of reasonable voter confusion, and are similarly undermined by the new State guidance.  The plaintiffs' motions for preliminary injunctions are thus denied.

## I.   <u>Facts</u>

This case involves three areas of New Hampshire law:  elections statutes, statutory construction provisions, and motor vehicle statutes.[1]  The plaintiffs challenge recent changes to N.H. Rev. Stat. Ann. §§ 21:6 and 21:6-a, which altered statutory definitions of "resident" and "residence."  They claim that these changes, or confusion resulting from the changes, burden the right to vote and violate the First, Fourteenth, Twenty-Fourth, and Twenty-Sixth Amendments to the U.S. Constitution.  2018 House Bill 1264 implemented these changes, and they became law on July 1, 2019.  For simplicity and consistency with the parties' papers, the court will refer to the changes collectively as HB 1264.

### A.   **New Hampshire law prior to HB 1264**

New Hampshire election law provides that:

---

[1] Many of the background facts below overlap with the court's simultaneous order certifying questions to the New Hampshire Supreme Court.

Every inhabitant of the state, having a single established domicile for voting purposes, being a citizen of the United States, of the age provided for in Article 11 of Part First of the Constitution of New Hampshire, shall have a right at any meeting or election, to vote in the town, ward, or unincorporated place in which he or she is domiciled.  An inhabitant's domicile for voting purposes is that one place where a person, more than any other place, has established a physical presence and manifests an intent to maintain a single continuous presence for domestic, social, and civil purposes relevant to participating in democratic self-government.  A person has the right to change domicile at any time, however a mere intention to change domicile in the future does not, of itself, terminate an established domicile before the person actually moves.

N.H. Rev. Stat. Ann. § 654:1, I.

Voting is thus conditioned on domicile.  The statute also specifically addresses students: "A student of any institution of learning may lawfully claim domicile for voting purposes in the New Hampshire town or city in which he or she lives while attending such institution of learning if such student's claim of domicile otherwise meets the requirements of RSA 654:1, I."  N.H. Rev. Stat. Ann. § 654:1, I-a.  The voter statute does not refer to "resident" or "residence".

Chapter 21 of Title I of the New Hampshire Code ("Statutory Construction") provides rules of statutory interpretation and definitions applicable under the Code.  These include the definitions of "resident" and "residence" altered by HB 1264.  Prior to the recent changes, Section 21:6 provided:

A resident or inhabitant or both of this state and of any city, town or other political subdivision of this state shall be a person who is domiciled or has a place of abode or both in this state and in any city, town or other political subdivision of this state, and who has, through all of his actions, demonstrated a current intent to designate that place of abode as his principal place of physical presence for the indefinite future to the exclusion of all others.

N.H. Rev. Stat. Ann. § 21:6 (2018) (amended 2019) (emphasis added).  And Section 21:6-a similarly provided that:

Residence or residency shall mean a person's place of abode or domicile.  The place of abode or domicile is that designated by a person as his principal place of physical presence for the indefinite future to the exclusion of all others.  Such residence or residency shall not be interrupted or lost by a temporary absence from it, if there is an intent to return to such residence or residency as the principal place of physical presence.

3

N.H. Rev. Stat. Ann. § 21:6-a (2018) (amended 2019) (emphasis added).  Prior to the recent

changes implemented by HB 1264, individuals were not deemed "residents" unless they intended

to remain in New Hampshire "for the indefinite future."

      Finally, this case implicates certain motor vehicle statutes because these provisions

impose obligations on New Hampshire "residents."  Section 259:88 addresses "resident for

motor vehicle purposes" and provides that "'[r]esident' shall mean a resident of the state as

defined in RSA 21:6, except that no person shall be deemed to be a resident who claims

residence in any other state for any purpose."  N.H. Rev. Stat. Ann. § 259:88.  A motor vehicle

owner or driver that establishes bona fide residency in New Hampshire takes on certain legal

obligations.

> [W]hen a nonresident has established a bona fide residency in this state, said
> resident shall have a maximum of 60 days from the date of his or her residency in
> which to register his or her vehicle or vehicles in New Hampshire.

N.H. Rev. Stat. Ann. § 261:45.

> [A]ny nonresident driver of a motor vehicle who holds a valid driver's license in
> another jurisdiction, upon the establishment of a bona fide residency in this state,
> shall have a maximum of 60 days from the date his residency was established to
> obtain a driver's license issued by the state of New Hampshire.

N.H. Rev. Stat. Ann. § 263:35.

**B.**      **HB 1264's changes**

      HB 1264 amended the definition of "resident" and "residence" in sections 21:6 and 21:6-

a to remove the requirement that a resident intend to remain "for the indefinite future."  The bill

was introduced in the New Hampshire House of Representatives in November 2017, and by May

2018 was passed by both the House and New Hampshire Senate.[2]  The plaintiffs allege that the

---

[2] Casey Am. Compl. (doc. no. 68) ¶¶ 15-17; NHDP Am. Compl. (doc. no. 69) ¶¶ 14-16.

bill was a voting measure, primarily intended to discourage college students from voting in New Hampshire elections.[3]  The aim of the bill, they allege, was to make "residency" equivalent to "domicile," so that registering to vote would effectively declare residency and trigger exposure to motor vehicle obligations and fees.[4]  The plaintiffs allege that the bill intended to require college students to incur the cost and burden of obtaining New Hampshire drivers licenses and registering their cars (if they own cars) in New Hampshire if they wish to both vote in New Hampshire and drive or own vehicles in the state.[5]  Before HB 1264's changes, many such students could be domiciled and vote in New Hampshire under the election statutes without being residents under motor vehicle law, because they lacked the then-statutorily-required intent to remain for the indefinite future.

The plaintiffs point to various aspects of the legislative record to support their account of HB 1264.  They allege that the bill was considered by the election law committees of the legislature, and that the Division of Motor Vehicles did not assess the bill.[6]  Instead, the plaintiffs allege, the Secretary of State's office advocated for and testified about the bill.[7] They also cite alleged statements by legislators presenting the bill as a voting measure designed to discourage

---

[3] Casey Am. Compl. (doc. no. 68) ¶¶ 18-20; NHDP Am. Compl. (doc. no. 69) ¶¶ 17-19.

[4] Id.

[5] Id.

[6] Casey Am. Compl. (doc. no. 68) ¶ 18; NHDP Am. Compl. (doc. no. 69) ¶ 17.

[7] Casey Am. Compl. (doc. no. 68) ¶¶ 18-19; NHDP Am. Compl. (doc. no. 69) ¶¶ 17-18.

certain groups from voting or at least impose costs on them.[8]  HB 1264 also fits, according to the plaintiffs, within a pattern of recent legislative efforts to discourage voting by college students.[9]

After HB 1264 passed the legislature, the Governor and Executive Council requested that the Justices of the New Hampshire Supreme Court opine on the constitutionality of the bill under the New Hampshire Constitution and the Fourteenth Amendment of the U.S. Constitution. Opinion of the Justices, 171 N.H. 128, 131-32 (2018).  A majority of three Justices determined that it was proper to issue an advisory opinion on these questions, and concluded that the bill did not violate either constitution.  The "incongruity" between the definitions of "domicile" and "residency," they explained, resulted from this court's 1972 decision in Newburger v. Peterson that domicile for voting purposes could not be conditioned on an indefinite intention-to-remain test. Opinion, 171 N.H. at 138-139, 145 (citing Newburger, 344 F. Supp. 559 (D.N.H. 1972)). After Newburger, New Hampshire amended its law regarding domicile for voting purposes to remove the indefinite intention-to-remain requirement.  Opinion, 171 N.H. at 138.  Because the definition of "residency" was left unchanged, the majority explained, certain groups were permitted "to vote in New Hampshire without incurring responsibility for . . . obligations of state citizenship," producing "an imbalance of rights and responsibilities." Id. at 145.  They opined that New Hampshire is not required to maintain that imbalance, and that even if the right to vote was burdened, the State "has a compelling justification" in "insuring that those who are permitted to vote are bona fide residents who share a community of interest with other citizens." Id. at 142.  Two other Justices wrote separately.  They declined to opine on the submitted

---

[8] Casey Am. Compl. (doc. no. 68) ¶¶ 20-23; NHDP Am. Compl. (doc. no. 69) ¶¶ 19-22.

[9] Casey Am. Compl. (doc. no. 68) ¶¶ 24-29; NHDP Am. Compl. (doc. no. 69) ¶¶ 23-28.

questions because they determined that resolving the questions appropriately would require a developed factual record.  See id. at 154, 156-57.

After the Justices issued their advisory opinion, the governor signed the bill.[10]  The new law took effect on July 1, 2019.[11]

### C.   These lawsuits

### 1.   Initial claims

The individual plaintiffs, Caroline Casey and Maggie Flaherty, filed their complaint in mid-February 2019, and the New Hampshire Democratic Party filed its complaint two weeks later.  These complaints were identical except for the paragraphs describing the plaintiffs.  Casey and Flaherty are students at Dartmouth College who both wish to vote in New Hampshire while attending the school but do not intend to remain in New Hampshire after graduation.[12]  They currently have driver's licenses from other states, and both registered to vote in New Hampshire in 2018.  They allege that they will suffer injury if they must incur the expense and trouble of obtaining New Hampshire driver's licenses.  Neither alleges that they own a vehicle, so their claims do not implicate the requirement to register a vehicle in New Hampshire.[13]

The New Hampshire Democratic Party alleges that it is harmed by HB 1264 because voters inclined to support its candidates "will incur onerous fees to register to vote or will be too

---

[10] Casey Am. Compl. (doc. no. 68) ¶ 17; NHDP Am. Compl. (doc. no. 69) ¶ 16.

[11] Casey Am. Compl. (doc. no. 68) at 1; NHDP Am. Compl. (doc. no. 69) at 1.

[12] Casey Am. Compl. (doc. no. 68) ¶¶ 1-2.

[13] Id.

intimidated to register or vote at all."[14]  The court, on the defendants' motion and with the assent of the plaintiffs, consolidated the two cases.[15]

### 2. Denial of motion to dismiss

The defendants moved to dismiss the plaintiffs' claims for lack of standing and failure to state claims.  The court denied these motions.[16]  The court then ordered the parties to provide their views on certifying certain questions to the New Hampshire Supreme Court.[17]

### 3. Amended complaints

Days later, the plaintiffs moved to amend their complaints.  In their original complaints, the plaintiffs' arguments assumed that HB 1264 achieved its alleged intended effect.  In their amended complaints, the plaintiffs instead contended that the bill failed to accomplish its goal, because it left in place the exception of RSA 259:88 that "no person shall be deemed to be a resident" for the purposes of the Motor Vehicle Code "who claims residence in any other state for any purpose."  They argue that registered voters with an out-of-state driver's license or vehicle registration claim residence in another state for some purpose, and so are not residents for the purposes of the Motor Vehicle Code.  The plaintiffs alleged that this ambiguity and the defendants' failure to give adequate guidance on the law created voter confusion that impermissibly burdens the right to vote in violation of the First and Fourteenth Amendments.

---

[14] NHDP Am. Compl. (doc. no. 69) ¶ 1.

[15] Order of May 1, 2019.

[16] Order of August 29, 2019 (doc. no. 47).

[17] Order of October 9, 2019 (doc. no. 56).

The court granted the plaintiffs leave to amend, over the defendants' objection.  The defendants later moved to dismiss the confusion-based claims.

### 4.    Certification to the New Hampshire Supreme Court

The parties responded to the court's request for their views on certification.  The plaintiffs supported certification on the condition that the court enter a temporary order prohibiting the State from using evidence of voter registration in any judicial or administrative enforcement of RSA §§ 261:45 and 263:35 and requiring the Secretary of State to inform local election officials that the act of voting in the 2020 New Hampshire Presidential Primary or registering to vote at or before that primary election would not require a person to obtain a New Hampshire driver's license or vehicle registration.  The defendants opposed certification as unnecessary and declined to agree to the temporary relief requested by the plaintiffs.

After oral argument, the court indicated that it was inclined to certify certain issues to the New Hampshire Supreme Court, but declined to issue any temporary injunctive order without the defendants' consent, which they declined to provide.  The court set a briefing schedule for the plaintiffs to move for a preliminary injunction.  After an evidentiary hearing and oral argument, the court issued an order certifying questions to the New Hampshire Supreme Court and staying the defendants' motions to dismiss.[18]  The court expressed no opinion on whether the plaintiffs

_____

[18] The court certified the following questions of New Hampshire statutory interpretation to the New Hampshire Supreme Court:

- Are the definitions of "resident" and "residence" in RSA § 21:6 and :6-a, as recently amended, effectively the same as the definition of "domicile" as used in RSA § 654:1, such that one with a New Hampshire "domicile" is necessarily a New Hampshire "resident"?

- Is a student who claims a New Hampshire "domicile" pursuant to RSA § 654:1-a necessarily a New Hampshire resident under RSA § 21:6, as recently amended?

might secure temporary relief from the New Hampshire Supreme Court pending the resolution of
the certified statutory interpretation questions if the court denied their motions for preliminary
injunctions.

### D.     Preliminary injunction record — voter confusion

The plaintiffs move for a preliminary injunction only on the basis of their confusion-
based claims, introduced in their amended complaints, and not on the fee-based voting burdens
initially pleaded, and which the court declined to dismiss.[19]  They argue that HB 1264 is both
inherently confusing because of its relation to other statutory language and that state agencies
have created confusion surrounding HB 1264 by issuing confusing guidance and by refusing to
answer direct inquiries about its impacts.  The plaintiffs ask the court to issue a preliminary
injunction prohibiting New Hampshire from using voter registration or voting history as
evidence in any enforcement action under RSA 261:54 and RSA 263:35, and ordering the

---

- Can an individual with a New Hampshire "domicile" pursuant to RSA § 654:1 ever
  be an individual "who claims residence in any other state for any purpose" and thus is
  not a "resident" for the purposes of RSA § 259:88?

- Relatedly, does an individual who claims a New Hampshire "domicile" pursuant to
  RSA § 654:1, I or I-a necessarily establish "a bona fide residency" for the purposes of
  RSA §§ 261:45 and 263:35?

- Given the definition of non-resident in RSA § 259:67, I for the Motor Vehicle Code,
  are college students who reside in New Hampshire for more than six months in any
  year required to obtain New Hampshire drivers' licenses by RSA § 263:1 if they wish
  to drive in the state and required by RSA § 261:40 to register in New Hampshire any
  vehicles they keep in the state?

[19] Mem. of Law in Supp. of Casey Mot. for Prelim. Inj. (doc. no. 72-15) at 1; NHDP Mot. for
Prelim. Inj. (doc. no. 73) ¶¶ 3, 7-8.

defendants to publicize that prohibition via the Secretary of State's website and communication to all local election officials.

**The plaintiffs' filings.**  The plaintiffs submitted ten affidavits and declarations from witnesses in support of their motion or with their earlier response to the court's inquiry regarding certification.  The affidavits are summarized below.

Mary Catherine Suskie, a law student at the University of New Hampshire School of Law, originally from Arkansas stated that she registered to vote in New Hampshire in mid-October 2019, because she is a domiciliary of New Hampshire, is most connected to political life here, and is more conveniently able to vote here than in Arkansas.  She was not aware of HB 1264 when she registered, and intended to maintain residence in Arkansas for motor vehicle and insurance purposes.  She stated that she is confused about HB 1264 and whether she is required to obtain a New Hampshire driver's license.  She is concerned that doing so might affect her health insurance maintained through her Arkansas-resident parents.[20]  She also drives a car owned by her parents and is unsure if she needs to register it in New Hampshire.  She contacted the Concord City Clerk to inquire whether she could "unregister" in New Hampshire or reregister in Arkansas without penalty.  Ms. Suskie testified at the preliminary injunction hearing.

Benjamin Kremer and William Hardesty-Dyck, both out-of-state driver's license holders registered to vote in New Hampshire, stated they each telephoned the Secretary of State's office in early October 2019 to ask several questions about HB 1264 and its effect on them.  Both

---

[20] The plaintiffs take no position on whether Suskie would in fact jeopardize her insurance coverage by obtaining a New Hampshire license.  Suskie testified at the evidentiary hearing that she has not checked with her health insurer, and the defendants introduced evidence suggesting that federal law prohibits health plans offering dependent child coverage from limiting that coverage based on residency.

spoke with Deputy Secretary of State David Scanlan, who answered some of their questions and told them that others were better posed to the DMV.

Katharine Morse-Gagne stated that in early October 2019 she contacted the Concord office of the New Hampshire Department of Motor Vehicles ("DMV") and the Manchester Town Clerk's office to inquire about the effects of HB 1264.  She stated that the DMV directed her to contact her town and claimed that they did not have information about voting-related questions.  The Town Clerk's office answered some questions, but referred her to the website of the Secretary of State and New Hampshire Department of Transportation for others.  Ms. Morse-Gagne did not disclose whether she is registered to vote or whether she has a driver's license.

Olivia Joan Hancock Weals stated that she is originally from Maryland, where her father still lives, has a Maryland drivers' license, and drives a car registered in Maryland in her father's name.  She moved to New Hampshire in August 2019 for a job contracted to run through November 2020.  She does not know where she will reside after the contract ends.  She stated that she registered to vote in New Hampshire in October 2019 because she is domiciled here and wishes to vote where she is most connected to political life.  She is employed as an organizer working on student voting rights, based at the University of New Hampshire.  She stated that she received many questions from UNH students regarding the impacts of HB 1264 and so called the New Hampshire DMV in early October.  She stated that a DMV representative said Weals was the third person to call about HB 1264 that day, but that information about HB 1264 had not yet filtered down to the DMV.  The DMV representative directed to her to speak to her Town Clerk, indicated that HB 1264 would not affect a student's ability to register to vote, but that individuals with only a college dorm address would not be able to obtain a New Hampshire license.[21]

_____

[21] Neither party has suggested that this is an accurate characterization of state law.

Mary K. Dineen, a law student at the University of New Hampshire School of Law stated that she is domiciled in Concord, New Hampshire, but is originally from North Carolina and has a North Carolina driver's license.  She drives a car in New Hampshire registered in North Carolina, in her North Carolina-resident mother's name.  She does not know where she will reside after completing law school.  She stated that she registered to vote in New Hampshire in mid-October 2019, because she is a domiciliary of New Hampshire, is most connected to political life here, and is concerned that voting in North Carolina by absentee ballot would be less convenient and that her absentee ballot might not be counted.  She was not aware of HB 1264 when she registered.  She stated that she is confused about HB 1264 and whether she is required to get a New Hampshire driver's license or register her car in New Hampshire.

Elizabeth Wester, the New Hampshire State Director for the NH for Warren campaign, stated that the campaign prepared educational materials regarding registering to vote in New Hampshire but was advised not to use them with voters until exceptions to the definition of residency in the motor vehicle code were addressed and clarified.

Elizabeth McClain, the town clerk of Hanover, New Hampshire, stated that she began receiving questions about HB 1264 in the spring of 2019, before the bill went into effect.  She emailed the Secretary of State's office for guidance in mid-July, asking how to answer the question: "If I register to vote, do I need to get a New Hampshire driver's license?"  The Secretary of State's office replied that HB 1264 does not change any election law, and election officials, and that election officials do not advise voters on how residency laws apply to other areas of the law, including motor vehicle laws.  She thus directed those asking about HB 1264 and driver's licenses to consult the DMV.  Clerk McClain testified at the preliminary injunction hearing.

Ann Shump, the Supervisor of the Checklist in Durham, New Hampshire, where the University of New Hampshire is located, stated that she had received little guidance on the effects of HB 1264 but expects questions from potential voters.  She stated that a large number of people register to vote on Election Day in Durham.  She spoke with a representative of the Secretary of State's office about HB 1264 in July 2019 and was advised it did not affect voter registration since any change of motor vehicle documents would happen after the election.  Shump found this answer unsatisfactory, as it did not prepare her to answer whether someone registering to vote needs to obtain New Hampshire motor vehicle documents.  She stated that, based on her professional experience, she believed HB 1264 will cause confusion on Election Day and cause qualified voters to refrain from voting in Durham, as well as delays and longer queues at registrations tables.

Michael C. Herron, a professor at Dartmouth College, provided a declaration as an expert retained by the plaintiffs.  His report considered data produced by the defendants regarding voters in three recent New Hampshire elections and examined those voters who used out-of-state identification in the voting process.  He found that young voters and college students (identified indirectly based on use of dorm-related addresses) were substantially more likely to use out-of-state identification in voting than the population at large.  He concluded that both college students and the young are disproportionately burdened by HB 1264.  He also found that users of out-of-state identification in voting self-identified as Democrats at a rate higher than the general population and as Republicans at a rate lower than the general population.

The plaintiffs also referred to the individual plaintiffs' sworn interrogatory responses indicating that they are confused about the legal definition of residency.  Both sides referred to media reports regarding HB 1264.

14

**The defendants' filings.**  The defendants filed declarations from two witnesses.  David Scanlan, the Deputy Secretary of State, who also testified at the preliminary injunction hearing, addressed the guidance provided to the public and local election officials regarding HB 1264. He stated that the Secretary of State submitted a memorandum of law to the New Hampshire Supreme Court in the advisory opinion process that explained that HB 1264 had no effect on New Hampshire's election laws and that no election day procedures would change as a result of HB 1264.  He stated that the Secretary of State's office has conducted numerous training sessions throughout the state for local election officials, including one in August 2018 attended by Hanover Clerk McClain where the Secretary of State explained that, even after HB 1264, a person does not need a New Hampshire driver's license to register to vote or to vote.

Scanlan stated that he responded to an email query from Clerk McClain in mid-July 2019 regarding the effect of HB 1264 and advised that HB 1264 does not change any election law, and that election officials do not advise voters on how residency laws apply to other areas of the law, including motor vehicle laws.  On September 18, 2019, the New Hampshire Attorney General's Office issued guidance regarding HB 1264 via a letter addressed to the Secretary of State.  The letter included a document designed to be handed out to anyone seeking to register to vote who asks about obligation to obtain a New Hampshire driver's license or vehicle registration.  The Secretary of State's office distributed the letter to local election officials the following week.

Scanlan further stated that the Secretary of State's office does not sense much confusion among local election officials concerning HB 1264, but became aware of statements in media reports that Clerk McClain remained confused about it.  The Secretary of State, Attorney General, and Commissioner of Safety thus jointly issued a letter on November 7, 2019 directed

to Clerk McClain that provided guidance regarding the effects of HB 1264 and obligations of new New Hampshire residents.  The letter includes (emphasis in original):

- HB 1264 amended New Hampshire's statutory definitions of <u>resident</u> and <u>residence</u>.  As a result of the amendment, <u>resident</u> and <u>residence</u> now have the same meanings as <u>domiciliary</u> and <u>domicile</u>.

- <u>As has been previously communicated in written guidance and at election official training, HB 1264 made no changes to New Hampshire's election laws</u>.  It remains the law that to vote in New Hampshire, one must be a United States citizen, at least 18 years old, and a domiciliary of the ward or town.

- Any number of actions can indicate that an individual has established a particular place as his or her domicile.  <u>Registering to vote requires that an individual has established a domicile here and, therefore, the individual is a New Hampshire resident</u>.

- Once one establishes residency in New Hampshire, New Hampshire law requires new residents to take certain actions.  <u>Obligations for new residents have not changed, and these obligations should be very familiar to municipal officials</u>.  Under the motor vehicle code, an individual has 60 days upon establishing residence to obtain a New Hampshire driver's license, if they drive in the state, and to register a vehicle, if they own a vehicle in the state.

- Anyone seeking to register to vote in New Hampshire is indicating that he or she has already established a domicile here.  <u>The obligation to comply with the motor vehicle code requirements begins at the time an individual establishes his or her domicile in New Hampshire</u>.  No one can be denied the right to register to vote or vote for failing to meet the requirements of the motor vehicle code.

This letter was distributed to local election officials and posted on the Secretary of State's website.

Nicholas Chong Yen, an Assistant Attorney General at the New Hampshire Department of Justice and the attorney in charge of the Attorney General's Office's election unit, stated that he was contacted in September 2019 by Hanover Clerk McClain, and issued the September 18, 2019 letter in response. His declaration also addressed the issuance of the November 7, 2019 clarifying letter, and one inquiry he received in response to that letter regarding the eligibility of student voters. He stated that the Attorney General's Office maintains an elections hotline and email address for elections inquiries, and that he is not aware of any inquiries from local elections officials via those means concerning HB 1264.

**Evidentiary hearing.** At the evidentiary hearing, the plaintiffs called Mary Catherine Suskie and Hanover Clerk McClain as witnesses and the defendants called Deputy Secretary of State Scanlan.

In addition to the material covered in her affidavit, Clerk McClain testified she found the November 7 letter clearer than the September 18 letter, but that she does not believe she has been given a satisfactory answer on whether anyone who registers to vote in New Hampshire must then get a New Hampshire driver's license. Her understanding is that she is not to provide guidance regarding non-voting responsibilities of residency including motor vehicle obligations, but is uncomfortable with that result given that her office is also responsible for dealing with license plates and driver's license information. She testified that she is unfamiliar with RSA 259:88 (the Motor Vehicle Code definition of residency), and does not recall anyone asking her about that specific statute. Suskie testified regarding the same facts and events as her affidavit.

In addition to the topics discussed in his affidavit, Deputy Secretary of State Scanlan testified that, within the week prior to the hearing, the Secretary of State's office revised a document on its website that summarizes New Hampshire voter registration law and procedures and is identified on the website as guidance for New Hampshire college students.  The revision removed a now-obsolete (in the defendants' view) section of the document quoting Guare v. State of New Hampshire for the proposition that "domicile" and "resident" have different meanings under New Hampshire law.  167 N.H. 658, 662 (2015).  Scanlan also agreed that, under his understanding of the current law, someone who registers to vote declares both their New Hampshire domicile and residency, and, within 60 days of establishing residency (which may predate voter registration), that individual must obtain a New Hampshire driver's license if they intend to drive in the state.

On cross-examination, plaintiffs' counsel called Scanlan's attention to a May 2019 letter sent by the Secretary of State's office to an unidentified voter pursuant to RSA 654:12V(d), which requires the Secretary of State to send a letter after an election to anyone who registered using a sworn statement of domicile, informing them of a driver's obligation to obtain a New Hampshire driver's license within 60 days of becoming a New Hampshire resident.  The letter includes a definition of "resident" that cites both RSA 21:6 and RSA 259:88 and includes the language from the latter statute excepting those who claim residence in any other state for any other purpose.  Scanlan agreed that the November 7 letter and other guidance issued by the defendants do not cite RSA 259:88 and answered that this variation could "perhaps" be confusing.

II.     **Applicable legal standard**

Before a district court grants a preliminary injunction, it must "consider (1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest." Shurtleff v. City of Bos., 928 F.3d 166, 171 (1st Cir. 2019).  "The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor." Esso Std. Oil Co. v. Monroig–Zayas, 445 F.3d 13, 18 (1st Cir. 2006).  The First Circuit Court of Appeals has recognized that "the first two factors, likelihood of success and of irreparable harm, are 'the most important' in the calculus,'" Bruns v. Mayhew, 750 F.3d 61, 65 (1st Cir. 2014) (quoting González–Droz v. González–Colón, 573 F.3d 75, 79 (1st Cir.2009)), and that these two factors are assessed in relation to one another, see W Holding Co. v. AIG Ins. Co., 748 F.3d 377, 383 (1st Cir. 2014); Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011); Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 485 (1st Cir. 2009) (describing "sliding scale" analysis).  Indeed, "the sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs. Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).

III.    **Analysis**

The plaintiffs chose to limit their motions for preliminary injunctions to their claim that HB 1264 burdens the right to vote through confusion and thus violates the First and Fourteenth

Amendments.[22]  The issues before the court on this motion are therefore considerably narrower than the scope of the entire case.

To be clear, in the context of the large lawsuit, if the government defendants are correct about the effects of HB 1264, individuals who register to vote and wish to drive in New Hampshire must obtain a New Hampshire driver's license and register any cars they own in New Hampshire.[23]  The plaintiffs argue in their amended complaints that this result violates the First, Fourteenth, Twenty-Fourth, and Twenty-Sixth Amendments.

But they have not sought temporary relief on that basis.  The court thus at this time may only consider whether the plaintiffs are likely to succeed in showing that the right to vote is unconstitutionally burdened by confusion stemming from HB 1264, not if they are likely to succeed in showing that imposing motor vehicle requirements on all registered voters burdens the right to vote in violation of the U.S. Constitution.

A.      Likelihood of success

The plaintiffs argue that their confusion-based claims are likely to succeed under the Anderson-Burdick test that governs limitations on the right to vote.  See Anderson v. Celebrezze, 460 U.S. 780 (1983); Burdick v. Takushi, 504 U.S. 428 (1992).  That test is a sliding scale approach.  Libertarian Party of N.H. v. Gardner, 638 F.3d 6, 14 (1st Cir. 2011).

> This method of analysis for election regulations requires an assessment of the burdens, if any, placed on a plaintiff's constitutionally protected rights, followed by an evaluation of the precise interests put forward by the state as justifications for the burdens.  Werme v. Merill, 84 F.3d 479, 483 (1st Cir. 1996)  If a regulation places "severe restrictions" on a plaintiff's First and Fourteenth

---

[22] Mem. of Law in Supp. of Casey Mot. for Prelim. Inj. (doc. no. 72-15) at 1.

[23] The defendants carefully argue that these motor vehicle requirements are triggered not by voter registration as such, but by the residency status that, under the defendants' interpretation of HB 1264, one must declare in registering to vote.

Amendment rights, "the regulation must be narrowly drawn to advance a state interest of compelling importance." Id. at 484 (quoting Burdick, 504 U.S. at 434). By contrast, "when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions."   Id. (quoting Burdick, 504 U.S. at 434).

Libertarian Party of N.H., 638 F.3d at 14.  If the burden imposed is extremely minor, only a

rational basis is required to justify it.  See Werme, 84 F.3d at 485; Libertarian Party of N.H. v.

Gardner, 126 F. Supp. 3d 194, 206 n.11 (D.N.H. 2015) (Barbadoro, J.).

At the outset, the defendants assert that the Anderson-Burdick framework does not apply

to the plaintiffs' "confusion"-based claims.  Specifically, they argue that the Anderson-Burdick

test only applies to burdens caused by confusion that directly involves voter registration or

voting.  The court agrees to the extent that the plaintiffs have cited no precedent for the

application of the Anderson-Burdick test to the type of confusion-based claim they assert here.

All of the voter confusion cases cited by the plaintiffs directly involve the processes, procedures,

and apparatuses of voting, as opposed to the type of underlying legal changes introduced by HB

1264, which do not modify any voter registration or voting procedures or materials (like ballots).

See Purcell v. Gonzalez, 549 U.S. 1 (2006) (voter identification); Mich. State A. Philip Randolph

Inst. v. Johnson, 833 F.3d 65 (6th Cir. 2016) (elimination of straight-party voting); Wash. St.

Republican Party v. Wash. St. Grange, 676 F.3d 784 (9th Cir. 2012) (primary system); Hall v.

Simcox, 766 F.2d 1171 (7th Cir. 1985) (ballot access restrictions); Fish v. Kobach, 309 F. Supp.

3d 1048 (D. Kan. 2018) (voter identification); One Wis. Inst. v. Nichol, 155 F. Supp. 3d 898

(W.D. Wisc. 2015) (voter identification and early voting); Guare, 167 N.H. 65 (voter registration

form).

But the plaintiffs counter that public discussion of HB 1264 has focused on voting-related

issues, and that HB 1264 has generated inquiries to state and local election officials.  Even

assuming, arguendo, that the Anderson-Burdick framework applies, the court finds that the plaintiffs have not shown that there are likely to succeed on their confusion-based claims.

The plaintiffs contend that HB 1264 created confusion and in turn burdened the right to vote in two ways:  (1) through the conduct of State officials since its enactment; and (2) by the nature of the law itself.  First, they argue that State officials have offered insufficient or contradictory guidance regarding the effects of HB 1264.  Second, they maintain that HB 1264 is inherently confusing because it left intact a statutory exception to residency under the Motor Vehicle Code that undermines HB 1264's intended effects.

**State officials' guidance.**  The plaintiffs argue that the defendants and other State officials have not provided adequate guidance to the public regarding the practical effects of HB 1264, creating voter confusion and burdening the right to vote.  The State has been slow to publish clear and coordinated guidance regarding HB 1264.  In the early stages of this lawsuit, the plaintiffs argued that the effects of HB 1264 required registered voters who wished to drive in New Hampshire to obtain New Hampshire driver's licenses and register any vehicles owned in New Hampshire.  The defendants were considerably more reluctant to articulate the effects of HB 1264.  At oral argument on the defendants' motion to dismiss, they could provide few details on how the resulting statutory scheme would function.

Now, the parties have in a sense reversed roles.  This court proposed, sua sponte, to certify several questions of New Hampshire statutory interpretation to the New Hampshire Supreme Court, including the meaning of a portion of RSA 259:88.  Within the next two days, the plaintiffs filed motions to amend introducing their confusion claims and arguing that

§ 259:88 prevents HB 1264 from achieving its allegedly intended purposes.[24]  The defendants, responding to the court's certification proposal and the plaintiffs' motion to amend, argued that the identified questions of statutory interpretation were not difficult or complex, with the result that New Hampshire law after HB 1264 operates substantially as the plaintiffs originally alleged.

State officials ultimately provided public guidance of their coordinated interpretation of HB 1264 in the November 7 letter to Hanover Clerk McClain, which itself has become widely disseminated to election officials statewide and the public.[25]  As the court pointed out at oral argument, this public guidance came one day after the plaintiffs' agreed-to deadline to file their motions for preliminary injunctions.  The defendants' counsel have otherwise reasonably explained that guidance has only emerged at this time because of the multiplicity of issues connected to residency and the need for careful coordination between different state agencies.  It is also concerning that outdated and inaccurate information (at least in the defendants' view) about the relationship between domicile and residency remained on the Secretary of State's website until mid-November.

But the best remedy for ongoing confusion is clarification, and to the extent that this court would order any temporary injunctive relief under these circumstances, it would be limited to that cure:  providing clarity to eliminate or reduce the confusion that the plaintiffs allege, and not to enjoining enforcement of state motor vehicle laws in the manner the plaintiffs' demand,

---

[24] The court does not suggest that the plaintiffs' motions were entirely prompted by its order. Notably, the deadline to amend pleadings under the agreed discovery plan was October 15, 2019, and the plaintiffs filed their motions on October 10 and 11.

[25] Deputy Secretary of State Scanlan testified that the letter has been posted on the Secretary of State's public website and distributed through ElectionNet, the State's centralized voter database which includes a communication tool for the Secretary of State and Attorney General's offices to convey information to local election officials.

which implicates serious Eleventh Amendment concerns.  The November 7 letter informs local

election officials and potential voters of State officials' views that after HB 1264, domicile and

residence have the same statutory meanings, registering to vote requires the establishment of

domicile and thus New Hampshire residency, and that individuals who drive in New Hampshire

or own vehicles in the state must obtain a New Hampshire driver's licenses and register their

vehicles within 60 days of establishing residence.  It also states that HB 1264 did not change

New Hampshire's voting laws, and that no one can be denied the right to register to vote or vote

for failing to meet the requirements of the Motor Vehicle Code.

  The letter answers the questions posed by the plaintiffs' witnesses to various State and

local officials.  See supra Part I.D.  A reasonable potential voter can now discern that, in the eyes

of the state, someone who registers to vote in New Hampshire is a New Hampshire resident and,

if he or she wishes to drive in New Hampshire, is required to obtain a New Hampshire driver's

license and register any cars owned in New Hampshire.  Although the plaintiffs have

consistently alleged that this state of affairs burdens the right to vote, they have not moved for

preliminary relief on that basis.

  At the evidentiary hearing, Hanover Clerk McClain arguably identified potential areas of

remaining confusion, but these are not persuasive.  She testified that her understanding is that she

is not supposed to provide guidance regarding potential motor vehicle obligations of residency to

voters.  Even if her understanding is correct, the November 7 letter is publicly available, has

been disseminated to local election officials, and sufficiently advises potential voters of the

motor vehicle obligations that may be triggered by the declaration of domicile inherent in voter

registration.  During her courtroom testimony, she acknowledged that she would be providing a

clear answer if she could tell new registered voters that if they intend to drive, they need to go to

the DMV and obtain a New Hampshire driver's license, but she fears that doing so would turn some people away and thus disenfranchise voters. That concern reflects discomfort with the State's implementation of HB 1264, not confusion.[26] And, again, the plaintiffs sought preliminary relief based only on confusion, not on any burden on the right to vote affecting accurately informed voters.

The plaintiffs suggest that even if the November 7 letter provides sufficient clarity, the effects of confusion prior to the letter cannot be undone. But they have not presented any evidence to show this. There is still adequate time before even the February 2020 primary election for potential voters to react to the letter and register to vote, if they so choose. Indeed, Ann Shump's affidavit suggests that many of the voters about which the plaintiffs are most concerned were unlikely to register before Election Day. Furthermore, any effect the plaintiffs' proposed remedy would have on voting decisions would similarly depend on publicity and resulting changes in potential voter behavior. To the degree that the plaintiffs allege some continuing harm to individuals like Mary Catherine Suskie and Mary K. Dineen who were unaware of HB 1264 when they registered to vote, they have provided no evidence that any such harm cannot be readily undone through re-registration in the state in which they seek to maintain motor vehicle residency. And even if such harm would warrant some relief, the plaintiffs' requested relief extends to information regarding all registered voters (including those who register after the November 7 clarifying letter), not this limited set of individuals.

---

[26] Clerk McClain's testimony and the exhibits introduced therein show that she opposed HB 1264 when it was before the legislature. While her opposition to the legislation is completely appropriate, it is a matter of public record and the court may consider it in evaluating her testimony, as it also considered Deputy Secretary of State Scanlan's clear support for HB 1264 in assessing his testimony.

**Inherent confusion.**  The plaintiffs argue that HB 1264 is inherently confusing because, despite the New Hampshire legislature's efforts, it leaves untouched the New Hampshire Motor Vehicle Code's definition of residency, that "'[r]esident' shall mean a resident of the state as defined in RSA 21:6, except that no person shall be deemed to be a resident who claims residence in any other state for any purpose."  N.H. Rev. Stat. Ann. § 259:88.  The plaintiffs' amended complaints argue that any individual who registers to vote in New Hampshire but wishes to keep a driver's license or vehicle registrations in another state is claiming residence in another state for motor vehicle purposes, and so is not a "resident" for purposes of the Motor Vehicle Code.  According to the plaintiffs, HB 1264 thus fails to achieve its alleged intended objective of tying together voter domicile and motor vehicle residency, contrary to the statements of the drafters of the law and other widely circulated representations of the law's impact.  The defendants do not dispute that the exception language of § 259:88 remains in place, but argue that the definition of "residence" in that exception is determined by RSA 21:6-a, which is now equivalent to "domicile" in RSA 654:1.  In their view, someone who validly declares domicile also effectively declares "residence" in New Hampshire, and cannot claim "residence" in other states for other purposes.

There is little authority interpreting the exception language in § 259:88.  The plaintiffs have submitted legislative history documents showing that the exception was added to the statute in the 1980s on the recommendation of State motor vehicle officials to address "[r]ecent problems with the registration of vehicles by persons claiming residence in more than one state."[27]  At oral argument, Plaintiffs' counsel reasonably characterized this as a likely concern with individuals registering vehicles in New Hampshire while also claiming residence elsewhere.

---

[27] Document no. 66-2 at 15.

This suggests a motivation to block certain individuals seeking to register vehicles in New Hampshire, not to create an exception for New Hampshire residents, although the language may have that effect.  The plaintiffs have also identified a single New Hampshire case that cites the exception language in dismissing charges brought against a defendant for failing to obtain a New Hampshire license.  State v. Colley, Case No. 462-2014-CR-00855 (5th Circuit—District Division—Newport April 16, 2015).  The defendant there denied that he was a New Hampshire resident, claimed that he was a Florida resident, and showed that he was registered to vote in Florida.  The court agreed that he was not a resident under RSA 259:88 and had not established a bona fide residency in New Hampshire.  The case thus does not demonstrate that someone can claim residency under RSA 21:6 but avoid the obligations of a "resident" under the Motor Vehicle Code by claiming "residency" in another state.

Neither sides' interpretation of the exception language in RSA 259:88 is unreasonable. Here, it is important to remember that the plaintiffs' burden of proof is not to establish that their interpretation of § 259:88 as it relates to HB 1264 is correct.  Rather, it is to establish that § 259:88's effect on the statutory scheme has created confusion that impermissibly burden the right to vote in violation of the Constitution.[28]  There is some incongruity in the statute that needs to be resolved, and the Court has certified this issue to the New Hampshire Supreme Court so that it may do so.  But the plaintiffs have not demonstrated that this incongruity is generating confusion among voters.  Hanover Clerk McClain, one of the plaintiffs' most informed witnesses, testified that she was not aware of the provision and does not recall receiving any

---

[28] To the extent that the plaintiffs argue that State officials are relying on incorrect interpretations of state law, their best course of action is to seek expedited relief from state courts, which avoids any Eleventh Amendment concerns.  See supra Part I.C.4.

questions from voters citing it.[29]  The plaintiffs themselves did not assert that § 259:88 exempts

some registered voters from being residents for motor vehicle purposes until they moved to

amend their complaints in early October 2019, eight months after initiating this litigation.  In

their original complaints, they cited RSA 259:88, but alleged that HB 1264 has the effect of

requiring every person who votes in New Hampshire to obtain a New Hampshire driver's license

if they wish to drive and register owned vehicles in the state.  There is no evidence that any

arguments regarding § 259:88 were raised to the Justices of the New Hampshire Supreme Court

in the advisory opinion process, and the majority of the Court assumed that "if HB 1264

becomes law, persons who are domiciled in New Hampshire for voting purposes also will be

residents for purposes of the requirement that, if they own a motor vehicle, they must register

their motor vehicle in New Hampshire, see RSA 261:45, I, and, if they drive, they must obtain a

New Hampshire driver's license, see RSA 263:35."  Opinion of the Justices, 171 N.H. at 142.

The plaintiffs have not shown that confusion regarding the relationship between HB 1264 and

RSA 259:88 is generating voter confusion and burdening the right to vote.  Nor have they

provided sufficient argument for this court to conclude that they their preferred interpretation of

the exception language in RSA 259:88 is likely be adopted by the New Hampshire Supreme

Court.

     **Other issues.**  Notably, the plaintiffs produced no witnesses stating that confusion

regarding HB 1264 has led them to decide not to register to vote.  Indeed, all of the witnesses

---

[29] Mary Dineen did testify that she is unsure "if the New Hampshire Department of Motor
Vehicles law applies to me because I maintain my residence in North Carolina for motor vehicle
and insurance purposes," but did not refer to § 259:88, any other provision of state law,
otherwise describe her basis for this position, or any efforts to resolve her confusion.  Similarly,
Deputy Secretary of State Scanlan's testimony regarding the inclusion of the exception language
in letters sent in May to individuals who registered to vote in prior elections does little to
establish or substantiate any actual, current confusion.

who testified that they currently have out-of-state licenses also testified that they are registered to vote in New Hampshire.  And none of these witnesses cited any confusion related to RSA 259:88 or affirmatively testified that any confusion stemming from HB 1264 will prevent or dissuade them from voting in upcoming elections.  The plaintiffs have not carried their burden of showing some actual and continuing infringement of the right to vote stemming from voter confusion. See Esso Std. Oil Co., 445 F.3d at 18.

The plaintiffs contend that Dr. Herron's testimony shows that burdens from HB 1264 will fall disproportionately on young potential voters and college students, and that this discrimination requires higher scrutiny under the Anderson-Burdick test.  But there cannot be a disproportionate confusion-based burden where, as here, there is no proven confusion-based burden at all.

**State interests.**  Absent a demonstrated burden on the right to vote, any confusion-related scrutiny of HB 1264 under Anderson-Burdick is limited to rational basis review.  See Werme, 84 F.3d at 485.  The majority opinion in the Opinion of the Justices found compelling state interests justifying HB 1264.  171 N.H. at 142-45 (describing HB 1264 as correcting an incongruity and imbalance between the rights and responsibilities of state citizenship).  While this court need not assess whether those interests are compelling, they are certainly sufficient to provide a rational basis.  The plaintiffs have not shown that they are likely to succeed on the merits of their confusion-based claims.

### B.      Irreparable harm

Furthermore, the plaintiffs' theories of harm also imply that potential voters may be dissuaded from voting by HB 1246 because they do not want to incur obligations under the Motor Vehicle Code.  The relief requested by plaintiffs would not exempt voters from potential

motor vehicle obligations, it would only prevent the use of certain evidence in enforcement proceedings for the duration of this case.

In fact, when considered in light of the plaintiffs' legal claims, which allege and focus closely on the idea of voter confusion, the injunctive relief they request is particularly incongruous, potentially increasing confusion instead of decreasing it.  The prospect of election officials informing potential voters of the requested injunctive relief -- a temporary procedural and evidentiary prohibition applicable to the prosecution of motor vehicle violations -- strikes the court as much more likely to confuse than to clarify.  At the very least, as a time-limited and fairly technical legal remedy, it would not necessarily alleviate potential voters' questions and, ironically, might achieve the opposite result.[30]  Regardless, as the plaintiffs have failed to show a likelihood of success on the merits, "the remaining factors become matters of idle curiosity."  New Comm Wireless Servs. Inc., 287 F.3d at 9.

### C.      Balance of the equities and public interest

If the plaintiffs had shown that they are likely to succeed on the merits of their confusion-based claims, they also, in light of the importance of the right to vote, would likely have also shown that the balance of the equities and the public interest favored the granting of an injunction granting some form of relief.  See Hyde Park Partners, L.P. v. Connolly, 839 F.2d 837, 854 (1st Cir. 1988) ("[S]hould the statute be unconstitutional, the public interest would be

---

[30]  The court acknowledges that the idea behind the plaintiffs' requested relief (the temporary prohibition on the use of voter registration information in certain motor vehicle violation prosecutions) initiated with the court in its first order considering certification, but at that point in the litigation, the plaintiffs had not amended their complaint to include the voter confusion claim that underlies their motion for an injunction.

adversely affected by the denial of such an injunction.")  Because the court is not granting relief,

it does not reach the defendants' argument that the particular relief requested by the plaintiffs

would trigger mandatory abstention.  See Younger v. Harris, 401 U.S. 37 (1971).[31]

IV.   **Conclusion**

The plaintiffs' motions for preliminary injunctions are DENIED.[32]

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  November 27, 2019

cc:    Dale E. Ho, Esq.
       Gilles R. Bissonnette, Esq.
       Julie E. Ebenstein, Esq.
       Theresa J. Lee, Esq.
       Henry Klementowicz, Esq.
       William E. Christie, Esq.
       James Joseph Armillay, Jr., Esq.
       Suzanne Amy Spencer, Esq.
       Anthony Galdieri, Esq.
       Bryan K. Gould, Esq.
       Cooley Ann Arroyo, Esq.
       Samuel R.V. Garland, Esq.
       Seth Michael Zoracki, Esq.

_____

[31] See Def.'s Mem. in Supp. of Obj. to Mots. for Preliminary Injunction (doc. no. 77-1) at 36-38.

[32] Document nos. 72 and 73.