UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Caroline Casey, et al.</u>,

      v.                        Civil No. 19-cv-149-JL

<u>NH Secretary of State, et al.</u>

**ORDER RESOLVING DISCOVERY DISPUTE**

      The individual plaintiffs in this case, Caroline Casey and Maggie Flaherty, served subpoenas requesting document production from three non-parties, New Hampshire Senators Regina Birdsell and James Gray and former Senator Andy Sanborn. The Senators both objected and responded to the requests. Each produced some documents. Former Senator Sanborn represented, and the plaintiffs appear to accept, that his legislative email account was deleted after he left office, according to the practice of the General Court's Information Technology Office. Senators Birdsell and Gray provided separate privilege logs describing emails over which they assert legislative privilege. The individual plaintiffs dispute Senator Birdsell and Senator Gray's assertions of legislative privilege.[1]

      **Legislative Privilege.** "The concept of legislative privilege arises from, and is often discussed interchangeably with, the concept of legislative immunity." <u>McDonough v. City of Portland</u>, No. 2:15-cv-153, 2015 WL 12683663, at *2 (D. Me. Dec. 31, 2015) (Rich, M.J.) (quoting <u>ACORN (N.Y. Ass'n of Comty. Orgs. for Reform Now) v. County of Nassau</u>, No. CV 05-2301, 2007 WL 2815810, at *2 (E.D.N.Y. Sept. 25, 2007)). "The federal system 'has broadly recognized the right of legislators to be free from arrest or

---

[1] All parties agreed to resolve this dispute through the informal procedure outlined in the court's Order of April 23, 2020 (doc. no. 95).

civil process for what they do or say in legislative proceedings.'" Benisek v. Lamone, 241 F. Supp. 3d 566, 573 (D. Md. 2017) (quoting EEOC v. Wash. Suburban Sanitary Comm'n, 631 F.3d 174, 180 (4th Cir. 2011).  In order to safeguard this 'legislative immunity and to further encourage the republican values it promotes,' courts have recognized a corresponding privilege 'against compulsory evidentiary process' that can apply 'whether or not the legislators themselves have been sued.'" Id. (quoting Wash. Suburban Sanitary Comm'n, 631 F.3d at 181).

"[W]hen a state or municipal legislator seeks to invoke legislative privilege in federal court with respect to a federal claim, '[t]he common law – as interpreted by United States courts in the light of reason and experience – governs [the] claim of privilege[.]'" McDonough, 2015 WL 12683663, at *1 (quoting Fed. R. Evid. 501); Miles-Un-Ltd., Inc. v. Town of New Shoreham, R.I., 917 F. Supp. 91, 97 (D.N.H. 1996) (Muirhead, M.J.); Benisek, 241 F. Supp. 3d at 573.  Here, the individual plaintiffs bring federal constitutional claims against a New Hampshire statute, so any legislative immunity is under federal common law.

Preliminarily, the plaintiffs argue that some of the documents in the senators' privilege logs cannot be privileged because they are "governmental records" subject to disclosure under New Hampshire's Right-to-Know Law.  RSA 91:A.  Logically, they contend, legislators cannot claim legislative privilege over documents that they would be required to disclose via a different avenue.  But, as the senators argue, the New Hampshire Supreme Court has held that the legislature's compliance with the Right-to-Know Law is a nonjusticiable question.  Hughes v. Speaker of the New Hampshire House of Representatives, 152 N.H. 276, 288 (2005).  New Hampshire courts thus do not require legislators to produce documents under the Right-to-Know Law and do not offer

guidance on applying the law's provisions to specific legislative documents. While RSA 91-A's definitions may be instructive, the statute does not limit the senators' ability to assert legislative privilege.

The plaintiffs also contend that some of the documents in the privilege logs concern non-legislative acts and so cannot be subject to legislative privilege. The court will consider the legislative character of documents in conducting the in camera review potentially implicated below.

**Application of privilege to records in question.** At least in cases where plaintiffs' claim may turn on whether a legislative act was done with an impermissible intent, courts have found that evidentiary legislative privilege is qualified and have balanced the interests involved with a five-factor test. McDonough, 2015 WL 12683663, at *1-2; Bethune-Hill v. Virginia State Bd. of Elections, 114 F. Supp. 3d 323, 336-38 (E.D. Va. 2015); Nashville Student Org. Comm. v. Hargett, 123 F. Supp. 3d 967, 969-70 (M.D. Tenn. 2015); Benisek, 241 F. Supp. 3d at 574-75; League of Women Voters of Mich. v. Johnson, No. 17-cv-14148, 2018 WL 2335805, at *3-4 (E.D. Mich. May 23, ). These factors, derived from Rodriguez v. Pataki, are:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

280 F. Supp. 2d 89, 100-101 (S.D.N.Y. 2003); see also Bethune-Hill, 114 F. Supp. 3d at 338-39 (advocating a broader version of the fifth factor to account for the multiple purposes of the legislative privilege).

The plaintiffs in this case argue that their Twenty-Sixth Amendment claim should be analyzed under the Arlington Heights standard, which considers evidence of a

3

legislative act's discriminatory purpose or intent. See Vill. of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252 (1977). For now, the court assumes that approach is correct and so applies the Rodriguez factors to the senators' claim of legislative privilege. See Nashville Student Org. Comm., 123 F. Supp. 3d at 970-71. But this is a ruling on discovery and is without prejudice to future arguments on the relevance or admissibility of evidence at trial.

    The court finds that the first, third, and fourth factors favor production. Under the assumption above, the communications the plaintiffs request are relevant to their claims. The plaintiffs' claims involve the right to vote and so are very serious. And, under the fourth factor, the senators "have no personal stake in the litigation and face no direct adverse consequence if the plaintiffs prevail." Benisek, 241 F. Supp. 3d at 576.

    The second factor is more mixed, but also favors production. The plaintiffs have access to the official legislative history and the documents already produced by the senators. But the "availability of alternate evidence does not render the evidence sought here irrelevant," especially given "the practical reality that officials seldom, if ever, announce on the record that they are pursuing a particular course of action" for discriminatory reasons. Bethune-Hill, 114 F. Supp. 3d at 341 (quotation omitted).

    The fifth factor, by its nature, weighs against production. "Conversations between and among legislators play a vital role in crafting the substance of legislation," and legislator-staff communications, depending on the nature of the staff involved, can implicated even weightier concerns. Benisek, 241 F. Supp. 3d at 577. But these communications may also provide highly relevant evidence of the purpose and intent of legislative action. Id.

4

**Ruling and conclusion.**  Senators Birdsell and Gray shall thus produce by **May 5, 2020**, any documents and communications or portions thereof:

- Dated after the date of enactment of any piece of legislation that is the primary subject of the document or communication.  For example, any document or communication that primarily discusses HB 1264 and postdates the Governor's signing of that bill on July 13, 2018 must be produced.

- Reflecting interactions with shared staff whose primary role was in, or directed toward, public and press communications or political advocacy, rather than formulation of legislation or administrative support.

- Reflecting strictly factual materials or information available to lawmakers, regardless of source.

- Discussing or addressing voting by college students or young voters, or the impact of legislation on college students or young voters.

The senators shall produce these materials and, if necessary, a revised privilege log to the plaintiffs.  The parties and counsel shall confer and the senators shall then submit any remaining disputed documents or portions of documents to the court for in-camera review.

**SO ORDERED.**

_____
Joseph N. LaPlante
United States District Court

Dated: April 28, 2020

cc:   Dale E. Ho, Esq.
      Gilles R. Bissonnette, Esq.
      Julie A. Ebenstein, Esq.

Theresa J. Lee, Esq.
Henry Klementowicz, Esq.
William E. Christie, Esq.
James Joseph Armillay, Jr., Esq.
Suzanne Amy Spencer, Esq.
Anne M. Edwards, Esq.
Anthony Galdieri, Esq.
Bryan K. Gould, Esq.
Cooley Ann Arroyo, Esq.
Samuel R.V. Garland, Esq.
Seth Michael Zoracki, Esq.