*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO AUGUST 24, 2020

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * *
                                  *
CAROLINE CASEY and MAGGIE         *
FLAHERTY                          *
                                  *
            Plaintiffs,           *
                                  *
        v.                        *
                                  *
WILLIAM GARDNER, in his           *
official capacity as New          *
Hampshire Secretary of State,     *
and GORDON MACDONALD, in his      *
official capacity as New          *
Hampshire Attorney General        *  Consolidated Case
                                  *  No: 1:19-cv-149-JL
            Defendants.           *
                                  *  May 19, 2020
* * * * * * * * * * * * * * * *   *  4:04 a.m.
NEW HAMPSHIRE DEMOCRATIC PARTY,   *
By Raymond Buckley, Chair         *
                                  *
            Plaintiff,            *
                                  *
        v.                        *
                                  *
WILLIAM GARDNER, in his           *
official capacity as New          *
Hampshire Secretary of State,     *
and GORDON MACDONALD, in his      *
official capacity as New          *
Hampshire Attorney General        *
                                  *
            Defendants.           *
                                  *
* * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF IN CHAMBERS VIDEOCONFERENCE
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

Appearances:

Via Videoconference:


For the Plaintiffs            Henry Klementowicz, Esq.
Caroline Casey and            Theresa J. Lee, Esq.
Maggie Flaherty:              American Civil Liberties
                              Union Foundation



For the Plaintiff,            William E. Christie, Esq.
NH Democratic Party:          Suzanne Amy Spencer, Esq.
                              Shaheen & Gordon



For the Defendants:           Anthony Galdieri, Esq.
                              Samuel R.V. Garland, Esq.
                              NH Attorney General's Office



Court Reporter:               Liza W. Dubois, RMR, CRR
                              Official Court Reporter
                              U.S. District Court
                              55 Pleasant Street
                              Concord, New Hampshire 03301
                              (603) 225-1442

```
 1                    P R O C E E D I N G S
 2              THE CLERK:  The Court has before it for
 3   consideration today an in-chambers conference in civil
 4   case number 19-cv-149, Casey, et al, vs. New Hampshire
 5   Secretary of State, et al.
 6              THE COURT:  All right.  Good afternoon,
 7   everyone.
 8              MR. KLEMENTOWICZ:  Good afternoon.
 9              MS. LEE:  Good afternoon.
10              THE COURT:  Let's see.  I see here on the
11   screen attorneys from the AG's office, Attorneys Garland
12   and Galdieri.  And I think that's it, right?
13              MR. GALDIERI:  Correct.
14              THE COURT:  From the Democrats, I see
15   Mr. Christie and Ms. Spencer.
16              And for the ACLU, I see Attorneys Lee and
17   Klementowicz.
18              Do I have everybody?  Yup.  All right.  Give
19   me a wave if you can hear me, please.
20              All right.  Great.
21              I believe we're on the record, right, Jadean?
22              THE CLERK:  Yes, we are.  Sorry.
23              THE COURT:  All right.  There's a couple other
24   faces on the screen that might not be familiar to you.
25              We're, of course, conducting this hearing via
```

1    a videoconferencing platform because of the public

2    health emergency and the corovirus pandemic --

3    coronavirus pandemic.  Sorry about that, everybody.

4    It's been a long day.

5              And I assume everybody's okay with that,

6    nobody objects to proceeding by videoconference?

7              MR. GALDIERI:  No.

8              MR. KLEMENTOWICZ:  No.

9              THE COURT:  All right.  There are a couple

10   other faces on the screen.  You can probably see Katie

11   Kerrick and Alec Pressly.  Katie and Alec are law

12   student interns -- actually, Katie just graduated from

13   law school, so she's working towards her first law firm

14   position, and Alec is a law student who's in my chambers

15   for the summer.

16             Now, we'll get underway here.

17             Reviewing the motion for reconsideration, it

18   became apparent to me, at least of not apparent,

19   pretty -- pretty obvious to me that I had misunderstood

20   the defendants' counsel's position vis-à-vis the sort of

21   continuance to try to provide some more time to I guess

22   have the benefit of the supreme court's ruling on the

23   statutory interpretation question.  And plaintiffs'

24   (sic) counsel took great pains to show me that I had

25   basically disregarded their argument and basically

1    ordered exactly what they were trying to avoid.  And

2    that's -- that's based on, I think, a misunderstanding

3    which I regret.  They also seemed to object to the

4    ten-day window for posttrial briefing.  So I regret

5    both.

6              What I'd like to do primarily today then is

7    without getting into too much of the same back-and-forth

8    we had before is try and either -- either settle on a

9    date here or at least give me enough information to

10   issue an order on a schedule.

11             I've tried to think of all the options I can

12   of how to schedule this trial.  I'm going to try to list

13   them off now.

14             So, yeah, I see Attorney Galdieri grabbing his

15   pad here and I hope you'll all do the same so we can try

16   to get to a place here where you can at least tell me

17   your preferences and I can make a ruling.

18             It seems to me -- all right.  I'm taking

19   June 8th off the table because while I disagree

20   vehemently with defense counsel's position that this

21   Court is under some obligation to consider the Attorney

22   General's Office's resources, scheduling problems,

23   family obligations, or anything else in scheduling this

24   trial and that I did so as an accommodation, I don't

25   want to do it on a time, if I can help it, that is

1    clearly going to be difficult for them, which has always

2    been my goal.

3            So I'm taking June 8th off the table, at least

4    for this discussion right now.  I'm not saying it's

5    necessarily gone, but it's clearly not a date that

6    defense counsel views as reasonable under the

7    circumstances.

8            So we can do it June 1st and we can do it

9    June 1st under sort of two scenarios.  We can do it on

10   the 1st regardless of whether we get a ruling from the

11   supreme court interpreting the statute and just

12   proceed -- proceed, I guess -- I think the plaintiffs

13   would be wise to proceed under the assumptions -- under

14   the interpretation of the statute that at the beginning

15   of the litigation both sides seemed to share.

16           That's option one:  June 1st regardless, just

17   try the case.

18           Second is June 1st, but again subject to

19   change if we don't have a ruling.  That's the second

20   option.

21           The third option is just take -- just take the

22   matter off the trial calendar altogether and simply wait

23   until the supreme court rules and then quickly -- and

24   quickly schedule it up for a trial based on what we know

25   about the statute to the extent necessary.  It could

1    move the case out, or at least arguably could move the

2    case out, or maybe not, but we would take that up at the

3    time.

4          The other option is to just schedule the case

5    further out, like a hard date that we -- that we just

6    establish that is not problematic for counsel on either

7    side or for the parties in terms of their rights,

8    because one of the points that the plaintiffs' counsel

9    has made repeatedly in this case is that they need to --

10   they want to allow time for an appeal to the Circuit

11   Court of Appeals should they get an adverse ruling from

12   the Court.

13         Then one other, I guess, thought I had as I

14   was trying to work through these options, Mr. Galdieri's

15   motion made a point that, you know, at some level the

16   plaintiffs -- I mean the defense feels that it -- it has

17   been deprived of the opportunity to conduct a summary

18   judgment -- to conduct summary judgment motion practice.

19         And I -- I guess I'm wondering, given that

20   it -- you know, it wouldn't be optimal, but I'm

21   wondering if given the fact that you've all conducted a

22   lot of discovery and have a lot of people under oath and

23   have experts with reports and the like, whether you

24   might want to submit the case on a record and just have

25   me decide it on a record.  I mean, we could have oral

1    argument for, you know, an afternoon or a day or

2    something, but really just give me what you've put

3    together, make your arguments, and I'll rule on it.

4            I don't think that's anybody's preference here

5    or it certainly isn't the plaintiffs' preference, but I

6    want it out there because of Mr. Galdieri's argument to

7    that effect.

8            I thought what you were telling me was the

9    last time we were together was that, look, given that

10   there isn't going to be time for motion practice, you'd

11   like to be able to look at the evidence and do posttrial

12   briefing.  I thought, fine, and I'm still willing to do

13   that, although, of course, it does add some time.

14           Anyway, so given that those are, I think, the

15   options -- first of all, does anybody have -- before I

16   ask you to sort of rank the preferences for me, does

17   anybody have any other option they'd like to just

18   propose to my list that I haven't thought of?

19           MR. CHRISTIE:  Yes.

20           THE COURT:  Go ahead, Mr. Christie.

21           MR. CHRISTIE:  It's an option that the Court

22   suggested last fall, that in considering the balance of

23   the equities at this point in time, I -- and it's the

24   State's -- not the State's schedule, but their lawyers'

25   schedule that they're asking relief here, the State

1  could agree to stay part or all of the statute or the

2  enforcement of the statute in order to give us all

3  breathing time to resolve this issue before the November

4  election.

5          It was a very reasonable proposal back in the

6  fall that was rejected.  I think we have a clear record

7  here of prejudice if this trial date slides too long.

8          And I guess, you know, I'm always willing to

9  accommodate someone else's schedule, but sometimes to

10  get a schedule accommodation, someone has to be

11  accommodating themselves.  And it seems to me that would

12  take the pressure of the supreme court, it would take

13  the pressure off of this court, and the pressure off the

14  First Circuit if the State would agree to that

15  reasonable proposal.

16          THE COURT:  All right.  I mean, I -- I did

17  think it was a reasonable proposal at the time, but we

18  had a meeting about it, Mr. Christie, and the Attorney

19  General himself sat in the conference room with all of

20  us and told me that there were -- under no -- he --

21  under no circumstances would he agree to that.

22          I'll let Mr. Galdieri speak to it if he'd like

23  to.

24          MR. CHRISTIE:  Then if that's the case, his

25  lawyers should be ready for trial.  I mean, if they're

1    going to take the position that they cannot accommodate

2    the Court and the parties on that schedule and they're

3    demanding a continuance here based upon briefing that's

4    at the supreme court, I'm sure they could get a

5    continuance of their briefing schedules at the supreme

6    court because it's the supreme court who has failed to

7    act here, if they pointed that out to them.

8             Then -- and if they don't want to do that,

9    then if they want their continuance, then they should

10   make an accommodation here is our view, as another

11   option.

12            THE COURT:  Yeah.  Go ahead, Counsel.

13            MR. GALDIERI:  So, your Honor, the plaintiffs

14   have chosen to proceed on an expedited track.  They have

15   pushed an expedited trial.  They had adhered to this

16   expedited trial schedule for the entire life of this

17   case.  It wasn't until two weeks ago where --

18   approximately -- that now we've got to continue it

19   because we don't have a decision and that we think we

20   need the decision to know what case to put on.

21            You know, I -- I sympathize with the position.

22   The two weeks out -- we've made extensive accommodation

23   to try this case within the two-week period of --

24   beginning May 26th.  We have the ability to bump it out

25   a week and we made that clear.  And if we can't do that

1   and we need some other time, planting it at a firm date

2   in the month of July is -- is a -- an option for us.

3           But to, you know, force us to go back and,

4   you know, undo everything we've done, ask for more

5   extensions of time from litigants who've already given

6   us 30-, 40-day extensions of time, this is just not --

7   we're not just -- it's not really realistic to sort of

8   in two-week increments drag this trial across the month

9   of June and disrupt all the other sort of deadlines and

10  litigation that goes on within our office and expect us

11  to be prepared and able for trial.

12          So I -- I don't think that that's realistic,

13  but, you know, if -- if we have to, if folks are very

14  concerned about trying the case without the order and we

15  have to pick a firm date in July, that perhaps gives us

16  an opportunity if we see the New Hampshire Supreme

17  Court's order to do something along the lines with what

18  you talked about, Judge, which is, you know, can -- can

19  this be submitted on the papers, this case.

20          I'm not sure it can until we see the supreme

21  court's order in that regard.  I think seeing the

22  supreme court's order may significantly truncate the

23  case, allow us to agree on many things and reduce the

24  size and scope of the case, but we are up against sort

25  of a -- a scheduling workload brick wall where we can't

1    work the middle of June as a time block.

2         We -- our position would be to adhere to the

3    June 1st schedule and that could be -- that could be,

4    you know, subject to change if we see the supreme

5    court's order or -- or it can -- either option one or

6    option two, or -- and what's probably -- what is

7    probably more prudent is to move it into July and -- and

8    maybe that works, depending on how long the Court may

9    think it would take it to turn an order around.

10        It seems like moving it to July and giving us

11   more space can only probably be better for the ultimate

12   presentation of the trial in the case and if we get a

13   supreme court order and then there's any sort of post

14   supreme court order filings around that order, you know,

15   that may take -- make take time.  And if that order

16   comes in the middle of the trial, I don't know how that

17   operates, but we'd have to figure that out.

18        THE COURT:  Well, it -- if it landed in the

19   middle of the trial -- someone's got to mute their mic

20   out.  I don't want to hear my feedback.

21        MR. CHRISTIE:  Can I just respond to

22   something --

23        THE COURT:  No, not yet.

24        Mr. Galdieri, I mean, I'm not sure how you

25   ranked the -- I think if I understood you correctly, you

1   ranked the July trial or the further out trial hard date

2   as the best option, but I was asking you how you reacted

3   to Mr. Christie's proposal.  And you didn't mention it,

4   so I assume that that's not something you want to talk

5   about.

6          MR. GALDIERI:  Yeah, that's not an option,

7   Mr. Christie's proposal.

8          THE COURT:  Just for what it's worth, though,

9   you know, the idea that it's somehow shocking that the

10  plaintiffs want to wait for this ruling, that that's an

11  all of a sudden position, Mr. Galdieri, is a little

12  much.

13         I mean, everybody wants that ruling, as far as

14  I know.  I know this Court does.  If this Court -- I

15  know you urged on me from the beginning that this is a

16  simple matter of statutory interpretation and that this

17  Court -- but -- and that it could be resolved in this

18  court.  It could be resolved in this court.  I mean, I

19  know what I think the answers are.  However, this is not

20  the court that interprets New Hampshire law.  Right?

21         Your role is to defend, as far as I know, the

22  laws of the state and we're all waiting for the State to

23  tell us what the law is.  Right?  That can be attributed

24  to however much time -- well, the lack of clarity in

25  this statutory scheme, which, you know, I think based on

1    the oral argument that I listened to in the supreme

2    court, these issues are not frivolous or marginal

3    issues.  They're crucial interpretive issues that were

4    not discussed by anybody the first time this was before

5    the supreme court.

6           The statutory scheme is not particularly

7    clear.  It's got plenty of ambiguity requiring

8    interpretation.  That lack of ambiguity is attributable

9    to the State.  The time it's taking now to interpret it

10   is attributable to the State.  So it's not -- I don't

11   find it in some way unconscionable or surprising here

12   that some of the burdens here are going to fall on the

13   State.

14          So I -- I'm a little bit put off by the idea

15   that all of a sudden the plaintiff -- I know they've

16   been pushing for an expedited trial because -- they have

17   been.  But it's not like anybody -- it's not like it's a

18   surprise to anybody that the supreme court's

19   interpretation of this scheme is an important part of

20   this litigation.  I mean, we certified the question for

21   a reason.  It wasn't -- it's not just some side,

22   tangential issue that doesn't have much impact on the

23   litigation.  It's pretty crucial.

24          Did I -- did I interpret you, though,

25   Mr. Galdieri, correctly that I guess your preference is

1   the July; is that -- or a date later, but July is what

2   you're suggesting?

3           MR. GALDIERI:  Yeah, I think if we have to do

4   it in June that we would have to start June 1st.

5   Otherwise, we'd have to move to July as a preference.

6           THE COURT:  Okay.  Can I -- can you explain to

7   me one thing I'm not clear on.

8           Why is it that -- why is it that every other

9   deadline you have, which I'm not -- I'm not accustomed

10  to seeing in briefing, by the way.  I'm accustomed to

11  having conversations about those things.  I'm not

12  accustomed to being told I committed an abuse of

13  discretion by not sufficiently accommodating your

14  litigation schedule, your family obligations, and

15  everything else you listed in that motion.  However,

16  we'll get to that in a while.

17          What I don't understand is why all of those

18  are set in stone, but our schedule is the one that must

19  be moved to accommodate all of that.  Why is that?

20          MR. GALDIERI:  Well, our schedule was set.

21  Our schedule -- we moved times and dates and made

22  arrangements around that set schedule.  That schedule

23  has now changed at the last minute in the -- and it's

24  changed, you know, in the most part based on something

25  we can't control.

 1          And now we're in a position where we've got to

 2   go back to the very same individuals and tribunals to

 3   secure additional extensions, make additional

 4   arrangements to move out -- where are we moving these

 5   deadlines to?  Two weeks -- two more weeks and then we

 6   still don't have the order, and then the trial bumps out

 7   two more weeks.  And --

 8          THE COURT:  I agree with you there.  I -- I

 9   think your point about the continual two-week

10   dragging is a very bad idea, but I'm still not sure I

11   understand -- I mean, we're waiting for the State to

12   tell us the law.  That's what we're waiting for.

13   We're -- you say things you can't control.  Well, maybe

14   you can't control them, but you -- if anybody here has a

15   measure of control over this, it's you.  It's not --

16   it's not your adversaries and it's not the federal

17   court.  We're waiting on the State of New Hampshire to

18   act so we can proceed.

19          We may have to proceed without it, we may not

20   have a choice, but certainly that's not optimal.  And

21   this -- this idea that somehow every other deadline that

22   I guess I'm supposed to appreciate in your litigation

23   schedule -- I've never heard of -- I've never heard of a

24   situation where lawyers are -- for an institutional

25   government office are -- are arguing that the Court is

1    supposed to be cognizant -- I know you told me those

2    things in the hearing and I clearly got the one-week

3    swing wrong, and I do apologize for that.

4            But if you think it's my obligation or the

5    Court's obligation to be in command of all of that and

6    cognizant of it and even necessarily sensitive to it, we

7    have a very different idea of what the Court's

8    obligations are in a situation like this,

9    notwithstanding your citations to criminal cases

10   involving the Sixth Amendment right to counsel, all of

11   which were denials of continuances and all of which were

12   upheld on appeal.

13           I still don't understand why it's this case --

14   I view this case as a fairly important case and I'm not

15   saying your other cases aren't important, but some of

16   the things you cited to me were answering deadlines in

17   *pro se* litigation from litigants who have been in this

18   court for many years.  I mean, it isn't like you

19   couldn't get relief from those deadlines and that you

20   wouldn't be accustomed to it if you were to request it.

21           First preference from the State is a hard date

22   after June down the road; second preference is June 1st

23   regardless.  Right?

24           MR. GALDIERI:  Yes.

25           THE COURT:  Okay.  All right.  Let me --

1  Mr. Christie, you wanted to say something a minute ago.

2          THE COURT:  I think you addressed it, your

3  Honor, but I guess just for the record, because it was

4  said last time as well, it was the State's position that

5  the January trial date had to be moved because of the

6  certified questions and that we could not try this case

7  without the certified questions.

8          So -- and we agreed with that.  But the idea

9  that this is something that the plaintiffs have -- a

10  newly adopted position by the plaintiffs in early or mid

11  May is just not borne out by the record.

12          And I also wonder, you know, how many times --

13  this is a unique circumstance, but how many times in the

14  history of certified questions from a federal court to a

15  state court have questions been certified and then

16  everyone just went forward and tried the case without

17  the questions being answered.  I mean while they were

18  still pending before a court.  It just --

19          THE COURT:  I don't know.

20          MR. CHRISTIE:  It's just an extraordinary set

21  of circumstances.

22          So -- and -- and, finally, just on the public

23  interest here, for everyone, for the -- for the

24  plaintiffs, for the State, for the citizens of

25  New Hampshire who are going to vote in this election,

1   people need to know what the law is.  This state could

2   decide -- the four electoral votes in this state could

3   decide who the President of the United States is in

4   January.  It could decide who controls the Senate in

5   January.  There's state elections.  And, again, people's

6   schedules -- I'm always loathe to jam up people's

7   schedules, but those issues need to be resolved as

8   quickly as possible.

9           And so I -- you know, it's our position that

10  the June 8th date, with the understanding that -- and

11  hopefully the supreme court will rule before then, is

12  the date that this case should go forward.

13          THE COURT:  June 8th, yeah.  What's your

14  preference, though?  It's not going to happen June 8th.

15  What's your preference between June 1st and just a hard

16  date that's after the month of June?  And I'll ask

17  Mr. Klementowicz the same thing after.

18          MR. CHRISTIE:  I'm sorry, your Honor.  What's

19  the option again?  I lost focus.

20          THE COURT:  Mr. Galdieri said his preference

21  is -- his first preference is a hard date sometime after

22  the month of June, just go with it regardless of whether

23  we have an answer.

24          His second preference is June 1st.  I -- I

25  think it's possible -- you may disagree, but it wouldn't

1  shock me if we -- if we got an answer shortly before

2  June 1st, you might come -- all might come to me

3  together, as I thought you did last week, by the way,

4  looking to reschedule.  Somehow when you came to me

5  together to reschedule and I picked the wrong date, it

6  was manifest error of fact or law, but I thought you all

7  wanted to reschedule.  And I -- I thought you asked for

8  a status conference and that's what we did.

9           By the way, I do recognize that my letter --

10 not my letter -- my ruling did make it look like that

11 was sort of decided by consent and I -- the State's well

12 within its rights to say, look, that didn't happen.  It

13 wasn't intended to seem that way, but it's one of those

14 things that an order just reflected something that I

15 didn't intend.

16           But I think the State -- you know, I think the

17 State's right to correct the record there.

18           But --

19           MR. CHRISTIE:  So --

20           THE COURT:  But -- wait.

21           MR. CHRISTIE:  Okay.

22           THE COURT:  He says -- he says the hard

23 date -- the hard date is preference one; preference two

24 is June 1.  As between those two, what's your

25 preference?

1          MR. CHRISTIE:  I would say June 1, if we have

2   a supreme court decision --

3          THE COURT:  Yeah.

4          MR. CHRISTIE:  -- or no later than July 1.

5          THE COURT:  No later than July 1.

6          Mr. Galdieri, I don't have -- is July 1 too

7   close to your June -- the stuff -- the things that are

8   listed?  I'm not suggesting it's going to be

9   dispositive, but is it too close to your June

10  obligations to be workable?

11         MR. GALDIERI:  Wait.  I have the wrong

12  calendar.  I'm in June still.

13         July 1, I will be out of town July 1.

14         THE COURT:  Yup.

15         MR. GALDIERI:  Following the week of

16  July 4th -- well, I guess July 4th is on a Saturday, but

17  any -- any full week in July would work for us.

18         THE COURT:  Any full week in July.  Okay.

19         MR. GALDIERI:  To start.

20         THE COURT:  Yup.  Okay.  Mr. Klementowicz,

21  you've been patient.

22         MR. KLEMENTOWICZ:  Sorry, Judge.  I'm taking

23  myself off mute.

24         I -- I don't think that there's -- you know,

25  I -- I don't think that there's particularly good

1  answers to any of this.  I think we're choosing from the

2  worst options and I think that's probably why it's been

3  so difficult to get everyone to agree on scheduling.

4           I would say June 1 with a supreme court order

5  or July 1.

6           THE COURT:  Same as Mr. Christie.

7           MR. KLEMENTOWICZ:  Yes.

8           THE COURT:  I -- you know, I don't think it's

9  unreasonable, though, when we say July 1, you know, if

10  we moved it to the first full week.  It would be

11  July 6th.  Okay.

12           MR. KLEMENTOWICZ:  I -- I'd wonder if in

13  suggesting July if the defendants would be willing to

14  abandon any *Purcell vs. Gonzalez* arguments in the event

15  that a ruling came too close to an election.

16           That's -- one of our concerns, your Honor, is

17  that there's a line of supreme court cases -- well, a

18  supreme court case and then a line of cases from that

19  mostly talking about preliminary injunctive relief, but

20  talking about the risks associated with election

21  administration-type relief too closely to an election.

22           It's not -- I don't think it's applicable in

23  this case because this isn't election administration

24  law, but, you know, one of the reasons we're hesitant

25  about pushing the case out is we're sensitive to those

1    arguments being raised.  And so I wonder if that's

2    something that in requesting the continuance from

3    June 8th the State is willing to say that they're not

4    going to advance.

5           THE COURT:  Tell me -- tell me the proposition

6    of law again that you're worried about.

7           MR. KLEMENTOWICZ:  The proposition of law is

8    that by issuing an injunction too closely to an

9    election, a court itself can create confusion, which --

10   so this is -- this is -- if you recall, the Wisconsin

11   primary that happened just a few weeks ago that went up

12   to the U.S. Supreme Court --

13          THE COURT:  Oh, yeah.

14          MR. KLEMENTOWICZ:  -- that was the basis, was

15   that injunction was issued too close to the election.

16          THE COURT:  Understood.  Yeah.  All right.

17          All right.  By the way, let's also talk about

18   this idea -- I got the sense from your motion,

19   Mr. Galdieri, that you thought the -- I got the sense

20   that you thought the ten-day window -- I think you asked

21   for two weeks and I said, well, ten days.  I was just

22   trying to -- honestly, I was trying to get the case

23   decided earlier.  I mean, that's a burden on the Court,

24   the way I look at it, but is the two weeks versus ten

25   days important to you for some reason?

1        MR. GALDIERI:  Well, the ten days is more

2  problematic if the trial sort of ends after the two-week

3  rescheduled period because there are many things to

4  write during that time and that creates a problem.  But

5  otherwise it would --- it wasn't a problem as originally

6  scheduled.  We were able to make it work.

7        THE COURT:  It puts you in the thick of other

8  things going on.

9        MR. GALDIERI:  That's correct.

10        THE COURT:  All right.  Okay.  All right.

11        Well, so defendants want July.  Plaintiffs

12  want June 1 if we get an order; if we don't get an

13  order, July 1.  Right?  Yeah.

14        Okay.  Give me a moment here.

15        Yeah.  All right.  Well, I think probably the

16  likely outcome will be -- will likely be what I think --

17  what I think is the best accommodation of both

18  positions, which is that the July -- the June 1, which

19  the defendants' counsel represents they can handle a

20  trial on if we get the order; if not, move it to the

21  first full week in July.

22        Okay.  Let me ask you one other thing,

23  Mr. Galdieri, because I'm very, you know -- I can't

24  tell -- your motion in some ways reminds me of sometimes

25  you get a motion in criminal law -- Mr. Christie's

1    familiar with this -- that looks like it's an attempt to

2    just plant a seed for error later.  You took the

3    position that it was hard to see how the way this has --

4    that discovery has proceeded without an answer as

5    irreversibly creating prejudice.

6          Now, I'm not prepared to go forward in this

7    litigation one more second if that is a position you're

8    taking and attempting to preserve as of now.  I couldn't

9    tell if it was just sort of a rhetorical point to your

10   larger point or if your position is what has happened up

11   till now puts you -- because, frankly, any prejudice I

12   see here is to the plaintiffs based on this issue

13   because, as you pointed out in your argument, they're

14   the ones who have been insisting on it.  But if your

15   position is that what's already happened has

16   irreversibly prejudiced the case, I guess I need to know

17   about that.

18         Is that your -- is that your argument?

19         MR. GALDIERI:  Well, your Honor, I -- I think

20   our position has been since the beginning -- and

21   Attorney Christie indicated to this -- that that -- we

22   are the ones saying back in December we can't have a

23   January trial without -- without the order.

24         The order's going to affect how the evidence

25   goes in.  I'm not sure how the order doesn't potentially

1    affect how the evidence is developed or could have been

2    developed during discovery.  But -- but the plaintiffs

3    wanted an expedited trial and now we're up against this

4    window where discovery's closed.

5            I'm not entirely clear on, you know -- I think

6    there's a possibility here that we get the order and

7    parties want to reopen discovery for some limited period

8    of time.  I -- you know, I -- I don't -- I don't know

9    what's possible.  I don't know.  But I -- that is a

10   potential -- there's a potential issue in the case that

11   without the answers to the certified questions, the

12   evidence has been developed in a particular way.

13           I think everyone has gone along with that.

14   It's one of the reasons why at least I personally was

15   surprised two weeks prior to trial, after two weeks

16   after discovery closes, that we're -- we were saying we

17   can't try the case without the order.  We've been

18   through most of the case without the guidance of the

19   order.  So I know that --

20           THE COURT:  Right, but you -- haven't you been

21   conducting discovery as if the court was going to

22   conduct the balancing test on the -- on the assumption

23   that the ruling would be that the law was as originally

24   interpreted by all of you, imposing -- imposing

25   obligations to domesticated licenses and registrations?

1          MR. GALDIERI:  We have not conducted discovery

2     on the confusion issues.  That is -- that is a part of

3     the case we have not done that.

4          MR. CHRISTIE:  I'm sorry.  I have to interrupt

5     there.  I hate to be -- that is just inaccurate.

6          They have deposed my clients in this case for

7     two depositions.  Most of the questions at those

8     depositions were about the confusion issue.  Parties

9     litigate cases, they take depositions, they take

10    discovery all the time in litigation and they don't know

11    what the answers are for the law governing the case

12    until the last minute.  Sometimes an appeals court

13    decision changes the law.  Sometimes it comes down to a

14    motion in limine.

15         Every deposition in this case has covered all

16    the variety of different possible outcomes that could

17    come from the supreme court.  Every lawyer in this case

18    is confident they understand the certified questions,

19    they understand the issues that came out at the start of

20    the case, and that's how discovery, at least from our

21    perspective, has been conducted.

22         MR. GALDIERI:  Your Honor, just to respond to

23    that briefly, I do not agree with that characterization.

24    They have, you know, five to eight witnesses who are

25    confusion-based witnesses who are not also effectively

1   plaintiffs in the case.  We deposed Democratic party

2   witnesses and it's true their primary concern was

3   confusion.

4          I mean, I understand that, but that doesn't

5   mean that we've conducted tactical discovery around the

6   issue of confusion in the case as they've presented it

7   and as against all the individuals they've disclosed.

8          So that is an avenue of discovery that we

9   haven't gone down because we were banking on, you know,

10  the New Hampshire Supreme Court decision is going to

11  resolve the confusion.  But we don't --

12          THE COURT:  One way or the other.

13          MR. CHRISTIE:  And that's their choice.  Just

14  because they haven't -- they've chosen not to take

15  discovery of witnesses that were disclosed to them in

16  the fall doesn't mean that this Court's orders have

17  prejudiced them.  If what they're saying now is we

18  haven't done it despite the fact that we had six, seven,

19  eight, nine months to do it, so now we feel prejudiced.

20  That's just not the law.

21          THE COURT:  Well, yeah.  Is there a -- is

22  there somewhere in the record I can look, Mr. Galdieri,

23  that -- where you objected to some -- most of the

24  Court's orders in this case have been sort of enforcing

25  agreements between people, but is there some point where

1    you objected to something the Court did and pointed out

2    that it was going to impact the way you conducted

3    discovery in a way that would prejudice you?

4              MR. GALDIERI:  We -- we had a conversation

5    around certification with the Court --

6              THE COURT:  Yeah.

7              MR. GALDIERI:  -- early on where I think

8    Attorney Christie said that the evidence -- this would

9    affect the evidence at trial, the supreme court order,

10   that plaintiffs' counsel weren't -- individual

11   plaintiffs' counsel weren't willing to take that

12   position.  We agreed with that position that it would,

13   it would affect the presentation of the case.

14             Can I think at a point in time where we've

15   taken a different viewpoint?  No, we've sort of had

16   trial scheduled and believed that we were adhering to

17   that trial schedule and moved forward through discovery,

18   certified questions pending, awaiting resolution by the

19   court.  I don't think it was agreed that the case

20   couldn't be put on or tried without the opinion.

21             So I -- I don't have a specific recollection

22   of any sort of a motion, though, and I'm unclear on

23   the -- what that -- I don't think we have a transcript

24   or got a transcript of that hearing, so I'm unclear of

25   what hearing that is, but I recall it and we discussed

1    that issue.

2         THE COURT:  Yeah.  Okay.  We discuss a lot of

3    issues here.  We've been -- we've been -- I've been

4    trying to approach this as collaboratively as I can.

5         Let me just ask it this way.  I still don't

6    understand if you're telling me that there's

7    irreversible prejudice in this case.  Because if there

8    is, I want to know -- if there is prejudice in the case,

9    is there relief that you are requesting separate and

10   apart from this schedule on the June 1 trial or a later

11   date?  Is there something else you'd like me to do?

12        MR. GALDIERI:  No, no, your Honor, not at this

13   time.  I think there's a question of we get the supreme

14   court order, depending on what it says, people may say,

15   we need to supplement discovery, we need to supplement

16   expert reports, we need to reopen certain depositions.

17        We have reserved that right in the structuring

18   orders this whole time because that is a potential

19   outcome, but nonetheless we've been moving toward a

20   trial date that the plaintiffs wanted and that we are

21   prepared to go ahead and meet, even without the court's

22   order, knowing that that may be somewhat problematic.

23        THE COURT:  What do you say to Mr. Christie's

24   point that nothing stopped you from conducting any

25   discovery you wanted to conduct?  I mean, why are these

1   issues -- if there's any prejudice here that you seem to

2   be hedging on, what -- why wasn't it within your power

3   to eliminate it by conducting the discovery you wanted

4   to?

5           MR. GALDIERI:  Sure.  We could have spent

6   thousands of dollars to depose people we never had to

7   depose and to investigate areas of the case that are

8   moot and of no relevance to the case because of the

9   supreme court order and then find out from the supreme

10  court order that you should have done all these other

11  things.  It's certainly possible.

12          I mean, we made a tactical decision to proceed

13  in that way precisely because we don't know what the

14  answers are going to be, and I'm assuming everyone else

15  has in the case.  And now we're up two weeks before

16  trial saying, well, we can't put the case in, we can't

17  put the evidence we developed before you, your Honor,

18  you know.  We don't know how to do that.

19          I think the evidence can be put in and the

20  Court can get a decision from the New Hampshire Supreme

21  Court at a later point in time and then issue a decision

22  or decide it needs to supplement the record or have

23  additional briefing.

24          THE COURT:  Well, we may get to that.  You

25  might be right about that, Mr. Galdieri.  I -- I just

1   have one -- I want to say this, though, because

2   irreversible is a pretty strong word.  Your motion's got

3   a lot of strong words in it, but let me just say this.

4           I find -- I find now that there's been no

5   irreversible prejudice based on the interpretive

6   uncertainty from the New Hampshire Supreme Court or lack

7   thereof at this point.  I don't have any problem, by the

8   way, with the pace of my colleagues at the supreme

9   court.  I am sure they are endeavoring to complete that

10  opinion and interpret the law as is their -- as is their

11  duty.

12          But if there's been any prejudice in this

13  period, to me, it falls on the plaintiffs.  They bear

14  the burden of proof.  They didn't object to discovery

15  proceeding.  If there's any burden on the defendants

16  here, it's relatively light.  The defendants made their

17  own choices about discovery.

18          It's being explained now in terms of the

19  conservation of resources, but that's not something

20  that, as far as I know, supports a finding -- a claim of

21  irreversible prejudice attributable to the Court, the

22  defendants' resource conservation and strategic and

23  tactical decisions about discovery.

24          These questions before the New Hampshire

25  Supreme Court have important legal implications, but

1    there's, I think, a relatively discrete set of potential

2    outcomes here, very -- there's a small -- there's not

3    a -- there's not a -- there's myriad outcomes.  There

4    are a few very predictable outcomes.

5           And I think defendants can reasonably conduct

6    discovery in light of those possibilities -- could have,

7    and I think probably did.  I don't see how the

8    interpretive uncertainty in this situation could have

9    any potentially prejudicial effect on the evidence

10   gathered in discovery.

11          I'm not sure what decisions the defendant

12   made, other than I guess deciding not to pursue

13   depositions of certain witnesses that were made in the

14   response to the lack of the supreme court's opinion

15   here.

16          If there's a live case still after the supreme

17   court rules, the vast majority of the evidence relevant

18   to trial would seem to be the same to the Court,

19   regardless of any subtleties of the supreme court's

20   decision and it's difficult for me to imagine, for

21   example, you know how the defendants would have

22   conducted an individual plaintiffs' deposition

23   differently in light of the different statutory

24   interpretations.  Past voting data obviously is not

25   altered by the supreme court's decision.

1          Forecasts or predictions might be affected --

2    I guess affected potentially, but, again, I think

3    parties ought to have been able to ask the right

4    questions and conduct the right discovery to account for

5    the limited range of potential outcomes here.

6          Now, if the supreme court produces a

7    surprising ruling that dramatically alters the evidence

8    here, the parties could, of course, seek a continuance,

9    but that relief has not been requested by the defense.

10          I think the discovery process would likely

11    have been very similar if this Court relied on the

12    interpretive questions or had resolved them itself, but

13    it wasn't this Court's role to do that.  I firmly

14    believe that, that the New Hampshire Supreme Court

15    desires to be the interpreter of New Hampshire law and

16    is the best interpreter of New Hampshire law, the best

17    possible interpreter of New Hampshire law.

18          Both sides might have sought summary judgment

19    rulings on the issues of statutory interpretation, but

20    that would have come after discovery anyway in this

21    case.

22          Now, I also don't think that the lack -- well,

23    I'm trying to think this through, how this trial would

24    look.

25          I also just don't think that any

1    discovery-related prejudice would result in necessarily

2    delaying the trial until after the ruling.  I think we

3    potentially can try the case without the ruling, I think

4    that's consistent with the defendants' position, but I

5    don't think it's optimal.

6            The ruling -- it may have little effect on

7    scope of the evidence to be gathered in discovery, but

8    it may well affect the presentation of the evidence at

9    the trial.  I can see how it would have an impact there,

10   at the trial, but not so much on the discovery.

11           Delaying the trial is inefficient, I recognize

12   that, but it would also be inefficient to hold the trial

13   at all if the supreme court ruling renders the whole

14   issue moot, which I'm not saying I view as likely, but

15   it's certainly possible.  I think there are strong

16   prudential reasons for the Court to avoid these

17   speculative inquiries into the constitutionality of a

18   state law when the interpretation of the law is

19   forthcoming.

20           As I've pointed out, it's the defendants'

21   obligation to defend New Hampshire law and we're waiting

22   for New Hampshire to define and explain to us what its

23   law is.

24           Now, if the supreme court declines to answer

25   some of these certified question, which based on review

1   and hearing the oral argument could happen, I think it's

2   possible this Court might have to answer those questions

3   and doing so posttrial would be complicated and I am not

4   inclined to do that if I can avoid it.

5           I guess that's more of a pragmatic concern

6   than a strictly legal concern, but I just wanted to put

7   that on the record because to the extent the defendants

8   are arguing that there's been an irreversible prejudice

9   to this proceeding, I reject that.  I don't accept it.

10          Anything anybody else -- I have one more issue

11  to address.  Anything anybody else wants to address

12  about the schedule or logistics?

13          I'm going to assume, Mr. Galdieri, that the

14  ten days is still okay, especially just because it may

15  be a later trial, possibly would be, but if you object

16  to that, I'd prefer to hear it now than in a post ruling

17  motion.  Is the date --

18          MR. GALDIERI:  Yes.

19          THE COURT:  Okay.

20          MR. GALDIERI:  It's okay.

21          THE COURT:  Anybody else want to be heard on

22  anything regarding the schedule, Mr. Christie first and

23  then Mr. Klementowicz.

24          MR. CHRISTIE:  No.

25          MR. KLEMENTOWICZ:  No, Judge.

 1              I just -- I a, assuming that the other

 2     deadlines in the pretrial statement and the pretrial

 3     conference will spring with the trial.

 4              THE COURT:  In other words, the same amount of

 5     days forward?

 6              MR. KLEMENTOWICZ:  Yes.

 7              THE COURT:  Mr. Galdieri, your position?

 8              MR. GALDIERI:  Yes, I -- that -- that works,

 9     unless for whatever reason the plaintiffs would want to

10     talk about different dates.  But that's --

11              THE COURT:  All right.  Yeah, I try to

12     accommodate any agreements you make and I'll continue to

13     do that.

14              MR. KLEMENTOWICZ:  Thank you.

15              THE COURT:  Just give me a moment.  I'm

16     communicating with the courtroom deputies and all that

17     while we do this.

18              All right.  I think that's going to mean,

19     though, that some of your filings are due Friday.  Okay.

20     Everyone's nodding.

21              All right.  Now, look, I need to do this.  I

22     wrote an order last night, decided not to issue it.

23     Instead I issued that email this morning.  I don't enjoy

24     this, but I think I need to say it.

25              It's taking every bit of restraint I can

1    muster, Mr. Galdieri, to not be completely outraged by

2    your motion for reconsideration.  And I'm not talking

3    about -- and, by the way, mea culpa, I did misinterpret

4    your words last time and I got the date wrong.  And

5    I -- and the order made it seem as if it had been

6    somehow agreed to or decided at the conference and I

7    don't object to your correcting that a bit.

8         But the idea that -- the idea that selecting a

9    date for the trial which was a week or so -- a week or

10   so different than the date you requested when it's --

11   when it was a conference where both parties agreed to

12   change the date, the idea that that was an abuse of the

13   Court's discretion and a manifest error of law in

14   support of which you cited criminal cases involving

15   the -- not really involving scheduling at all, but

16   involving scheduling only as it related to the Sixth

17   Amendment right to a jury trial -- all of which, by the

18   way, appealed the denial of a continuance and all of

19   which were upheld -- was distressing, to say the least.

20        As an alumnus of that office, I was

21   nonplussed.  I said to myself -- the thing is I know,

22   Mr. Galdieri, you are the person who approves pleadings

23   there.  You're the boss.  But I know for a fact that I

24   would not have been permitted to file -- make a filing

25   like that when I worked in that office and your

1  authority did not remotely support the legal position

2  you were taking.

3          And even to take the position that the

4  Court's -- that the Court was in some way obligated to

5  account for all those points you made, I'm not aware of

6  any law to that effect, that you are entitled to have

7  the trial scheduled in a way that accommodates the

8  schedules of any of the lawyers involved.  Certainly I

9  try to do that and I did try to do that.  I've been

10  trying to do that since day one here, being flexible and

11  accommodating.

12          But to read your motion, the plaintiffs'

13  counsel were on a sort of detour and frolic and mad dash

14  in discovery, had a fractured position, the Court abused

15  its discretion and that -- and counsel for the

16  defendants have only been accommodating and cited law

17  which clearly did not support the proposition you were

18  advancing was very distressing.  I discourage you from

19  taking that approach again.

20          And it is -- it is -- especially when I read

21  gems dropped into the -- dropped into the motion, that

22  were news to me, that somehow the -- the way the case

23  had proceeded had created irreversible prejudice to the

24  proceeding, that struck -- that smacks of the type of --

25  I don't even want to describe it and that's why I didn't

1    write an order.  But it's very distressing to the Court.

2         We've been trying to proceed here in a

3    collaborative, collegial way and for what the -- for

4    what it's worth, that includes you.  Your practice and

5    conduct has been exemplary, but yesterday was different

6    and very distressing.

7         I'm trying not to be personally outraged by

8    it.  I'm trying to be -- keep my -- restrain myself to

9    only be institutionally upset about this, but that was

10   not a supportable position and the authority cited for

11   it completely inapposite; inapposite in a way that's

12   obvious.

13        If you have authority for the proposition that

14   this Court was obligated, obligated in such a way that

15   to disregard that obligation was a manifest error of

16   fact or law and an abuse of the Court's discretion, I

17   expect you to provide that authority to the Court

18   because I'm not aware of it.

19        I shouldn't give you a lecture like that

20   without letting you say something if you want to.  I'm

21   not suggesting you have to say anything about it, but it

22   wouldn't be right for me to just say that to you and

23   adjourn the hearing.  So if there's anything you want to

24   say about it, this is your opportunity.

25             MR. GALDIERI:  Well, I'll just say, your

1    Honor, I -- you know, I apologize.  I didn't -- we

2    didn't mean for it to be done that way.  We tried to do

3    this on an expedited basis to -- to show the Court the

4    issues that we have.  And -- and, you know, you should

5    know I -- I'm not the only person who, you know signed

6    off on that.  That goes -- that goes above me.  And we

7    have clients who, you know, have positions in this case

8    to defend.

9            So we certainly -- but I -- I hear all of your

10   points and -- and I understand them and I do apologize.

11           THE COURT:  Yeah.  The -- well, I wouldn't

12   expect you to apologize unless you agree with me that

13   what you had done was inappropriate.  I don't want to

14   flog that, but two points.

15           If what you're telling me is that the

16   positions you took were attributable to your clients,

17   that's even more distressing than the motion itself.

18   And telling me that people higher up the chain of

19   command there were comfortable with that pleading is --

20   is very distressing.

21           Regardless, we've all got to do our jobs.

22   I'll continue to do mine.  And I do want to make clear,

23   by the way, that I do understand you were in a difficult

24   position looking at an order that not only -- and I

25   apologize again -- misconstrued the best date, but also

1    made it seem like it had been decided at the -- at the

2    conference, and I recognize that it was not.

3             So I have something to be accountable for,

4    too, and I recognize that.

5             All right, everybody.  I'll get an order out

6    here shortly, but what I'm thinking -- I'm going to

7    discuss it with my law clerks who are working on the

8    case with me, but I'm thinking I'm going to probably go

9    with the June 1 date, you'll have an order by today if I

10   do that, but with the -- the possibility of the July

11   date should we not have an order from the court, the

12   supreme court, before trial.

13            All right?  Anything else anybody wants to say

14   before we adjourn?

15            We'll start with Mr. Klementowicz.

16            MR. KLEMENTOWICZ:  Thank you, Judge.

17            I don't -- I don't want to overly complicate

18   things and I hope that this isn't, but I'm wondering if

19   it makes sense to pick a date by which we've decided if

20   we're going on the 1st -- for example, our -- I -- I

21   will have to check this date, but I think it's the case

22   that a week from Thursday is when the stipulated facts

23   and assented-to statement of the case would --

24            THE COURT:  All right.

25            MR. KLEMENTOWICZ:  -- be due and I'm wondering

1    if that would be a good date to pick or not.

2              THE COURT:  Yeah.  So that would be the 28th.

3    All right?  That would be the 28th.  So, in other words,

4    if we don't have an order by the 28th, that's your

5    proposal?

6              MR. KLEMENTOWICZ:  I haven't talked about that

7    with my team, but I'm not getting any glares over Zoom

8    right now.  But I think that makes sense.

9              THE COURT:  Attorney Lee does not look happy

10   with you right now.  She looks a little -- I know.  No,

11   I'm -- I don't mean --

12             MS. LEE:  I'm sorry, your Honor.

13             THE COURT:  The 28th.

14             Before I get to Mr. Christie, how do you feel

15   about that, Mr. Galdieri, as sort of a drop-dead date?

16             MR. GALDIERI:  That works.

17             THE COURT:  Mr. Christie?

18             MR. CHRISTIE:  That -- I agree.

19             THE COURT:  It's -- if you have a better idea,

20   I'm listening.

21             MR. CHRISTIE:  I don't.  The only other idea I

22   had -- I agree to that timing, Judge.  I -- the other

23   suggestion I was going to make was that -- and I know

24   you're loathe to do that -- do this, but perhaps -- I

25   don't know if it would be a letter, something from you

1     to the supreme court --

2              THE COURT:  Yeah.

3              MR. CHRISTIE:  -- just saying -- you know,

4     reminding or prompting them, reminding them, that we

5     need a ruling.  I know Mr. Galdieri and Mr. Klementowicz

6     have called.  I know the Attorney General and

7     Mr. Klementowicz have called, and -- but we're all

8     grappling with these issues.  And I know you're

9     reluctant do it, but it may be helpful and so I just

10    make that suggestion.

11             THE COURT:  Yeah.  Well, in -- Mr. Galdieri,

12    if the Attorney General has been in touch and you've

13    been in touch, do you get any kind of guidance?

14             MR. GALDIERI:  What do you mean by that, like

15    from the court?

16             THE COURT:  Yeah.

17             MR. GALDIERI:  No.

18             THE COURT:  Okay.

19             MR. GALDIERI:  No, we -- no, we haven't.  No.

20    But maybe -- you know, maybe some order coming out of

21    this hearing about -- about the structure and saying

22    that we're doing this to try to get the supreme court

23    order.

24             I know plaintiffs' counsel was thinking about

25    a submission for a joint motion to see if we can get a

1    quicker ruling and we might join that.  And if we had

2    some sort of order, we might be able to attach it to it

3    and -- you know, not that that's going to -- you know,

4    we do our best to highlight the issues, but it may be

5    useful.

6              THE COURT:  All right.  Yeah, I'll make a

7    reference to it in the order, but -- but believe me,

8    Mr. Christie, I totally understand your request.

9              Let me just be honest with you.  I mean, what

10   concerns the Court, the -- the last thing this Court

11   would want to do would be to even make a statement or a

12   question or a reference that would suggest for a moment

13   that the supreme court is not proceeding expeditiously

14   enough.  I -- you know, it -- it's not my opinion,

15   honestly, number one; and an appellate court is

16   different than a trial court.  I don't have to persuade

17   anybody of my opinion.

18             MR. KLEMENTOWICZ:  I understand.

19             THE COURT:  And it's -- so I would not want to

20   suggest that to them.  Nonetheless, I'll make a

21   reference in the order.

22             The order may come out in the morning rather

23   than tonight, by the way.  I noticed the time.  It's not

24   a matter of doing it.  It's a matter of getting it out.

25   So it may come out in the morning.  But it'll contain a

1  reference that might -- hopefully will be of assistance

2  if you decide to seek relief from the court in terms of

3  the timing of its ruling.  All right?

4          Mr. Galdieri, I'll give you the last word.

5          MR. GALDIERI:  I have nothing further, your

6  Honor.  Thank you.

7          THE COURT:  Thanks, everybody.

8          Hold on a second.  Let me just check with the

9  deputy clerk.

10          Jadean, are you on the call?

11          THE CLERK:  I am.

12          THE COURT:  Anything you wanted me to cover?

13          THE CLERK:  Nope.  I'm good.

14          THE COURT:  Alex -- Alex, anything you wanted

15  me to cover that I didn't get to?

16          THE LAW CLERK:  Nope.

17          THE COURT:  All right, everybody.  Thank you.

18  We are adjourned.

19          MR. GALDIERI:  Thank you.

20          MR. KLEMENTOWICZ:  Thank you.

21          MR. CHRISTIE:  Thank you, your Honor.

22          (Proceedings concluded at 5:07 p.m.)

23

24

25

C E R T I F I C A T E


        I, Liza W. Dubois, do hereby certify that
the foregoing transcript is a true and accurate
transcription of the within proceedings, to the best of
my knowledge, skill, ability and belief.


Submitted: 5/26/2020     /s/  Liza W. Dubois
                         LIZA W. DUBOIS, RMR, CRR